No. 23-3166

---

# IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———————————

PENNSYLVANIA STATE CONFERENCE OF THE NAACP, *et al.*,
*Plaintiffs-Appellees*,

v.

SECRETARY OF THE COMMONWEALTH, *et al.*,
*Defendants-Appellees*,

REPUBLICAN NATIONAL COMMITTEE, NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE, THE REPUBLICAN PARTY OF PENNSYLVANIA,
*Intervenors-Appellants*.

———————————

Appeal from the United States District Court for the Western District of Pennsylvania, Case No. 1:22-cv-00339 (Hon. Susan Paradise Baxter)

———————————

## APPELLEES' BRIEF IN OPPOSITION TO THE MOTION TO STAY

———————————

Witold J. Walczak (PA 62976)
AMERICAN CIVIL LIBERTIES UNION
OF PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
Tel: (412) 681-7736
vwalczak@aclupa.org

Ari J. Savitzky
Megan C. Keenan
Sophia Lin Lakin
Adriel I. Cepeda Derieux
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500
asavitzky@aclu.org

*Counsel for Appellees Continued on Inside Cover*

Marian K. Schneider (PA 50337)
Stephen Loney (PA 202535)
Kate I. Steiker-Ginzberg (PA 332236)
AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
mschneider@aclupa.org
sloney@aclupa.org
ksteiker-ginzberg@aclupa.org

David Newmann (PA 82401)
Brittany C. Armour (PA 324455)
HOGAN LOVELLS US LLP
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
Tel: (267) 675-4610
david.newmann@hoganlovells.com
brittany.armour@hoganlovells.com

*Counsel for the Pennsylvania State Conference of the NAACP, League of Women Voters of Pennsylvania, Philadelphians Organized to Witness, Empower and Rebuild, Common Cause Pennsylvania, Black Political Empowerment Project, Make the Road Pennsylvania, Barry M. Seastead, Marlene G. Gutierrez, Aynne Margaret Pleban Polinski, Joel Bencan, and Laurence M. Smith*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

BACKGROUND...................................................................................3

   I.  Pennsylvania Expands Mail Ballot Voting .....................................3

   II. Litigation Ensues Over the Envelope-Date Requirement...............5

   III.   Thousands of Pennsylvanians Are Disenfranchised in the 2022 General Election....................................................................................7

   IV.   Disenfranchised Voters and Non-Partisan Groups Prevail in the District Court .............................................................................9

ARGUMENT ......................................................................................11

   I.  No Stay is Warranted....................................................................11

      A. Movants Are Not Likely to Succeed on the Merits ..................12

      B. None of the Movants Face Imminent, Irreparable Harm.........20

      C. The Public Interest and the Equities Support Counting All Valid Votes .................................................................................23

CONCLUSION ...................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Perez,*
    138 S. Ct. 2305 (2018) ........................................................... 24

*Adams v. Freedom Forge Corp.,*
    204 F.3d 475 (3d Cir. 2000) ................................................. 22

*Ali v. Fed. Bureau of Prisons,*
    552 U.S. 214 (2008) ............................................................... 15

*Bognet v. Sec'y of Pa.,*
    980 F.3d 336 (3d Cir. 2020) ................................................. 22

*Bostock v. Clayton Cnty.,*
    140 S. Ct. 1731 (2020) .......................................................... 18

*Bush v. Gore,*
    531 U.S. 98 (2000) ................................................................. 26

*Campbell Soup Co. v. ConAgra, Inc.,*
    977 F.2d 86 (3d Cir. 1992) ................................................... 21

*City of Boerne v. Flores,*
    521 U.S. 507 (1997) ............................................................... 20

*Donald J. Trump for President, Inc. v. Sec'y of Pa.,*
    830 F. App'x 377 (3d Cir. 2020) ......................................... 23

*Garrett v. PennyMac Loan Servs.,*
    No. 18-CV-00718, 2018 WL 2981266 (M.D. Pa. June 14,
    2018) ........................................................................................ 21

*In re Georgia Senate Bill 202,*
    No. 21-mi-55555, 2023 WL 5334582 (N.D. Ga. Aug. 18,
    2023) ........................................................................................ 20

*Idahoan Fresh v. Advantage Produce, Inc.*,
　157 F.3d 197 (3d Cir. 1998) .................................................. 14

*La Unión del Pueblo Entero v. Abbott*,
　No. 21-CV-0844, 2023 WL 8263348 (W.D. Tex. Nov. 29,
　2023) ...................................................................................... 20

*League of Women Voters of N.C. v. North Carolina*,
　769 F.3d 224 (4th Cir. 2014) ................................................ 23

*Merrill v. Milligan*,
　142 S. Ct. 879 (2022) ..................................................... 24, 25

*Migliori v. Cohen*,
　36 F.4th 153 (3d Cir. 2022) ...................................... *passim*

*Nev. Dep't of Hum. Res. v. Hibbs*,
　538 U.S. 721 (2003) ............................................................... 20

*Purcell v. Gonzalez*,
　549 U.S. 1 (2006) ............................................................. 2, 24

*Republican Nat'l Comm. v. Common Cause R.I.*,
　141 S. Ct. 206 (2022) ............................................................ 24

*In re Revel AC, Inc.*,
　802 F.3d 558 (3d Cir. 2015) ................................................. 11

*Ritter v. Migliori*,
　142 S. Ct. 1824 (2022) ..................................................... 6, 17

*Ritter v. Migliori*,
　143 S. Ct. 297 (2022) .............................................................. 6

*S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP*,
　927 F.3d 763 (3d Cir. 2019) ........................................... 11, 20

*Schwier v. Cox*,
　340 F.3d 1284 (11th Cir. 2003) ...................................... 12, 18

*Trump v. Wisconsin Elections Commission*,
　983 F.3d 919 (7th Cir. 2020) ............................................... 25

*United States v. Gonzales,*
    520 U.S. 1 (1997) ........................................................ 15

*Vote.Org v. Callanen,*
    39 F.4th 297 (5th Cir. 2022) ..................................... 18

*Wise v. Circosta,*
    978 F.3d 93 (4th Cir. 2020) ....................................... 25

*Young Women's Christian Ass'n of Princeton, N. J. v. Kugler,*
    463 F.2d 203 (3d Cir. 1972) ....................................... 21

**Statutes**

25 P.S. § 2602(z.5)(3) ...................................................... 3

25 P.S. § 3146.2 ............................................................... 3

25 P.S. § 3146.2b ....................................................... 4, 16

25 P.S. § 3146.6(a) ...................................................... 4, 5

25 P.S. § 3146.6(b)(1) ...................................................... 4

25 P.S. § 3146.6(b)(3) ...................................................... 4

25 P.S. § 3146.6(c) ........................................................... 5

25 P.S. § 3146.8(g)(4) ...................................................... 4

25 P.S. § 3150.12 ............................................................. 3

25 P.S. § 3150.12b ........................................................... 4

25 P.S. § 3150.16(a) .................................................... 4, 5

25 P.S. § 3150.16(b)(1) .................................................... 4

25 P.S. § 3150.16(b)(3) .................................................... 4

25 P.S. § 3150.16(c) ......................................................... 5

25 Pa. C.S. § 1301(a) ....................................................... 4

52 U.S.C. § 10101(a)(2) ................................................................ 16

52 U.S.C. § 10101(a)(2)(B) ................................................... *passim*

52 U.S.C. § 10101(a)(2)(C) ............................................................ 16

52 U.S.C. § 10101(a)(3) ........................................................... 13, 15

52 U.S.C. § 10101(a)(3)(A) ........................................................... 17

52 U.S.C. § 10101(e) ......................................................... 13, 15, 17

## Other Authorities

H. Rep. No. 88-914 (1963), *reprinted at* 1964 U.S.C.C.A.N.
  2391, 2491 ............................................................................... 17

U.S. Const. art. I, § 4 ................................................................... 19

## INTRODUCTION

In November 2022, thousands of Pennsylvania voters were disenfranchised based on a meaningless paperwork error on the outer mail ballot envelope: Voters either forgot to handwrite a date next to their signature or wrote some date that was later deemed "incorrect." As the comprehensive record in this case demonstrated, the handwritten date is not used to determine voter qualifications, or identity, or whether a ballot was timely received. It is irrelevant. Discarding votes on this immaterial basis violates federal law, 52 U.S.C. § 10101(a)(2)(B); *see Migliori v. Cohen*, 36 F.4th 153 (3d Cir. 2022), *vacated as moot*, 143 S. Ct. 297 (Mem.) (2022), as the district court correctly concluded.

Republican Party entities who litigated below ("GOP Intervenors") and local candidate Richard Marino, who belatedly seeks to intervene after losing a township-supervisor election, move for a stay pending appeal. The motion should be denied.

Movants cannot establish any likelihood of success on the merits, let alone a strong one. The plain text of the statute prohibits vote denial based on an "error or omission" on a voting-related "record or paper" that is "not material in determining" a person's qualifications to vote in the

election, 52 U.S.C. § 10101(a)(2)(B). The disenfranchisement challenged here, for failure to handwrite a date that the record conclusively shows has no substantive meaning or relevance, is a textbook violation, as a panel of this Court in *Migliori* unanimously concluded.

Nor can movants show irreparable harm, because the one election they say is directly affected by the district court's decision—Marino's—has already been certified.

And the equities tilt sharply against a stay. Movants are not government entities and cannot invoke *Purcell* principles. Those principles would not apply here anyway, because simply opening and counting the timely-received mail ballots of undisputedly qualified voters creates no hardship or confusion, especially with respect to an election that is already over. At this point, the surest way to sow confusion would be to issue a "stay" as to the 2023 municipal election after the results have already been certified. And the surest way to undermine voter confidence would be to disenfranchise voters *whose ballots have already been counted*.

Nor does it matter that only certain counties are party to the injunctive aspect of the district court's order. The court's declaration

makes no distinction between counties. To the extent that any counties who were dismissed on standing grounds might ignore the ruling, that is no basis for staying it, especially now that the 2023 municipal election is over. In the meantime, the public interest strongly supports following federal law and counting every vote. The motion to stay should be denied.

## BACKGROUND

### I.  Pennsylvania Expands Mail Ballot Voting

In 2019, Pennsylvania expanded mail voting, allowing all registered, eligible voters to vote by mail. ADD.44.[1]

A voter seeking to vote by mail must complete an application to enable county election boards to verify their identity and qualifications. They must provide their name, address, and proof of identification, 25 P.S. §§ 3146.2, 3150.12, must include, namely, a Pennsylvania driver's license number, or the last four digits of their social security number, or, absent those, a form of photo identification. 25 P.S. § 2602(z.5)(3).

---

[1] Citations to "ADD." are to the addendum to the Stay Motion. Citations to "ECF No." refer to the district court's docket. Citations to "Dkt. No." refer to the docket in this appeal.

After the application is submitted, county boards of elections "ascertain" applicants' qualifications by verifying proof of identification and comparing the information in the application with the voter's registration record. 25 P.S. §§ 3146.2b, 3150.12b, 3146.8(g)(4). The boards thereby verify that the voters are qualified to vote—namely, that they are eighteen years old, have been a U.S. citizen for one month, have resided in the election district for 30 days, and are not incarcerated on a felony conviction. ADD.44; *see also* 25 Pa. C.S. § 1301(a). A county board's determinations are conclusive absent a successful pre-election challenge. 25 P.S. §§ 3146.2b, 3150.12b, 3146.8(g)(4).

After verifying the voter's identity and eligibility, the board sends them a package with a ballot, a "secrecy envelope," and a pre-addressed outer return envelope, on which a voter declaration form is printed. 25 P.S. §§ 3146.6(a), 3150.16(a). Counties keep records of who requested and returned a mail ballot. 25 P.S. §§ 3146.6(b)(1), (3), 3150.16(b)(1), (3). Different counties send out the package at different times. ADD.70. In 2022, some counties sent the mail-ballot package out as early as mid-September, but most sent them in October. Pls.' 56.1 Statement ("Pls.' 56.1 Stmt.") ¶ 34, ECF No. 276.

At "any time after receiving" their mail-ballot package, the voter marks their ballot, puts it inside the secrecy envelope, and places the secrecy envelope in the return envelope. 25 P.S. §§ 3146.6(a), 3150.16(a). The voter then delivers the ballot to their county elections board. *Id.* To be considered timely, the board must receive a ballot by 8 p.m. on Election Day. 25 P.S. §§ 3146.6(c), 3150.16(c).

Upon receipt, county boards stamp or mark every return envelope with the date to confirm its timeliness and enter this information into Pennsylvania's voter registration system. ADD.46; ADD.68. Timeliness is determined by when the ballot was received and stamped, not on any handwritten date. ADD.68 (citing 25 P.S. §§ 3146.6(c), 3150.16(c)).

In the 2022 general election, over 1.2 million Pennsylvanians voted by mail. ADD.48.

## II. Litigation Ensues Over the Envelope-Date Requirement

This case involves the Pennsylvania Election Code's instruction that a voter "shall ... fill out, date and sign the declaration printed on [the return] envelope." 25 P.S. §§ 3146.6(a), 3150.16(a). The envelope-dating provision has been the subject of repeated litigation.

In the November 2021 municipal elections, Lehigh County set aside timely-received mail ballots based on mail ballot voters' inadvertent omission of the handwritten envelope date. *Migliori*, 36 F.4th at 157. Voters sued, and a unanimous Third Circuit panel ordered Lehigh County to count the votes. *See Migliori*, 36 F.4th at 162-64; *see also id.* 164-66 (Matey, J., concurring). The Supreme Court denied a stay application, after which the ballots were opened and counted. *See Ritter v. Migliori*, 142 S. Ct. 1824 (2022) (Mem.). The subsequent certification of the election mooted the controversy, and the panel's decision was later vacated as moot in a non-merits order. *See Ritter v. Migliori*, 143 S. Ct. 297 (2022) (Mem.).

On October 16, 2022, immediately after the *Migliori* vacatur, and with voting in the 2022 election underway, Republican Party-affiliated petitioners brought a petition in the Supreme Court of Pennsylvania, seeking to exclude mail ballots with no handwritten date or an "incorrect" handwritten date on the return envelope. ADD.47; *see also* Pls.' 56.1 Stmt. ¶ 17. On November 1, 2022, the court, which at the time had only six justices, issued an order directing that such mail ballots be segregated and not counted based on an interpretation of Pennsylvania law, but

indicating that it was "evenly divided" on whether federal law prohibited disenfranchising voters on that basis.  ADD.47; Pls.' Mot. for Summ. J. ("MSJ") App. V at APP_01147-01148, ECF No. 281.  On November 5, the court issued a supplemental order defining "incorrect" as any date falling "outside the date range of September 19, 2022, through November 8, 2022."  ADD.48.

## III.    Thousands of Pennsylvanians Are Disenfranchised in the 2022 General Election

In the 2022 general election, county boards of elections segregated and refused to count thousands of timely-received mail ballots based on missing or purportedly "incorrect" handwritten dates on the return envelope.  ADD.48-49.  The affected voters are Democrats, Republicans, and Independents alike, from ages 18 to 101.  Pls.' 56.1 Stmt. ¶¶ 44-45. Five of them are the individual plaintiffs in this case:  workers and retirees in their 60s and 70s—a welder, an artist, a retired pharmacist— all Pennsylvania voters for decades.  *Id.* ¶¶ 22-26.

It is undisputed that every voter whose vote was set aside on this basis in 2022 had their mail ballot applications approved by their county boards of elections.  ADD.48-49; *see also* Pls.' 56.1 Stmt. ¶¶ 4-6.  They filled out their ballots at the proper time, which by law is "any time" after

receiving the mail ballot package. Pls.' 56.1 Stmt. ¶¶ 10, 37-39, 53. They signed the envelope forms and returned their ballots by 8 p.m. on Election Day. *Id.* ¶¶ 37-39, 54.

In the 2022 election, the counties did not use the handwritten envelope date to determine or confirm a voter's age, citizenship, county or duration of residence, or incarceration status. ADD.48-49. Nor did they use the handwritten date to establish a ballot's timeliness. ADD.68.

No defendant identified any fraud concerns with respect to ballots set aside due to a missing or "incorrect" handwritten envelope date. Pls.' 56.1 Stmt. ¶ 43. Two counties pointed to an earlier incident in which one individual apparently forged her deceased mother's signature on a mail ballot envelope form, ADD.67, but an official from the county admitted that the deceased voter had already been removed from the voter rolls and her vote would never have been counted regardless of the handwritten envelope date, *id.* *See also* MSJ App. III at APP_00890-00891, ECF No. 279. It is undisputed that, when a voter dies before Election Day, their ballot is set aside and not counted. Pls.' 56.1 Stmt. ¶¶ 61-64.

The undisputed record also demonstrated the arbitrariness of

excluding mail ballots with "incorrect" envelope dates. Some counties refused to count ballots where the envelope date was correct but missing one term, (*e.g.*, "October 25," ADD.72), *see* Pls.' 56.1 Stmt. ¶¶ 71, 76, 80, while others *counted* ballots with envelope dates that were necessarily "incorrect," (*e.g.*, when a voter wrote a date that occurred before the county had actually sent the mail ballot package to voters, ADD.70); *see* Pls.' 56.1 Stmt. ¶¶ 39, 91-95. At least one county counted a ballot where the voter wrote "09/31/22"—a date that cannot be correct *because it does not exist*—on the envelope. ADD.72. Well over one thousand voters were disenfranchised in 2022 for typos, like writing a birthdate, or writing "2033" instead of "2022," Pls.' 56.1 Stmt. ¶¶ 67, 70, 74, 75, 77, even though county officials conceded that a person could not have completed a mail ballot eleven years in the future or on the day that they were born, *e.g.*, *id.* ¶ 65.

## IV.   Disenfranchised Voters and Non-Partisan Groups Prevail in the District Court

Plaintiffs filed suit to challenge the exclusion of voters' ballots on this immaterial basis in the 2022 election, naming all the county elections boards and the Secretary of the Commonwealth as defendants. *E.g.*, Am.

Compl., ECF No. 121.  GOP Intervenors intervened immediately.  ECF Nos. 27, 167.

Plaintiffs sought expedited discovery, but GOP Intervenors opposed.  *See* ECF Nos. 198, 203.  The district court ordered an expedited schedule, and the parties completed document discovery on standing and merits issues, including fact and expert depositions, by late March.  *See* ECF Nos. 207, 260.  The discovery process, including written discovery from virtually all of Pennsylvania's 67 counties, yielded a comprehensive factual record of the extent and bases for rejecting voters' mail ballots based on the envelope-date requirement in the 2022 election.  *See* Pls.' 56.1 Stmt. & MSJ Apps. I-VI, ECF Nos. 276-282.

Plaintiffs sought summary judgment.  *See* Pls.' Br. ISO MSJ, ECF No. 275.  On November 21, the district court issued its 77-page decision granting Plaintiffs' motion and ordering injunctive relief against the Commonwealth and 12 counties, whose exclusion of mail ballots in the 2022 election had directly harmed the organizational and individual

plaintiffs.[2]  *See* ADD.1-77.  The court ordered entry of a declaratory judgment in Plaintiffs' favor, holding that denying the right to vote based on an error or omission with the handwritten date on the mail ballot envelope violates federal law.  Order 4, ECF No. 348.

## ARGUMENT

### I.  No Stay is Warranted

On application for the extraordinary relief of a stay pending appeal, courts consider four factors: "(1) whether the appellant has made a strong showing of the likelihood of success on the merits; (2) will the appellant suffer irreparable injury absent a stay; (3) would a stay substantially harm other parties with an interest in the litigation; and (4) whether a stay is in the public interest."  *In re Revel AC, Inc.*, 802 F.3d 558, 565 (3d Cir. 2015).  "[T]he first two factors are the most critical."  *Id.* at 570.  If the stay applicant "does not make the requisite showings on either of [the first two] factors," then "the stay should be denied without further analysis."  *S.S. Body Armor I, Inc. v. Carter Ledyard & Milburn LLP*,

---

[2] The district court dismissed 55 of the counties on standing grounds, determining that those counties had not directly caused and/or could not redress Plaintiffs' injuries.  ADD.29-30.

927 F.3d 763, 772 (3d Cir. 2019) (citation omitted). None of the stay factors are present here.

### A.    Movants Are Not Likely to Succeed on the Merits

The Materiality Provision of the Civil Rights Act provides that the right to vote may not be denied due to an "error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B). The statute prevents state actors from "requiring unnecessary information" on voting-related paperwork for voters to have their votes counted. *Schwier v. Cox*, 340 F.3d 1284, 1294 (11th Cir. 2003).

This case presents a textbook violation. The undisputed facts conclusively showed that thousands of Pennsylvania voters were:

- "den[ied] the right ... to vote" as the statute defines it (namely, because their ballots were not "counted and included in the appropriate totals of votes cast,");

12

- "because of an error or omission" (namely, leaving off or incorrectly inputting the handwritten date on the outer mail ballot return envelope form);

- on a "record or paper" that is related to an "act requisite to voting" (namely, the form printed on the mail ballot return envelope, which the counties required voters to complete to have their ballots canvassed and counted);

- that was "not material" to whether the voter "is qualified under State law to vote in [the] election" or even whether the mail ballot was timely received (namely, because the handwritten date on the envelope has no bearing at all on whether a voter is qualified to vote or has voted timely).

52 U.S.C. § 10101(a)(2)(B), (a)(3), (e); *see* ADD.44-73.

The district court considered the possible purposes the envelope date might serve and reviewed in detail the counties' practices in 2022 in applying the envelope-date requirement. *E.g.*, ADD.67-73. In the end, the undisputed factual record revealed that the date written on the envelope form was totally meaningless—so much so that, in November 2022, counties counted ballots where the handwritten date on the

13

envelope form was obviously "wrong" (such as "09/31/22," a date that does not exist), and rejected ballots where the handwritten date was entirely accurate (like "October 2022"). *Id.*

The essential legal principles undergirding the district court's opinion have already been upheld by the unanimous panel of this Court in *Migliori*, 36 F.4th at 159-64; *id.* at 164-66 (Matey, J., concurring), and they flow directly from unambiguous statutory text. Especially considering the extensive record in this case, movants cannot demonstrate a likelihood of success on the merits. Their various arguments all contravene the Materiality Provision's plain text.

Movants argue (at 14-18) that the Materiality Provision applies only to paperwork that is part of the initial voter registration process. The text says otherwise. *See Migliori*, 36 F.4th at 162 n.56. The statute prohibits denial of the right to vote based on immaterial errors or omissions "on any record or paper relating to any application, registration, *or other act requisite to voting*." 52 U.S.C. § 10101(a)(2)(B) (emphasis added). Limiting the statute's scope to records or papers relating to "registration," which is just one of the categories listed, would render the broad term "or other act requisite to voting" a dead letter. *See,*

14

*e.g.*, *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 202 (3d Cir. 1998). Movants' reading also ignores the statute's broad definition of voting as including "all action necessary to make a vote effective *including, but not limited to, registration* or other action required by State law prerequisite to voting, casting a ballot, and having such ballot counted and included in the appropriate totals of votes cast." 52 U.S.C. §§ 10101(a)(2)(B), (a)(3), (e) (emphasis added).

And movants' resort to *ejusdem generis* (at 16) is unavailing. The statute unambiguously applies to "*any* record or paper relating to *any* ... other act requisite to voting." 52 U.S.C. § 10101(a)(2)(B). The word "any" is "expansive" and "naturally" reads as "referring to all" acts requisite to voting. *United States v. Gonzales*, 520 U.S. 1, 5 (1997). The *ejusdem generis* canon is inapplicable where Congress has used such expansive "any" language. *See, e.g.*, *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 225 (2008). Here, Congress *twice* deployed the term "any" to describe the range of paper forms covered by the prohibition against disenfranchisement for immaterial errors. *See id.* at 219. Congress's intent to protect voters from being disenfranchised due to all manner of immaterial paperwork errors is manifested in the text it chose.

In the same vein, movants wrongly suggest (at 18) that the Materiality Provision only applies to paperwork that is used in determining voter qualifications, which they claim happens in Pennsylvania exclusively at the initial voter registration process.  But counties "ascertain" a voter's "qualifications" whenever the voter applies for a mail ballot.  25 P.S. § 3146.2b.  And in any case, movants mischaracterize federal law:  The statute prohibits disenfranchisement for immaterial paperwork errors on "any record or paper relating to any application, registration, or other act requisite to voting," without limitation to any particular phase of the voting process.  52 U.S.C. § 10101(a)(2)(B).[3]

Movants also wrongly suggest (at 20-21) that excluding a voter's ballot purely because of an immaterial paperwork error does not amount to "deny[ing] the right to vote."  Again, plain text refutes their assertion

---

[3] Intervenors point (at 19-20) to other provisions of Section 10101(a)(2) containing varied uses of the term "qualification," but none of those support their limiting construction.  For example, while Section 10101(a)(2)(C) prohibits the use of literacy tests "as a qualification for voting in any election," 52 U.S.C. § 10101(a)(2)(C), movants cannot suggest that this usage limits the prohibition on literacy tests to the initial qualification process, thereby *allowing* literacy tests at the polls.

because the Materiality Provision applies to "all action necessary to make a vote effective," including "having such ballot counted" in the election. 52 U.S.C. §§ 10101(a)(3)(A), 10101(e).  Wholesale removal from the voter rolls is not required.  *See Migliori*, 36 F.4th at 164.[4]

Unable to find support in the text, movants suggest (at 16-18) that the statute must be limited to voter registration or qualification because that is consistent with Congress's "statutory aim" of eradicating practices that prevented Black Americans in the South from registering to vote. But while Congress was responding to the practice of rejecting Black voters' registration forms for immaterial errors, it used broader language in crafting the Materiality Provision as a prophylactic rule that protects "the right of any individual to vote in any election." 52 U.S.C. § 10101(a)(2)(B).  That makes sense: A rule protecting voter registration but allowing registered voters to be denied an effective vote based on

---

[4] Movants contend (at 26-27) that *Migliori* is less persuasive than Justice Alito's *Ritter* dissent from the subsequent denial of a stay.  The district court addressed and applied the analytical framework of that non-precedential dissent in its decision, ADD.59-60, ADD.63-73, and nevertheless concluded that the envelope-date requirement was unlawful.  And in any case, notwithstanding the dissent, the Supreme Court *denied* the stay application in *Ritter*.

irrelevant paperwork errors would *not* have accomplished Congress'
statutory aims at all.  H. Rep. No. 88-914 (1963), *reprinted at* 1964
U.S.C.C.A.N. 2391, 2491.  By contrast, under movants' view, state actors
*could* require a voter to write the "exact number of months and days in
his age," *Schwier*, 340 F.3d at 1294, on the mail ballot envelope, on pain
of disenfranchisement.  *See* MSJ App. III at APP_00919b-c (defendant
county official testifying this would be permissible).

And in any event, post-hoc arguments about historical purpose
cannot limit the language that Congress actually deployed: "[W]hen the
meaning of the statute's terms is plain, our job is at an end. The people
are entitled to rely on the law as written, without fearing that courts
might disregard its plain terms based on some extratextual
consideration." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1749 (2020).

Movants assert without substantiation (at 13-14, 22-25) that the
Materiality Provision threatens various "commonplace" election rules.
Quoting a single footnote from a non-precedential Fifth Circuit motions
panel decision in *Vote.Org v. Callanen*, on which they place tremendous,
unjustified weight, they state (at 14) that "[i]t cannot be that any
requirement that may prohibit an individual from voting if the individual

fails to comply denies the right of that individual to vote under" the Materiality Provision.  39 F.4th 297, 305 n.6 (5th Cir. 2022).

Plaintiffs agree: *Only* refusals to count a voter's ballot for *immaterial errors or omissions on voting-related records or paperwork* are actionable under the statute's plain terms. 52 U.S.C. § 10101(a)(2)(B). Everything else is not.

Movants come up empty-handed in trying (at 23-24) to identify the important "paper-based" election rules in supposed jeopardy.  For example, the Materiality Provision would not apply to prohibitions on overvoting a ballot, because that error is not on some "paper" that is made "requisite to voting," but rather on the marking of the ballot itself.  And it also may not apply to the failure to provide a voter's signature because, depending on the circumstances (*e.g.*, in the context of a poll book), a signature requirement might be considered material.  For that matter, nothing in the Materiality Provision necessarily prohibits *asking* voters for information on voting-related paperwork at all, *as long as their ballots are not thrown out if they make an immaterial mistake.* [5]

---

[5] Because the scope of the Materiality Provision is nothing like movants say it is, their references to "federalism" and "constitutional avoidance"

In the end, the only practices that movants identify that are under any actual threat are various irrelevant paperwork requirements being used to exclude the timely-submitted mail ballots of qualified voters. *See La Unión del Pueblo Entero v. Abbott*, No. 21-CV-0844, 2023 WL 8263348, at *7 (W.D. Tex. Nov. 29, 2023) (requirement to write number that matches state database invalid); *In re Georgia Senate Bill 202*, No. 21-mi-55555, 2023 WL 5334582, at *8 (N.D. Ga. Aug. 18, 2023) (requirement to handwrite birth year likely invalid).

Movants' legal arguments defy the statutory text. They do not have a sufficient possibility of success on the merits to merit a stay. *S.S. Body Armor*, 927 F.3d at 775.

## B. None of the Movants Face Imminent, Irreparable Harm

Nor do movants face any imminent, irreparable harm to justify extraordinary relief. Movants say (at 11-12) that Marino's loss in a local

---

(at 24-26) are fanciful. Nor can there be any doubt about Congress' authority in this arena. In addition to its power to regulate federal elections under the Elections Clause, U.S. Const. art. I, § 4, the Reconstruction Amendments authorize Congress to enact prophylactic legislation to protect the right to vote in particular. *E.g.*, *City of Boerne v. Flores*, 521 U.S. 507, 518 (1997); *see also, e.g.*, *Nev. Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721, 727-28 (2003).

township supervisor race is a source of irreparable harm, but that is wrong because the election has now been certified, following movants' strategic delay in foregoing available state-law legal remedies. *See* BIO to Marino Mot. to Intervene 17-21 ("Intervention BIO"), Dkt. 27. The certification of the election means that this harm, whatever it may once have been, is no longer imminent. A party cannot "show irreparable harm by reference to an injury that has already occurred." *E.g.*, *Garrett v. PennyMac Loan Servs.*, No. 18-CV-00718, 2018 WL 2981266, at *3 (M.D. Pa. June 14, 2018); *accord Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 92 (3d Cir. 1992). Indeed, with the 2023 election certified, the only thing that could conceivably be "stayed" would be the district court's declaration of what federal law requires. *Cf. Young Women's Christian Ass'n of Princeton, N. J. v. Kugler*, 463 F.2d 203, 204 (3d Cir. 1972) (denying application to stay declaratory judgment as unnecessary).

Other than the Towamencin race, the only other harm *to themselves* that movants suggest (at 12) is that district court's decision may occasion "changes to the competitive environment" in future elections that will require them to "divert resources" to modify Election Day training

21

materials, and could "potential[ly] flip[]" some future election results.[6]
Those purported harms are neither concrete nor imminent. Even
accepting the assertion that the decision to count timely-returned *mail
ballots* despite a meaningless paperwork error will somehow require new
*poll watcher* trainings, movants make no attempt to explain how making
routine updates to training materials to reflect current law, at some point
in the next four months, constitutes imminent, irreparable injury. *See*
ADD.80-83   ¶¶   10-28   (offering   no   details   about   the   supposed
modifications). And in any case, movants can avoid this supposed harm
by simply expediting their merits appeal.[7]

---

[6] Movants claim (at 12-13) that the decision below harms "Pennsylvania
and its citizens," but they are not government actors, and cannot claim
someone else's harm as their own for purposes of seeking extraordinary
relief. *See, e.g.*, *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 487 (3d
Cir. 2000).

[7] Movants also suggest (at 10-11) that counting the votes of qualified
voters who made a mistake with respect to the mail ballot envelope date
somehow harms "their voters," but voters whose ballots have been
counted have no cognizable interest in preventing the counting of other
peoples' votes. *See, e.g.*, *Bognet v. Sec'y of Pa.*, 980 F.3d 336, 354-57 (3d
Cir. 2020), *vacated as moot*, 141 S. Ct. 2508 (Mem.) (2021).

### C.    The Public Interest and the Equities Support Counting All Valid Votes

While unnecessary, considering the equities only confirms that a stay is unwarranted.

Movants' proposed stay would mean that qualified Pennsylvania voters' ballots will continue to be discarded due to a meaningless paperwork error.  But "[b]y definition, [t]he public interest ... favors permitting as many qualified voters to vote as possible." *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) (citations and quotation marks omitted).  The value placed on counting every vote is paramount:  "Democracy depends on counting all lawful votes promptly and finally, not setting them aside without weighty proof.  The public must have confidence that our Government honors and respects their votes." *Donald J. Trump for President, Inc. v. Sec'y of Pa.*, 830 F. App'x 377, 390-91 (3d Cir. 2020) (non-precedential).  Movants' request is squarely against the public interest.

Movants' equities arguments do not overcome the paramount importance of counting all valid votes.  Contrary to their suggestion (at 9-10), the fact that the district court's decision happened to come down while votes in the 2023 municipal election were still being tallied is of no

23

moment.  Plaintiffs did not run to court after Election Day to change some settled rule via emergency motion; this litigation was pending for nearly a year, and final judgment has now been entered.

Movants' attempts to invoke *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam) (at 9-11), or to rely on purported harms from the invalidation of "a sovereign state's law" (at 12-13), fall flat.  Movants are partisan actors, not government officials.  The *Purcell* principle is premised on the "*State's* extraordinarily strong interest in avoiding ... changes to its election laws and procedures."  *Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring) (emphasis added).  It is not a tool for private litigants to wield when "no state official has expressed opposition." *Republican Nat'l Comm. v. Common Cause R.I.*, 141 S. Ct. 206, 206 (2022) (Mem.).  Movants cite no case granting a *Purcell*-based stay where a candidate or party attempts to usurp the state's supposed interest as their own.  Rather, invocations of *Purcell* are inapposite here because private stay applicants generally "lack a cognizable interest in the State's ability to 'enforce its duly enacted laws.'" *Id.* (quoting *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018)).

Were *Purcell*-type concerns applicable here, though, they would counsel against a stay. *See Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring).[8] For example, the merits here are "clearcut" in Plaintiffs' favor. *Id.*; *see supra* at 13-22. And the "feasib[ility]" of counting timely-received mail ballots notwithstanding the immaterial envelope-date issue "without significant cost, confusion, or hardship," *Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring), is beyond cavil: The ballots have *already* been opened and counted, and the elections have *already* been certified. At this stage, *denying* a stay would minimize cost, confusion, and hardship. *See, e.g.*, *Wise v. Circosta*, 978 F.3d 93, 99 (4th Cir. 2020). Granting a stay now is much more likely to generate infeasible mandates and cause needless confusion. Nor would "voter confidence" be served by retroactively disenfranchising voters whose ballots have already been counted—especially not at the behest of Marino, a candidate who strategically delayed to game the process but now does not wish to accept the result of his strategy. *See* Intervention BIO 17-19.

---

[8] The cases movants cite are inapposite at best. For example, in *Trump v. Wisconsin Elections Commission*, 983 F.3d 919 (7th Cir. 2020) (cited in Stay Mot. at 9), the court rejected challenges raised well after "election results ha[d] been certified as final." *Id.* at 926.

Movants' main argument (at 10)—that the district court's order somehow permanently requires 12 counties to count affected mail ballots and 55 not to do so—mischaracterizes reality. The court's declaratory judgment about what federal law requires makes no distinctions between the counties, Order 4, and is thus fundamentally different from a case like *Bush v. Gore*, where some counties were selectively ordered to conduct recounts in a close statewide contest. 531 U.S. 98, 105-07 (2000) (per curiam). Here, *all* counties can and should comply with federal law as set forth in the district court's order.

Nor do movants identify any 2023 contest where the noncompliance of some counties but not others could serve as a basis for an emergency stay. That is because any such variation would not change the result of any of the statewide contests on the 2023 municipal election ballot.

Movants' last refuge (at 10-11) is to lean hard into conjecture about the 2024 election cycle. The "parade of harms" they predict—that there might be some statewide contest where some candidate might prevail in such a way where the result might change depending on which counties followed federal law regarding the immaterial envelope-date requirement—is entirely speculative. And this purported harm is also

entirely avoidable.  If settling the law on this issue is what they seek, GOP Intervenors will consent when Plaintiffs move to expedite this appeal.  In the meantime, the public interest lies in counting all valid votes.

## CONCLUSION

This Court should deny the motion for a stay.

Dated: December 11, 2023

Respectfully submitted,

/s/ Ari J. Savitzky

Witold J. Walczak (PA 62976)
AMERICAN CIVIL LIBERTIES UNION
OF PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
Tel: (412) 681-7736
vwalczak@aclupa.org

Marian K. Schneider (PA 50337)
Stephen Loney (PA 202535)
Kate I. Steiker-Ginzberg
(PA 332236)*
AMERICAN CIVIL LIBERTIES UNION
OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
mschneider@aclupa.org
sloney@aclupa.org
ksteiker-ginzberg@aclupa.org

David Newmann (PA 82401)
Brittany C. Armour (PA 324455)
HOGAN LOVELLS US LLP

Ari J. Savitzky
Megan C. Keenan*
Sophia Lin Lakin
Adriel I. Cepeda Derieux
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
asavitzky@aclu.org
mkeenan@aclu.org
slakin@aclu.org
acepedaderieux@aclu.org

*Counsel for the Pennsylvania State Conference of the NAACP, League of Women Voters of Pennsylvania, Philadelphians Organized to Witness, Empower and Rebuild, Common Cause Pennsylvania, Black Political Empowerment Project, Make the Road Pennsylvania, Barry M.*

27

1735 Market Street, 23rd Floor
Philadelphia, PA 19103
Tel: (267) 675-4610
david.newmann@hoganlovells.com
brittany.armour@hoganlovells.com

*Application for admission
forthcoming*

*Seastead, Marlene G. Gutierrez,
Aynne Margaret Pleban Polinski,
Joel Bencan, and Laurence M.
Smith*

## COMBINED CERTIFICATIONS

At least one of the attorneys whose name appears on this brief is a member of the bar of this Court, or has filed an application for admission pursuant to L.A.R. 46.1.

This brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,199 words.

The text of this electronic brief is identical to the text in paper copies that will be filed with the Court.

A virus detection program, Microsoft Word from the Microsoft Office Professional Plus 2010 suite, has been run on this electronic brief and no virus was detected.

Dated: December 11, 2023          Respectfully submitted,

*/s/ Ari J. Savitzky*
Ari J. Savitzky

# CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2023, I caused a true and correct copy of the foregoing Brief in Opposition to the Motion to Stay to be served, together with all documents in support thereof, via the Court's ECF/CMF system.

Dated: December 11, 2023                    Respectfully submitted,

_/s/ Ari J. Savitzky_____
Ari J. Savitzky