Nos. 23-3166

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

PENNSYLVANIA CONFERENCE OF THE NAACP, ET AL.,
*Plaintiff-Appellees,*

v.

SECRETARY COMMONWEALTH OF PENNSYLVANIA, ET AL,
*Defendants-Appellees,*

REPUBLICAN NATIONAL COMMITTEE;
NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE;
THE REPUBLICAN PARTY OF PENNSYLVANIA,
*Intervenor-Appellants.*

_____

On Appeal from the United States District Court for the Western
District of Pennsylvania, Case No. 1:22-cv-00339

_____

# DEFENDANTS ALLEGHENY AND PHILADELPHIA COUNTY
# BOARDS OF ELECTIONS' RESPONSE IN OPPOSITION TO
# APPELLANTS' AND PROPOSED INTERVENOR'S
# EMERGENCY MOTION FOR STAY

_____

Aimee D. Thomson
PHILADELPHIA LAW DEPARTMENT
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
aimee.thomson@phila.gov

Ilana H. Eisenstein
*Counsel of Record*
Brian H. Benjet
Ben C. Fabens-Lassen
M. David Josefovits
DLA PIPER LLP (US)
1650 Market Street, Suite 5000
Philadelphia, PA 19103
(215) 656-3300
ilana.eisenstein@us.dlapiper.com

*Counsel for Defendant
Philadelphia County Board of
Elections*

[*Counsel Information Continued On Next Page*]

Lisa G. Michel
ALLEGHENY COUNTY LAW
DEPARTMENT
445 Fort Pitt Boulevard
Pittsburgh, PA 15129
lisa.michel@alleghenycounty.us
(412) 350-1120

*Counsel for Defendant Allegheny
County Board of Elections*

## INTRODUCTION

There is no emergency, or any other basis, that justifies a stay pending appeal here. Consistent with the District Court's declaratory judgment—which is faithful to this Court's recent decision in *Migliori v. Cohen*—county boards of elections computed their 2023 election results and included mail ballots returned in undated or incorrectly dated outer return envelopes.[1] The results of those elections have already been certified. The 2023 election is over. Staying the District Court's judgment pending appeal will not, and cannot, change that reality.

That remains true with respect to the Towamencin Township Supervisor election, where Richard Marino lost the election after the Montgomery County Board of Elections counted six undated or incorrectly dated ballots following the District Court's decision. Mr. Marino could have sought to halt the certification of that race: either by asking the District Court to stay the declaratory judgment until after the 2023 election, or by pursing one of several paths to state court, which in turn may have suspended certification. He did neither. Instead, he

---

[1] For brevity, we refer to these as "undated and incorrectly dated ballots."

waited until after Montgomery County certified the results to seek a stay of the District Court's judgment.

It is too late now. A stay of the declaratory judgment would not retroactively exclude those six ballots, nor would it decertify the result of the Towamencin Township Supervisor race. Proposed Intervenor Marino and Appellants (collectively, "Appellants") do not even seek the type of mandatory injunction that would be required to obtain such a result. This flaw is fatal because they cannot demonstrate the irreparable harm necessary to justify the extraordinary remedy of a stay pending appeal, which is an "intrusion into the ordinary processes of administration and judicial review." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (internal quotation marks omitted).

Nor can Appellants meet the other stay requirements. They cannot demonstrate any likelihood of success on the merits—let alone the "strong showing" required to obtain a stay. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The District Court correctly determined that enforcement of Pennsylvania's envelope-date requirement—*i.e.*, the rule that voters must handwrite a date on a mail ballot's outer return envelope—violates the Materiality Provision of the Civil Rights Act of

1964 and disenfranchises eligible voters by unreasonably burdening the right to vote. This Court reached that same legal conclusion, less than two years ago, in *Migliori v. Cohen*, a case strikingly similar to this one. 36 F.4th 153, 164 (3d Cir. 2022) (directing the Lehigh County Board to count 257 undated ballots, even though doing so risked eliminating then-candidate David Ritter's slim lead), *vacated for mootness sub nom. Ritter v. Migliori*, 143 S. Ct. 297 (2022). This Court will almost certainly follow its prior decision and reject Appellants' arguments, as there has been no intervening change in the governing law. And like the Supreme Court of the United States, which denied Ritter's subsequent application for a stay, *Ritter v. Migliori*, 142 S. Ct. 1824 (Mem) (2022), this Court should deny Appellants' motion for a stay too.

The balance of equities also weighs heavily against a stay. A stay at this time would confuse the public and cast an unwarranted shadow over duly certified election results. A stay would continue to disenfranchise thousands of qualified voters across Pennsylvania who will vote in future elections. And a stay will not create uniformity in the enforcement of the envelope-date requirement. The District Court's order, which declared that *any* such enforcement violates federal law, has

created uniformity. By contrast, reverting to the status quo that existed *before* the District Court's ruling would lead to a lack of uniformity. Indeed, as the District Court found and the record establishes, county boards of elections took different approaches to interpreting and enforcing the envelope-date requirement during the 2022 election. A stay will not change that reality.

In short, the 2023 election is over, and this Court can settle the law before the 2024 election, which is still many months away. There is no reason for this Court to grant the emergency stay in the interim. It should deny the stay and resolve this appeal on the merits on an expedited briefing schedule.

## STATEMENT OF FACTS

***The Parties.*** Plaintiffs in this case include individual voters whose votes were not counted in the 2022 election because they failed to properly date the outer return envelope of their mail ballots. Am. Compl. Dist. Ct. Dkt. 121. Plaintiffs filed suit against the Secretary of the Commonwealth and each of the Commonwealth's sixty-seven county boards of elections, seeking a declaratory judgment that enforcement of the envelope-date requirement in future elections would violate the

Materiality Provision of the Civil Rights Act. *Ibid.* Several Republican Party organizations (Appellants, here) intervened as defendants. Dist. Ct. Dkt. 167.

***The November 7, 2023, Elections.*** On November 7, 2023, the county boards administered elections throughout the Commonwealth. At that time, the District Court had not resolved the pending cross-summary judgment motions whether rejecting undated and incorrectly dated ballots would violate federal law. Because the Pennsylvania Supreme Court in *Ball v. Chapman*, 289 A.3d 1, 9 (Pa. 2023) had held that *state law* required setting aside undated and incorrectly dated ballots, the county boards set them aside during the November 7, 2023, elections.

***District Court Proceedings.*** On November 21, 2023, the District Court entered an order and opinion resolving the cross-summary judgment motions. Dist. Ct. Dkts. 347, 348. The court dismissed fifty-five county boards from the case, concluding that Plaintiffs lacked standing to bring claims against those boards. Dist. Ct. Dkt. 348. As to the remaining county boards, the District Court issued a declaratory judgment that rejecting timely returned mail ballots based solely on the

failure of a voter to handwrite a correct date on the outer return envelope violates the Materiality Provision. *Ibid.*

The next day, the District Court informed counsel, including counsel for Appellants (who now also represent Mr. Marino, the Proposed Intervenor), that "if no further motions are filed by November 28, 2023, a Rule 58 judgment will be entered." Dist. Ct. Dkt. 349. That announcement was significant because the county boards were still counting votes for the November 7, 2023, election, meaning potentially affected candidates could move to delay judgment until after counting was complete.

***Post-Judgment Computations.*** On November 24, 2023, consistent with the District Court's opinion, and in recognition of the supremacy of federal law, the Philadelphia County Board of Elections computed the results of the 2023 election and counted undated and incorrectly dated ballots. *See* Ex. 1 pp. 3:21-9:22 (Meeting Transcript of Philadelphia County BOE).[2] Similarly, on November 22, the Allegheny

---

[2] At a public meeting on November 21, 2023, the Philadelphia Board voted to canvass undated and incorrectly dated ballots it had previously set aside. *See* Ex. 2 (Amended Agenda for Philadelphia City Commissioners).

County Board of Elections computed its 2023 election results and included undated or incorrectly dated ballots. *See* Ex. 3 (Allegheny County Press Release).

***The Towamencin Township Supervisors Election.*** In Montgomery County, Richard Marino, candidate for Towamencin Township Supervisor, led Kofi Osei, his challenger, by four votes before the District Court issued its declaratory judgment. Montgomery County, however, had set aside (*i.e.*, did not count) six mail ballots because they were in undated or incorrectly dated envelopes.

On November 22, after the District Court's opinion, Montgomery County postponed the certification of its election results and decided to count those six ballots. Ex. 4 (Montgomery County Press Release). On November 27—the day before the deadline to notify the District Court to delay entry of judgment—Montgomery County completed its computation of the ballots cast in the Towamencin Township Supervisors election and included the six ballots. Appellants' Mot., ADD 78, Marino. Decl. ¶ 9. Counting those six ballots resulted in a tie between Mr. Marino and Mr. Osei. *Id.* ¶ 10.

Throughout this time, Mr. Marino had several opportunities to prevent certification of the election. Mr. Marino had a two-day window to file a state court appeal of Montgomery County's November 22 decision. *See* 25 P.S. § 3157 (providing for an appeal to the court of common pleas by "[a]ny person aggrieved by any order or decision of any county board regarding the computation or canvassing of the returns of any primary or election"). And he had a five-day window to appeal the computation of November 27. 25 P.S. §§ 3261-63, 3154(f) (providing for a recount based on allegations of error in the computation, to be filed in the five-day window between computation and certification). Had Mr. Marino exercised either of those options, he could have halted the certification of his race. He could also have requested the District Court to delay entry of final judgment and stay its prior order. He did none of those things.

***Entry of Judgment.*** On November 29, 2023, having received no further motions or requests to delay entry of judgment, the District Court entered a Rule 58 judgment. Judgement, Dist. Ct. Dkt. 350.

***Election Certification.*** Certification of election results followed. *See* 25 P.S. § 3154(f). On November 30, 2023, Philadelphia County certified the results of the 2023 election. Ex. 5 (Agenda for Philadelphia

City Commissioners, Nov. 30, 2023). The same day, Montgomery County convened a casting of lots, and declared Mr. Osei the winner. Appellants' Mot., ADD 78, Marino. Decl. ¶¶ 11-12. On December 4, 2023, Montgomery County certified its election results, including the results of the Towamencin Township Supervisors election. *See* Ex. 6 (Agenda for Montgomery County Election Board Meeting, Dec. 4, 2023).

    ***Post-Certification Challenges and This Appeal.*** The same day that Montgomery County certified the election, voters in Towamencin Township—but not Mr. Marino—filed a belated attempt to challenge the certification of Osei as the winner. *See* Appellants' Mot., ADD 87 (Petition, In Re: Contest of Nov. 7, 2023 Election of Towamencin Township Supervisor, No. 2023-26306 (Ct. Comm. Pls. of Mont. Cty.)). The Court of Common Pleas dismissed the challenge on December 7, 2023. *See* Ex. 7 (Order, Pet. Dismissed, Docket No. 23-26306 (Montgomery Cty. Court of Common Pleas, Dec. 7, 2023)).

    Appellants noticed their appeal on December 6, 2023, Dist. Ct. Dkt. 362, and they sought an emergency stay the next day, Appellants' Mot.

at 4.[3] Mr. Marino has also moved to intervene. Motion to Intervene of Richard Marino, ECF. No. 8.[4]

## STANDARD OF REVIEW

"A stay [pending appeal] is an intrusion into the ordinary processes of administration and judicial review." *Nken*, 556 U.S. at 427 (internal quotation marks omitted). As a result, a stay is an "extraordinary remed[y] never awarded as of right." *Trump for Pres., Inc. v. Sec. of Pa.*, 830 F. App'x. 377, 389 (3d Cir. 2020) (unpublished) (quoting *Winter v. NRDC*, 555 U.S. 7, 24 (2008)). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken*, 556 U.S. at 433-34.

The movant must show both (1) a "strong" likelihood of success on the merits and (2) irreparable injury absent a stay. *See Hilton*, 481 U.S. at 776. These two factors are the "most critical." *In re Revel AC, Inc.*, 802

---

[3] Appellants first moved for stay in the District Court on December 1, 2023. Dist. Ct. Dkt. 353. On December 8, 2023, the District Court dismissed the motion for a stay because of "the risk that two courts will be simultaneously considering the same issue." Dist. Ct. Dkt. 366.

[4] Philadelphia County takes position on the motion to intervene. Allegheny County had originally indicated it would oppose, but it has decided to take no position.

F.3d 558, 568 (3d Cir. 2015). If the movant fails to make the necessary showing, further inquiry becomes "unnecessary," and motion for a stay "should be denied without further analysis." *Id.* at 571 (quoting *In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1300-01 (7th Cir. 1997)). Once the movant satisfies its heavy burden with respect to the first two factors, this Court must assess (3) whether the stay would "substantially injury the other parties interested in the proceedings" and (4) whether the stay is in the "public interest." *See Hilton*, 481 U.S. at 776.

There is no merit to Appellants' suggestion that "in election cases, the 'traditional test for a stay does not apply'" under the so-called *Purcell* principle. *See* Appellants' Mot. at 8 (quoting *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (Kavanaugh, concurring)). This Court has applied the traditional stay factors in similar, election-related cases, including emergency-litigation challenging the results of the 2020 presidential election. *See Council of Alt. Pol. Parties v. Hooks*, 121 F.3d 876, 879 (3d Cir. 1997) (applying four-factor test); *Trump for Pres.,* 830 F. App'x. at 389 (applying four-factor test in 2020 post-election challenge).

To avoid application of the well-settled stay criteria, Appellants cite two *pre-election* cases invoking the *Purcell* principle (rather than

traditional stay principles), Appellants' Mot. at 8, neither of which justifies departing from the traditional four-part test for assessing motions for stay pending appeal. In *Purcell v. Gonzalez,* the traditional stay factors were not applied because the district court had invalidated a state law shortly *before* the election, creating "voter confusion and consequent incentive to remain away from the polls." 549 U.S. 1, 4 (2006). Similarly, in *Merrill*, the lower court had invalidated Alabama's districting plan seven weeks *before* a primary election, risking chaos for candidates, who did not know who would be running against whom in the election. 142 S. Ct. at 880. The *Purcell* principle has no bearing here, where there is no such risk of chaos or voter confusion, where past elections have already been certified, and where future elections are still many months away. The traditional four-factor test for a stay pending appeal applies.

## ARGUMENT

### A. Appellants do not face irreparable harm.

We begin with irreparable harm rather than likelihood of success because it is outcome determinative in this case for a straightforward reason: the results of the Towamencin Board of Supervisors election have

already been certified. Mr. Marino has lost. A stay of the district court's declaratory judgment cannot change that outcome. The lack of any emergency is reason enough to deny Appellants' motion for a stay and instead take up this legal issue with fulsome merits briefing. *See Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 92 (3d Cir. 1992) (denying stay because the trade secret was already revealed, and no additional irreparable harm would result from denial of the stay).

The finality of that election is clear under Pennsylvania law, which provides that "once the results of an election have been certified they may only be changed on the basis of a *timely* filed election contest petition." *In re 2003 General Election for Office of Prothonotary*, 578 Pa. 3, 12 (Pa. 2004) (emphasis added). No such timely petition was filed here. *Cf.* 25 P.S. §§ 3291, 3431, 3456. Nor did Mr. Marino file a timely appeal within two days of Montgomery County's November 22 decision to canvass the six ballots. *C.f. id.* § 3157. Nor did he timely seek a recount within the five-day window following the November 27 computation. *C.f. id.* §§ 3261-63, 3154(f).

For this reason, while a stay by this Court would suspend the forward-looking effect of the District Court's declaratory judgment, it

would do nothing to reverse the election results in Montgomery County. Indeed, Appellants do not, and cannot, request that this Court direct Montgomery County to reverse its election results and reject the six undated ballots. To achieve such an outcome, this Court would need to issue a mandatory injunction. And Appellants offer no reason why this Court would, or could, do so. In this case, the only way the election results could be reversed is through a post-election contest petition in state court, but such a petition was already filed and dismissed. *See* Appellants' Mot., ADD 87 (filing petition to challenge certification); Ex. 7 (dismissing petition). And the potential argument by Appellants that a Pennsylvania state court will excuse the untimeliness on appeal is speculative at best. For these reasons, the Towamencin Township Supervisor election is not a source of irreparable harm.

Appellants other purported harms are either capable of monetary relief, speculative, or suffered by parties who are not asking this Court for a stay. Begin with Appellants' claim that they face "various irreparable harms in future elections." Appellant's Mot. at 12. Such elections are months away, and these speculative concerns do not satisfy the requirement to show immediate irreparable harm. *Hohe v. Casey*, 868

F.2d 69, 72 (3d Cir. 1989) (stay movant must show "immediate irreparable injury"). Next, Appellants claim that the "diversion of resources away from the Republican Party of Pennsylvania's mission" constitutes irreparable harm. Appellants' Mot. at 12. This too is incorrect. "Economic loss does not constitute irreparable harm." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994). It is also not enough for Appellants to speculate that any diversion of resources would irreparably harm the Republican Party's mission. *See Revel*, 802 F.3d at 569 ("[T]he applicant must "demonstrate that irreparable injury is likely not merely possible in the absence of a stay." (quoting *Winter* 555 U.S. at 22)).

Nor can Appellants rely on harms to "Pennsylvania and all citizens." Appellants' Mot. at 12. Neither "Pennsylvania" nor "all citizens" are asking this Court for a stay. Harms suffered by others do not show that Appellants themselves require this Court's extraordinary intervention. *See Republic of Philippines v. Westinghouse Elec. Co.*, 949 F.2d 653, 658 (3d Cir. 1991) (stay applicant must show that "that *the applicant* will be irreparably injured absent a stay." (emphasis added)).

In sum, Appellant's failed to show that an emergency stay is necessary to prevent irreparable harm, and that is a sufficient basis for this Court to deny the stay. *See Revel*, 802 F.3d at 571.

### B. Appellants are not likely to succeed on the merits because this Court has already rejected their arguments and held that enforcement of the envelope-date requirement violates the Civil Rights Act.

A "critical" and "important piece of the stay analysis" is whether Appellants have "demonstrated a strong likelihood of success." *Revel*, at 568. To do so, Appellants must make a strong showing that there is a "reasonable chance, or probability of winning." *Id.*; *Nken*, 556 U.S. at 426 (requiring a "strong showing"). Because Appellants are unlikely to succeed in reversing the District Court's decision, this Court can deny the stay without analyses of the remaining factors. *Revel,* at 571.

1.    *The envelope-date requirement violates federal law.*

The District Court correctly held—based on a robust evidentiary record and after a thorough, comprehensive analysis of the legal issues— that enforcement of the envelope-date requirement violates the Materiality Provision of the Civil Rights Act. Mem. Op. at 72, Dist. Ct. Dkt. 347. That provision provides in relevant part:

No person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.

52 U.S.C. § 10101(a)(2)(B).

Thus, the dating requirement violates the plain language of the materiality provision if four distinct requirements are satisfied. There must be (1) a denial of the "right . . . to vote" (2) "because of an error or omission on any record or paper," (3) "relating to . . . [an] act requisite to voting," (4) that is "not material" in determining the voter's qualification to vote. The District Court correctly concluded that all four requirements are satisfied when county boards of elections reject timely returned mail ballots based on a failure to handwrite a correct date on the outer return envelope.

*First*, "declining or refusing to count a qualified citizen's vote based on an immaterial reason is a denial of their right to vote." Mem. Op. at 65. This is especially true under the expansive view of the Civil Rights Act, which defines "voting" as "all action necessary to make voting effective including but not limited to … casting a ballot and having such

ballot counted and included in the appropriate totals of votes cast." 52 U.S.C. §§ 10101(a)(3)(A), 101010(c).

*Second*, no party disputes that a failure to handwrite a correct date on the ballot's outer return envelope is an "error or omission on a record or paper." Mem. Op. at 64.

*Third*, the outer return envelope relates to an act "requisite to voting." 52 U.S.C. § 10101(a)(2)(B). Pennsylvania's Election Code requires a voter to place the voted ballot into the secrecy envelope and place that secrecy envelope into the outer (paper) return envelope. 25 P.S. §§ 3146.6(a), 3150.16(a). If the voter did not place the mail ballot in the paper envelopes, then the county board cannot count that voter's ballot. *Id.* § 3146.8(g)(3). As the District Court correctly concluded, "to cast a mail[] ballot, the voter must write a date on the envelope near the pre-printed verification. This is necessary to complete the act of voting and, thus, implicates the statute." Mem. Op. at 64 n.38.

*Finally*, all parties admit, and the evidence shows, that Pennsylvania county boards of elections do not use the handwritten date on the outer ballot envelope for any purpose related to determining a voter's age, citizenship, county, duration of residence, or felon status.

Mem. Op. at 63. The District Court thus correctly held that the Materiality Provision prohibits denying the right to vote based on such immaterial requirements. *Id.*; *see also* 52 U.S.C. § 10101(a)(2)(B).

This straightforward analysis confirms that the District Court's judgment—which is faithful to federal law and upholds the fundamental right to vote—will not be disturbed on appeal.

A panel of this Court has already considered this issue and unanimously held that the dating requirement "serves no purpose other than disenfranchising otherwise qualified voters," and that [t]his is exactly the type of disenfranchisement that Congress sought to prevent." *Migliori*, 36 F. 4th at 164. Although *Migliori* was later vacated as moot by the United States Supreme Court, it still carries strong persuasive value. *See Drinker v. Colonial Sch. Dist.* 78 F.3d 859, 864 n.12 (3d Cir. 1996) (stating that a non-precedential opinion serves as the "paradigm of the legal analysis" that should be followed in a factually similar case). Accordingly, Appellants are not likely to succeed on appeal.

2.    *Appellants' contrary arguments lack merit.*

In response, Appellants contend that new arguments not previously considered during *Migliori* justify reaching a different result here. They

urge this Court to adopt the reasoning of a three-Justice dissent in *Migliori*, even though the Supreme Court necessarily rejected that reasoning, and the author of that dissent confessed that he had only limited time to study the issue and did not rule out changing his view. *Ritter v. Migliori*, 142 S. Ct. 1824 (2022) (Alito, J., dissenting from denial of stay).[5] This Court should decline the invitation, reaffirm its holding in *Migliori*, and affirm the District Court's judgment because Appellants' arguments are inconsistent with the text of the Civil Rights Act.

*First*, Appellants argue that "dating a ballot" is not an act requisite to voting. Appellants' Mot. at 16. This argument goes nowhere because this case is not about dating a ballot—it is about dating the ballot's outer return envelope, which under the Pennsylvania election code, and as the District Court found, is an act requisite to voting. *See Ball,* 289 A.3d at 22 (holding Pennsylvania law prohibits county boards from counting ballots that were returned without a correct date on the outer return envelope).

---

[5] Appellants also urge this Court to follow "the Pennsylvania Supreme Court, and the Fifth Circuit," even though the former deadlocked on this issue, *see Ball*, 289 A.3d at 28, 35, and the latter simply noted in a footnote that a "plausible argument can be made," *Vote.Org v. Callanen*, 39 F.4th 297, 305 n.6 (5th Cir. 2022).

Besides, Appellants are wrong to claim that the statutory cannon of *ejusdem generis* requires this Court to limit the catchall phrase "other act requisite to voting" as "refer[ing] only to voter registration." Appellant's Mot. at 16. As a leading treatise explains, "[w]hen the specifics exhaust the class and there is nothing left besides what has been enumerated, the follow-on general term must be read literally." A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 209 (2012). Here, the enumerated categories are "registration" and "application." § 10101(a)(2)(B) (prohibiting "deny[ing] the right of any individual to vote in any election because of an error or omission on any record or paper relating to *any application, registration, or other act requisite to voting*"). So the phrase "other act requisite to voting" must be read literally and cannot also refer only to registration—to conclude otherwise would render the follow-on general term meaningless.

*Second*, Appellants argue based on legislative history that the Materiality Provision only applies when the immaterial requirement is "used in determining the voter's qualifications." Appellants' Mot. at 18. In their view, only a requirement that is used to determine eligibility

during the voter-registration process can violate the Materiality Provision. The plain text of the Civil Rights Act says otherwise.

The Materiality Provision prohibits the denial of the right to vote based on errors or omissions "if such errors or omission are not material in determining whether such individual is qualified under State law to vote." 52 U.S.C. § 10101(a)(2)(b). Here, Appellants do not dispute that errors and omissions in the date on the outer return envelope are not material in determining whether such individual is qualified under Pennsylvania law to vote. *See also* Mem. Op. at 71 (finding date not material). So the Materiality Provision applies to the envelope-date requirements. Appellants cannot reject the plain text of the Civil Rights Act through a "selective tour of the legislative history." S*ee Food Mkt. Inst. v. Argus Leader Media*, 139 S.Ct. 2356, 2364 (2019).

*Third*, Appellants contend that the Materiality Provision does not apply to the envelope-date requirement because the provision "prohibits only 'deny[ing] the right of any individual to vote,' not imposing mandatory ballot-casting rules like the date requirement." Appellants' Mot. at 20. This is sophistry. When election officials refuse to allow an individual to vote because of a failed literacy test, that individual is

denied the right to vote. And when election officials refuse to count an individual's ballot because of a failure to handwrite a date on the ballot's outer return envelope, that individual too is denied the right to vote. As the District Court sensibly concluded, nothing in the text of the Civil Rights Act supports Appellants' claim that "a regulation requiring voters to write [the first] stanza [of the national anthem] at the polling place (or when filling out their mail-in ballot) in order to have their ballot counted would not" deny individuals the right to vote. Mem. Op. at 65 (rejecting this argument and finding that it "cannot stand given the text").

In sum, Appellants cannot show that the District Court likely erred in declaring that the envelope-date requirement violates federal law. This is reason enough to deny the motion for stay pending appeal. *See Revel*, 802 F.3d at 571.

## C. The balance of harms and the public interest weigh against a stay.

The equities confirm that this Court should not stay the District Court's judgment. In determining whether to grant a stay, a court "must weigh the possibility of harm to the nonmoving party as well as to any other interested persons and, when relevant, harm to the public." *Continental Grp., Inc. v. Amoco Chemicals Co.*, 614 F.2d 351, 357 (3d Cir.

1980). In this case, the harm to Plaintiffs and the voting public outweighs the harm to Appellants from a denial of the stay.

As a threshold matter, if court orders after election day create suspicions that that federal courts are picking election winners, then the same is even more true for orders after ballots have been opened and counted, and results certified. And even though a stay would not change the results in the Towamencin Township Supervisor elections, it would undermine the finality of the 2023 election and cause needless confusion.

Moreover, "[t]he public interest . . . favors permitting as many qualified voters to vote as possible." *League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) (citations and internal quotation marks omitted). Granting a stay will have the practical effect of collectively disenfranchising thousands of otherwise eligible electors in future elections who cast timely ballots but fail to comply with a meaningless requirement. Such widespread denial of the most fundamental of rights cannot be in the public interest. *Cf. Hooks*, 121 F.3d at 884-85 ("In the absence of legitimate countervailing concerns, the public interest clearly favors the protection of constitutional rights")).

To support their request for a stay, Appellants argue that absent a stay, this Court's order would create disuniformity in the application of the date requirement. Appellants' Mot. at 10. Here too, Appellants are wrong, both as a matter of fact and law. As a factual matter, the District Court's order did not create the disuniformity in the application of the envelope-date requirement—it was always there. As this Court observed, "the record is replete with evidence that the county boards' application of the *Ball* order in November 2022 general election created inconsistencies across the Commonwealth in the way 'correctly dated' and 'incorrectly dated' ballots were rejected or counted by different counties." Mem. Op. 70; *see also id.* pp. 70-71 (providing examples of disuniformity across counties). There is thus no merit to the argument that a stay would further the public interest in uniformity.  In fact, by concluding that enforcement of the dating requirement violates federal law, the District Court *promoted* a uniform approach to handling undated and incorrectly dated ballots throughout the counties.

And as a matter of law, the District Court's order allows all county boards in Pennsylvania to count undated and incorrectly dated ballots. The Supreme Court of Pennsylvania's *Ball* order was based on state law,

not federal law, and it expressly stated that it left unresolved the question of whether its order to enforce the date requirement violated federal law. 289 A.3d 1, 28, 35 (Pa. 2023). The District Court resolved that question when it held that the Materiality Provision of the Civil Rights Act prohibits county boards of election from enforcing the Pennsylvania date requirement. Although fifty-five county boards were dismissed from this case, nothing prevents them from relying on this Court's interpretation of federal law and finding that enforcement of the date provision would violate the Civil Rights Act.

And in any case, if this Court is concerned about uniformity in future elections, it can expedite this appeal, thus allowing for a considered decision well in advance of the 2024 elections that would bind all district courts in Pennsylvania. For these reasons, the balance of harms and the public interest also weigh against granting the stay.

## CONCLUSION

There is no emergency here, and Appellants cannot succeed on the merits. This Court should deny the stay pending appeal.

Dated: December 12, 2023          Respectfully submitted,

Aimee D. Thomson                       By: */s/ Ilana H. Eisenstein*
PHILADELPHIA LAW DEPARTMENT    Ilana H. Eisenstein

1515 Arch Street, 15th Floor
Philadelphia, PA 19102
aimee.thomson@phila.gov

(PA 94907)
*Counsel of Record*
Brian H. Benjet
Ben C. Fabens-Lassen
M. David Josefovits
DLA PIPER LLP (US)
1650 Market Street, Suite 5000
Philadelphia, PA 19103
(215) 656-3300
ilana.eisenstein@us.dlapiper.com
brian.benjet@us.dlapiper.com
ben.fabens-lassen@us.dlapiper.com
david.josefovits@us.dlapiper.com

*Counsel for Defendant*
*Philadelphia County Board of*
*Elections*

By: */s/ Lisa G. Michel*
Lisa G. Michel
(PA 59997)
ALLEGHENY COUNTY LAW
DEPARTMENT
445 Fort Pitt Boulevard
Pittsburgh, PA 15129
lisa.michel@alleghenycounty.us
(412) 350-1120

*Counsel for Defendant Allegheny*
*County Board of Elections*

## CERTIFICATE OF CONSENT

I hereby certify that I have obtained the consent of the non-filing signatory to this Response in Opposition to the Motion to Stay Pending Appeal—the above-listed counsel for Allegheny County Board of Elections.

Dated: December 12, 2023           By: */s/ Ilana H. Eisenstein*

*Counsel for Defendant Philadelphia County Board of Elections*

## COMBINED CERTIFICATIONS

1.     Pursuant to Third Circuit L.A.R. 28.3(d), at least one of the attorneys whose name appear on this response, including the undersigned, is a member in good standing of the bar of this Court.

2.     This response complies with the word limit of Fed. R. App. P. 27(d)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,198 words. This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced 14-point serif font (Century Schoolbook Std), using Microsoft Word.

3.     The text of this electronic response is identical to the text in any paper copies that will be filed with the Court

4.     This document complies with Third Circuit L.A.R. 31.1(c) because this document was scanned for viruses using Microsoft Defender, and no viruses were detected.

Dated: December 12, 2023            By: */s/ Ilana H. Eisenstein*

*Counsel for Defendant Philadelphia*
*County Board of Elections*

# CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2023, this Response in Opposition to the Motion to Stay was electronically filed with the Clerk of Court for the United States Court of Appeals for the Third Circuit using the appellate CM/ECF system, and that service will be accomplished via the Court's CM/ECF system.


Dated: December 12, 2023          By: */s/Ilana H. Eisenstein*

*Counsel for Defendant Philadelphia County Board of Elections*

## EXHIBIT TABLE OF CONTENTS

Meeting Transcript of Philadelphia County Board of Elections ................................................................... Exhibit 1

Amended Agenda Philadelphia City Commissioners (Nov. 22, 2023) ................................................................ Exhibit 2

Allegheny County Press Release ................................................ Exhibit 3

Montgomery County Press Release ........................................... Exhibit 4

Agenda Philadelphia City Commissioners (Nov. 30, 2023) ......... Exhibit 5

Montgomery County Election Board Meetign Agenda (Dec. 4, 2023) ................................................................. Exhibit 6

Order, Pet. Dismissed, Docket No. 23-26306 (Montgomery Cty. Court of Common Pleas, Dec. 7, 2023)) .......................... Exhibit 7

# Exhibit 1

1                    JUDGE CRUMLISH:  Good

2      afternoon, everyone.  The Return Board for

3      the 2023 general and special election has

4      reconvened.

5                    First, as you know, it is my

6      responsibility and duty to preserve order

7      and decorum during these meetings and

8      everyone in attendance should be on notice

9      that shouting or disruption of the

10     proceedings won't be tolerated and those who

11     violate it may be asked to leave.

12                   The Sunshine Act also permits

13     anyone attending a public meeting to object

14     to a perceived violation at any time during

15     the meeting.  If you choose to do so, please

16     succinctly state your objection and I remind

17     you that objections are not an opportunity

18     for litigation or speechmaking.

19                   We will now move to public

20     comment.  Commentors shall state where they

21     live, or if they're not a resident of

22     Philadelphia that they are a Philadelphia

23     taxpayer, or since this is a Return Board

24     which candidate, if any, they represent.

1    Public comment is not an opportunity for, as

2    I've said before, litigation, interrogation,

3    or questions and answers.  It's a public

4    comment and that's a chance for you to tell

5    us what you think.

6              Each speaker shall have

7    approximately two minutes.  However, I may

8    extend that time at my discretion.  All

9    public comments, however, must be germane to

10   the Board's business.  Finally, it is also,

11   as I've said before, my responsibility in

12   preserving order and decorum of these

13   meetings and, as such, no profane,

14   slanderous, discriminatory, or personal

15   attacks will be tolerated.  Now, anyone

16   wishing to offer public comment please step

17   forward.

18              (No response).

19              JUDGE CRUMLISH:  Hearing

20   none, Judge Furlong, do we have any e-mail

21   public comments?

22              JUDGE FURLONG:  There were no

23   public comments e-mailed by 9:45.

24              JUDGE CRUMLISH:  So now we

1   are going to stand in recess for

2   approximately 25-30 minutes before we

3   reconvene for the purpose of new business

4   which would be the results of the canvassing

5   and computation.  So we stand in recess.

6   Thank you all.

7                            -  -  -

8                    (Whereupon there was a recess

9   taken.)

10                           -  -  -

11                   JUDGE CRUMLISH:  Good

12  afternoon again.  We have an update.  We

13  anticipate about 15 to 20 more minutes

14  before we reconvene for the purposes of the

15  canvass and computation.  So we will keep

16  you advised.  Thank you.

17                           -  -  -

18                   (Whereupon there was a recess

19  taken.)

20                           -  -  -

21                   JUDGE CRUMLISH:  Good

22  afternoon.  We will reconvene and we will

23  now proceed to the results of the canvassing

24  and computation of the 2023 general election

```
 1   and special election.  Good afternoon.  We

 2   may proceed.

 3                  MS. FRANCHEK:  Good

 4   afternoon.  Justice of the Supreme Court.

 5   Daniel McCaffery, Democrat: 247,042.

 6   Carolyn Carluccio, Republican: 45,902.

 7   Write-in totals: 280.

 8             Judge of the Superior Court.  Jill

 9   Beck, Democrat: 208,578.  Timika Lane,

10   Democrat: 234,928.  Maria Battista,

11   Republican: 46,658.  Harry F. Smail, Jr.,

12   Republican: 42,322.  Write-ins: 356.

13             Judge of the Commonwealth Court.

14   Matt Wolf, Democrat: 227,278.  Megan Martin,

15   Republican: 46,274.  Write-in totals: 220.

16             Judge of the Court of Common

17   Pleas.  Natasha Taylor-Smith, Democrat:

18   201,305.  Tamika Washington, Democrat:

19   204,468.  Samantha Williams, Democrat:

20   190,770.  Kay Yu, Democrat: 184,310.

21   Chesley Lightsey, Democrat: 175,248.  Brian

22   McLaughlin, Democrat: 181,161.  Tamara

23   Garcia, Democrat: 141,108.  Caroline Turner,

24   Democrat: 152,850.  Jessica R. Brown,
```

1    Democrat: 155,170.  James J. Eisenhower,

2    Democrat: 138,927.  Elvin Ross, Democrat:

3    128,519.  Raj Sandher, Democrat: 124,315.

4    Write-ins: 3,961.

5             Judge of the Municipal Court.

6    Barbara Thomson, Democrat: 208,221.  Colleen

7    McIntyre Osborne: 162,250.  Rania Major,

8    Republican: 44,774.  Write-ins: 420.

9             Mayor.  Cherelle L. Parker,

10   Democrat: 232,075.  David Oh, Republican:

11   75,677.  Write-ins: 2,849.

12             City Commissioner.  Omar Sabir,

13   Democrat: 204,260.  Lisa Deeley, Democrat:

14   209,374.  Seth Bluestein, Republican:

15   60,850.  Write-ins: 704.

16             City Controller.  Christy Brady,

17   Democrat: 225,917.  Aaron Bsshir,

18   Republican: 52,603.  Write-ins: 297.

19             Register of Wills.  John Sabatina,

20   Democrat: 225,156.  Linwood Holland,

21   Republican: 47,187.  Write-ins: 886.

22             Sheriff.  Rochelle Bilal,

23   Democrat: 199,406.  Mark Lavelle,

24   Republican: 69,512.  Write-ins: 1,587.

1               Council at Large.  Isaiah Thomas,

2    Democrat: 197,642.  Katherine Gilmore:

3    189,917.  Rue Landau, Democrat: 175,976.

4    Nina Ahmad, Democrat: 184,332.  Jim Harrity,

5    Democrat: 153,839.  Drew Murray, Republican:

6    60,277.  Jim Hasher, Republican: 60,274.

7    Kendra Brooks, Working Families party:

8    83,616.  Nicholas O'Rourke, Working Families

9    party: 70,062.  Write-ins: 1,622.

10               District Council.  1st District.

11    Mark F. Squilla, Democrat: 29,402.

12    Write-ins: 576.

13               District Council 2nd District.

14    Kenyatta Johnson, Democrat: 26,184.

15    Write-in totals: 1,075.

16               District Council 3rd District.

17    Jamie Gauthier, Democrat: 22,431.  Jabari

18    Jones, West is Best: 3,403.  Write-ins: 61.

19               District Council 4th District.

20    Curtis Jones, Jr., Democrat: 29,491.

21    Write-ins: 406.

22               District Council 5th District.

23    Jeffrey J. Young, Jr., Democrat: 24,529.

24    Write-ins: 422.

ELECTIONS
11/24/2023

```
 1              District Council 6th District:
 2     Mike Driscoll, Democrat: 13,657.  Write-in
 3     totals: 95.
 4              District Council 7th District.
 5     Quetcy M. Lozada, Democrat: 11,319.
 6     Write-ins: 100.
 7              District Council 8th District.
 8     Cindy Bass, Democrat: 27,944.  Write-ins:
 9     1,159.
10              District Council 9th District.
11     Anthony Phillips, Democrat: 25,057.
12     Write-ins: 77.
13              District Council 10th District.
14     Gary Masino, Democrat: 11,393.  Brian
15     O'Neill, Republican: 17,474.  Write-ins: 50.
16              Superior Court Retention.  Jack
17     Panella.  Yes: 171,433.  No: 58,286.
18              Superior Court Retention.  Victor
19     Stabile.  Yes: 125,055.  No: 85,095.
20              Court of the Common Pleas
21     Retention.  Jacqueline F. Allen.  Yes:
22     168,514.  No: 45,807.
23              Court of the Common Pleas.
24     Giovanni O. Campbell.  Yes: 153,143.  No:
```

1    50,498.

2           Court of the Common Pleas

3    Retention.  Anne Marie B. Coyle.  Yes:

4    125,964.  No: 90,072.

5           Court of the Common Pleas

6    Retention.  Ramy Djerassi.  Yes: 135,373.

7    No: 60,002.

8           Court of the Common Pleas.  Joe

9    Fernandes.  Yes: 144,481.  No: 50,690.

10          Court of the Common Pleas.  Holly

11   J. Ford.  Yes: 144,729.  No: 49,952.

12          Court of the Common Pleas.  Timika

13   Lane.  Yes: 186,747.  No: 40,693.

14          Court of the Common Pleas.  J.

15   Scott O'Keefe.  Yes: 145,119.  No: 50,162.

16          Court of the Common Pleas.  Paula

17   A. Patrick.  Yes: 132,708.  No: 71,810.

18          Court of the Common Pleas.  Sierra

19   Thomas Street.  Yes: 158,002.  No: 47,168.

20          Court of the Common Pleas.  Nina

21   Wright Padilla.  Yes: 155,788.  No: 43,854.

22          Municipal Court Retention.

23   Marissa Brumbach.  Yes: 150,415.  No:

24   57,414.

1              Municipal Court Retention.

2    William A. Meehan, Jr.  Yes: 143,233.  No:

3    66,098.

4              Municipal Court Retention.  Brad

5    Moss.  Yes: 138,196.  No: 63,699.

6              Municipal Court Retention.  David

7    C. Shuter.  Yes: 126,839.  No: 74,012.

8              Municipal Court Retention.  Karen

9    Yvette Simmons.  Yes: 160,475.  No: 45,305.

10             Municipal Court Retention.  Marvin

11   L. Williams.  Yes: 151,460.  No: 48,016.

12             Municipal Court Retention.  Matt

13   Wolf.  Yes: 164,974.  No: 44,732.

14             Question number one.  Yes:

15   252,788.  No: 39,414.

16             JUDGE CRUMLISH:  Thank you,

17   Ms. Franchek.  That concludes the report of

18   the canvas and computation of the municipal

19   and special election of 2023 conducted on

20   November 7th of 2023.  Hearing nothing

21   further, Judge Johnson, do you have anything

22   to add to the agenda?

23             JUDGE JOHNSON:  No, I don't,

24   Mr. Chairman.

1                    JUDGE CRUMLISH:  Having said

2    that, we will stand in recess.  Thank you,

3    everyone.

4                         -   -   -

5                    (This concludes the meeting.)

6                         -   -   -

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

# CERTIFICATION

I, hereby certify that
the proceedings and evidence noted are
contained fully and accurately in the
stenographic notes taken by me in the
foregoing matter, and that this is a
correct transcript of the same.

_Amy Marzario_
Court Reporter - Notary Public

(The foregoing certification of
this transcript does not apply to any
reproduction of the same by any means,
unless under the direct control and/or
supervision of the certifying reporter.)

_____
**1**

**1,075**
6:15

**1,159**
7:9

**1,587**
5:24

**1,622**
6:9

**100**
7:6

**10th**
7:13

**11,319**
7:5

**11,393**
7:14

**124,315**
5:3

**125,055**
7:19

**125,964**
8:4

**126,839**
9:7

**128,519**
5:3

**13,657**
7:2

**132,708**
8:17

**135,373**
8:6

**138,196**
9:5

**138,927**

5:2

**141,108**
4:23

**143,233**
9:2

**144,481**
8:9

**144,729**
8:11

**145,119**
8:15

**150,415**
8:23

**151,460**
9:11

**152,850**
4:24

**153,143**
7:24

**153,839**
6:5

**155,170**
5:1

**155,788**
8:21

**158,002**
8:19

**160,475**
9:9

**162,250**
5:7

**164,974**
9:13

**168,514**
7:22

**17,474**
7:15

**171,433**
7:17

**175,248**
4:21

**175,976**
6:3

**181,161**
4:22

**184,310**
4:20

**184,332**
6:4

**186,747**
8:13

**189,917**
6:3

**190,770**
4:20

**197,642**
6:2

**199,406**
5:23

**1st**
6:10

_____
**2**

**2,849**
5:11

**201,305**
4:18

**2023**
9:19,20

**204,260**
5:13

**204,468**
4:19

**208,221**

5:6

**208,578**
4:9

**209,374**
5:14

**22,431**
6:17

**220**
4:15

**225,156**
5:20

**225,917**
5:17

**227,278**
4:14

**232,075**
5:10

**234,928**
4:10

**24,529**
6:23

**247,042**
4:5

**25,057**
7:11

**252,788**
9:15

**26,184**
6:14

**27,944**
7:8

**280**
4:7

**29,402**
6:11

**29,491**
6:20

**297**
5:18

**2nd**
6:13

_____
**3**

**3,403**
6:18

**3,961**
5:4

**356**
4:12

**39,414**
9:15

**3rd**
6:16

_____
**4**

**40,693**
8:13

**406**
6:21

**42,322**
4:12

**420**
5:8

**422**
6:24

**43,854**
8:21

**44,732**
9:13

**44,774**
5:8

**45,305**
9:9

**45,807**

7:22

**45,902**
4:6

**46,274**
4:15

**46,658**
4:11

**47,168**
8:19

**47,187**
5:21

**48,016**
9:11

**49,952**
8:11

**4th**
6:19

_____

**5**

**50**
7:15

**50,162**
8:15

**50,498**
8:1

**50,690**
8:9

**52,603**
5:18

**57,414**
8:24

**576**
6:12

**58,286**
7:17

**5th**
6:22

_____

**6**

**60,002**
8:7

**60,274**
6:6

**60,277**
6:6

**60,850**
5:15

**61**
6:18

**63,699**
9:5

**66,098**
9:3

**69,512**
5:24

**6th**
7:1

_____

**7**

**70,062**
6:9

**704**
5:15

**71,810**
8:17

**74,012**
9:7

**75,677**
5:11

**77**
7:12

**7th**
7:4  9:20

**8**

**83,616**
6:8

**85,095**
7:19

**886**
5:21

**8th**
7:7

_____

**9**

**90,072**
8:4

**95**
7:3

**9th**
7:10

_____

**A**

**Aaron**
5:17

**add**
9:22

**afternoon**
4:1,4

**agenda**
9:22

**Ahmad**
6:4

**Allen**
7:21

**Anne**
8:3

**Anthony**
7:11

**B**

**Barbara**
5:6

**Bass**
7:8

**Battista**
4:10

**Beck**
4:9

**Bilal**
5:22

**Bluestein**
5:14

**Brad**
9:4

**Brady**
5:16

**Brian**
4:21  7:14

**Brooks**
6:7

**Brown**
4:24

**Brumbach**
8:23

**Bsshir**
5:17

_____

**C**

**Campbell**
7:24

**canvas**
9:18

**Carluccio**
4:6

**Caroline**

4:23

**Carolyn**
4:6

**Chairman**
9:24

**Cherelle**
5:9

**Chesley**
4:21

**Christy**
5:16

**Cindy**
7:8

**City**
5:12,16

**Colleen**
5:6

**Commissioner**
5:12

**Common**
4:16  7:20,
23  8:2,5,
8,10,12,
14,16,18,
20

**Commonwealth**
4:13

**computation**
9:18

**concludes**
9:17

**conducted**
9:19

**Controller**
5:16

Council
6:1,10,13,
16,19,22
7:1,4,7,
10,13

Court
4:4,8,13,
16 5:5
7:16,18,
20,23 8:2,
5,8,10,12,
14,16,18,
20,22 9:1,
4,6,8,10,
12

Coyle
8:3

CRUMLISH
9:16

Curtis
6:20

**D**

Daniel
4:5

David
5:10 9:6

Deeley
5:13

Democrat
4:5,9,10,
14,17,18,
19,20,21,
22,23,24
5:1,2,3,6,
10,13,17,
20,23 6:2,
3,4,5,11,
14,17,20,

23 7:2,5,
8,11,14

District
6:10,13,
16,19,22
7:1,4,7,
10,13

Djerassi
8:6

Drew
6:5

Driscoll
7:2

**E**

Eisenhower
5:1

election
4:1 9:19

Elvin
5:2

**F**

Families
6:7,8

Fernandes
8:9

Ford
8:11

Franchek
4:3 9:17

**G**

Garcia
4:23

Gary
7:14

Gauthier
6:17

Gilmore
6:2

Giovanni
7:24

Good
4:1,3

**H**

Harrity
6:4

Harry
4:11

Hasher
6:6

Hearing
9:20

Holland
5:20

Holly
8:10

**I**

Isaiah
6:1

**J**

Jabari
6:17

Jack
7:16

Jacqueline
7:21

James
5:1

Jamie

6:17

Jeffrey
6:23

Jessica
4:24

Jill
4:8

Jim
6:4,6

Joe
8:8

John
5:19

Johnson
6:14 9:21,
23

Jones
6:18,20

Jr
4:11 6:20,
23 9:2

Judge
4:8,13,16
5:5 9:16,
21,23

Justice
4:4

**K**

Karen
9:8

Katherine
6:2

Kay
4:20

Kendra
6:7

Kenyatta
6:14

**L**

Landau
6:3

Lane
4:9 8:13

Large
6:1

Lavelle
5:23

Lightsey
4:21

Linwood
5:20

Lisa
5:13

Lozada
7:5

**M**

Major
5:7

Maria
4:10

Marie
8:3

Marissa
8:23

Mark
5:23 6:11

Martin
4:14

Marvin
9:10

Masino

7:14

Matt
  4:14 9:12

Mayor
  5:9

Mccaffery
  4:5

Mcintyre
  5:7

Mclaughlin
  4:22

Meehan
  9:2

Megan
  4:14

Mike
  7:2

Moss
  9:5

municipal
  5:5 8:22
  9:1,4,6,8,
  10,12,18

Murray
  6:5

**N**

Natasha
  4:17

Nicholas
  6:8

Nina
  6:4 8:20

November
  9:20

number
  9:14

**O**

O'KEEFE
  8:15

O'NEILL
  7:15

O'ROURKE
  6:8

Omar
  5:12

Osborne
  5:7

**P**

Padilla
  8:21

Panella
  7:17

Parker
  5:9

party
  6:7,9

Patrick
  8:17

Paula
  8:16

Phillips
  7:11

Pleas
  4:17 7:20,
  23 8:2,5,
  8,10,12,
  14,16,18,
  20

proceed
  4:2

**Q**

Question
  9:14

Quetcy
  7:5

**R**

Raj
  5:3

Ramy
  8:6

Rania
  5:7

Register
  5:19

report
  9:17

Republican
  4:6,11,12,
  15 5:8,10,
  14,18,21,
  24 6:5,6
  7:15

Retention
  7:16,18,21
  8:3,6,22
  9:1,4,6,8,
  10,12

Rochelle
  5:22

Ross
  5:2

Rue
  6:3

**S**

Sabatina
  5:19

Sabir
  5:12

Samantha
  4:19

Sandher
  5:3

Scott
  8:15

Seth
  5:14

Sheriff
  5:22

Shuter
  9:7

Sierra
  8:18

Simmons
  9:9

Smail
  4:11

special
  4:1 9:19

Squilla
  6:11

Stabile
  7:19

Street
  8:19

Superior
  4:8 7:16,
  18

Supreme
  4:4

**T**

Tamara
  4:22

Tamika
  4:18

Taylor-
smith
  4:17

Thomas
  6:1 8:19

Thomson
  5:6

Timika
  4:9 8:12

totals
  4:7,15
  6:15 7:3

Turner
  4:23

**V**

Victor
  7:18

**W**

Washington
  4:18

West
  6:18

William
  9:2

Williams
  4:19 9:11

Wills
  5:19

Wolf

4:14 9:13

**Working**
  6:7,8

**Wright**
  8:21

**Write-in**
  4:7,15
  6:15 7:2

**Write-ins**
  4:12 5:4,
  8,11,15,
  18,21,24
  6:9,12,18,
  21,24 7:6,
  8,12,15

---

**Y**

**Young**
  6:23

**Yu**
  4:20

**Yvette**
  9:9

# Exhibit 2



Tuesday November 21, 2023                          6:00 PM

Philadelphia City Commissioners

11311 Roosevelt Boulevard
Philadelphia, PA 19154

 

   I.   Call to order the meeting of Tuesday, November 21, 2023

  II.   Public Comments

      A.  In Person Public Comments
      B.  Report from the Secretary – emailed public comment

 III.   New Business

      A.  Mail Ballot Sufficiency Determination
         i.      Reconsider Missing Date
        ii.     Reconsider Incorrectly Dated

      B.  Additional non agenda items

# Exhibit 3

# <u>Notice Of Data Breach</u>    ✖

Find information about the <u>Election Results</u>    ✖

Allegheny County is introducing a new website in mid-December.    ✖
Please be advised during this transition, content or website services
may be temporarily unavailable. We apologize for any inconvenience.

 ALLEGHENY COUNTY

**Election Day Updates - November 7, 2023 General Election**

Updates will be available on this page beginning when polls open at 7 AM on Tuesday, November 7, 2023 and will continue through the certification of the vote. Please return often.

**7 AM Update**: Polls are now open.

At the warehouse, approximately 140 people have been sworn in and ballots are just now being pulled from the locked cages. The declaration envelopes will be reviewed for a second time to ensure that they are signed and correctly dated.

**8:30 AM Update**: At polling places, most are running smoothly with no issues.

One polling place – Pittsburgh 19-13 – is without power this morning. Electric lines to the building have been cut and so Emergency Services is in the process of bringing a generator and lights to the facility. Voting has not yet begun. Solicitors are working with the judges to allow for set-up outside for voting until the generator and lights arrive.

One polling place – Pittsburgh 25-01 – opened at approximately 7:20 PM due to a miscommunication related to access to the building.

Three polling place locations – Pittsburgh 29-03, Pittsburgh 26-10, and Baldwin 5 – had judges who slept in or did not show. In each case, the poll was open on time, but materials arrived late or are being secured now.

At the elections warehouse, staff completed the review of the declaration envelopes around 7:40 AM. The declaration envelopes are being opened and work has begun to extract the secrecy envelopes.

**11:30 AM Update**: Any lingering issues at the polling places reported in the 8:30 AM update have been resolved.

At Pittsburgh 19-13, a generator and lights arrived at 8:50 AM, allowing voting to move into the building.

At Bethel Park 08-01, 08-02, it was reported that there was construction in front of the entrance, but voters have access to the polling place and workers are directing at the intersection.

At the elections warehouse, there are currently four authorized representatives – two for Democratic candidates/party, and two for Republican candidates/party.

Ballot extraction began at approximately 9:55 AM. Scanning began at 11:15 AM.

**3:30 PM Update**: There have been no further reports from the polling places regarding any major issues.

At the warehouse, the first shift ended at 2 PM when all extraction was complete. There are approximately 22 staff remaining at the warehouse for any remaining processing and scanning. Additionally, three authorized representatives remain at the warehouse – one Democrat and two Republicans.

As of 3 PM, all ballots that had been received at the warehouse this morning have been opened and scanned. There are 3,025 ballots that arrived in today's mail, and 650 ballots that were returned at the curbside ballot return yesterday. Those 3,675 ballots are currently being processed.

Ballot return at the County Office Building remains open until 8 PM. Staff is transporting ballots turned in this morning through 3 PM to the warehouse now so that they may also be processed. Any ballots turned in between 3 and 8 PM will be brought

to the warehouse once polls close for processing. The division also expects to make one more run to the post office at approximately 7 PM for any remaining ballots that were mailed in.

**5:30 PM Update:** Another 697 ballots were returned at the County Office Building through 3 PM. They have been brought to the warehouse, and are being processed and scanned.

Three authorized representatives remain at the warehouse – one Democrat and two Republican.

Polls remain open for another two and a half hours. Anyone who is line to vote at 8 PM will be allowed to vote.

As already noted, we will be making a final mail run at 7:30 PM and any ballots returned to the COB today will be brought to the warehouse after 8 PM. I'll provide any numbers on those after 8 PM.

The next update will be at 8 PM when polls close, followed by an email when the mail-in and absentee ballot results are posted. The next update after that will be when the first in-person voting is reporting. We expect that to be between 9-9:30 PM.

**8 PM Update:** Polls are now closed.

**8:01 PM Update:** Initial absentee and mail-in results are now reporting:
https://results.enr.clarityelections.com/PA/Allegheny/118632/web.317647/#/summary

**8:30 PM Update:** There were 768 ballots in this afternoon's mail from the Postal Service. They are currently being reviewed and processed and will be scanned this evening.

A small tray of mail arrived shortly after 8 PM. Those ballots have been set aside and will be dealt with during the Return Board process. We do not have a number at this time.

Around 7 PM, the Elections Division sent over another 361 ballots that had been returned to the County Office Building ballot return. The Division Manager will bring over any remaining ballots that were returned between 7 PM and 8 PM when he reports to the warehouse this evening.

We'll provide another update when in-person results begin reporting.

**8:45 PM Update:** The first set of in-person results – from 66 precincts – are uploading now. From this point forward, the system will update approximately every 15 minutes until all results are in.

**10 PM Update**: In-person results continue to be uploaded approximately every 15 minutes. We will advise when all materials have been received from the 1,324 polling places.

Pittsburgh 19-13 was the precinct earlier today that had no power. Due to running off of the generator, the scanner was turning on and off. As a result, the Board solicitor advised the Judge of Elections and poll workers to have voters complete their ballots as normal, but rather than scanning them, they were put into a locked slot on the scanner. When polls closed, the Board solicitor, along with two elections staff arrived and took custody of the board's materials that would have been turned in at the regional reporting center and also took the ballots after they were secured in a locked bag. Those ballots were then brought to the elections warehouse by those three staff and scanned at the warehouse into a precinct-level scanner with the authorized representatives observing the process (three remain at the warehouse – one Democrat, two Republicans). The results will report out the same as any other precinct would, but we're providing this information to be transparent about the process. A total of 80 individuals voted at that precinct today.

Last month, it was discovered that several mail-in and absentee ballots in Pittsburgh 25-03 had been sent out without one race listed on the ballot. Accordingly, new, corrected ballots were distributed to those voters. Like with other similar issues in prior years, those ballots will be held until the Return Board and processed at that time to ensure that only one ballot per voter is counted.

As reported earlier, there were ballots received by Elections from the Postal Service that were received after 8 PM. That number is 151, and all of them have been set aside to be handled during the Return Board process.

The last flat of ballots that were returned by voters to the County Office Building today before 8 PM included 380 ballots. The Elections Division staff is currently reviewing and processing them, before those ballots are scanned and added to the totals.

We previously reported that there were 768 ballots in this afternoon's mail from the Postal Service. We apologize for the typo. That number was 968.

Finally, while ballots are still being processed and scanned, they have now all been logged into the SURE system and we're able to provide final numbers of absentee and mail in ballots as follows:





The same has been uploaded to the main Elections webpage.

**11:10 PM Update:** There are currently 1,320 of the 1,324 precincts reporting with the unofficial results read into the election night database. All materials have now been turned into the regional reporting centers and will be transported back to the warehouse this evening and secured.

Not reporting are Clairton 04-01, Forest Hills 00-02, Pittsburgh 12-12, and Pittsburgh 16-08. In precincts that are not reporting, there was either no unofficial result memory stick turned in or it was unable to be read. Scanners from precincts that did not return memory sticks will be picked up from polling places beginning tomorrow and secured at the warehouse. They will remain unopened until the Return Board convenes on Friday. Results from the official results memory sticks will be read into the official election database and will serve as the starting point for the Return Board process.

Please note that there are also several fail safes for results – two memory sticks, tapes from the polls closing signed by the poll workers, and the actual ballots themselves.

All mail-in and absentee ballots received timely have now been scanned and are reflected on the election results page. Final numbers for mail-in and absentee ballots have been updated in the graphics on the main Elections page.

Canvassing operations at the warehouse have now ended.

The next update will be provided on Thursday, November 9th. Please note that due to the long election day, there is only a skeleton staff working at Elections tomorrow, so we will not be providing any updates.

**November 9 Update:** The Return Board will be sworn in at 8:45 AM with their work beginning at 9 AM on Friday, November 10, 2023 at the Elections Warehouse at 901 Pennsylvania Avenue, Pittsburgh 15233. After the board is sworn in, the staff will be charged with beginning doing the research and investigation into provisional ballots so that recommendations may be presented. That work is expected to take several days with presentation of recommendations on those ballots beginning next week.

Tomorrow, November 10, 2023, is a county holiday in observance of Veterans Day. Because of that, the Return Board will only be working for a short time in the morning before recessing for the day.

Next week, the election results will be uploaded from the official results memory sticks. All results on the elections website will switch from the unofficial results (Election Day results) to the official results from which the Return Board will work.

Voters who qualify as civilian overseas and military who vote by absentee have until 5 PM on Tuesday, November 14 to return their ballots. There were 241 applications for civilian overseas voters approved and, to date, 115 have been returned. There were also 49 applications for military voters approved and, to date, 22 has been returned. Those will be opened, processed and counted after the November 14 deadline.

Section 2650 of the Election Code governs candidates, watchers or attorneys at sessions of the county board. Every candidate shall be entitled to be present in person or by attorney in fact and to participate in any proceeding before any board where matters which may affect candidacy are being heard. Watchers must be county residents while there are no such requirements for attorneys.

Watchers or attorneys for candidates should be prepared to provide a letter signed by the candidate designating the person accordingly. Representatives of parties may participate by presenting a letter signed by a party officer designating their

participation. Information may also be submitted in advance via email at
BOE@alleghenycounty.us.

Viewing of the Return Board process is open to everyone, but any individual who is not
a candidate or candidate representative will be limited to specific viewing areas.

**November 10 Update:** The Return Board was sworn in this morning at 8:45 AM by
Board of Elections Chair Rich Fitzgerald. In attendance were a candidate, a watcher,
and a member of the public. After being sworn in, the board pulled provisional ballots
and began researching them. There are approximately 2,900 at this time. The board
recessed at 10:30 AM and will re-convene on Monday at 9 AM. The board will spend
the full day Monday researching provisional ballots. They do not expect to begin to
present recommendations on those ballots until Tuesday, but we will provide another
update on Monday, November 13, at end of day.

**November 13 Update:** The Return Board resumed their work at 9 AM this morning and
has been focused on research of provisional ballots. At various times today, there were
four watchers present who are interested in races in Indiana Township, North Fayette
Township, and Pine-Richland School District. As the research on those provisional
ballots have been completed, they have been presented to the watchers for
consideration. The board recessed today around 4 PM.


Tomorrow, the Return Board will reconvene at 9 AM to again work on provisional ballot
research. Tomorrow is also the deadline for overseas civilian and military ballots to be
returned. Once tomorrow's mail has been received, those ballots will be opened,
processed, and counted. Provisional ballots that are recommended for full or partial
count, for which no challenge has been recorded, will also be opened, processed, and
counted. Those votes will be uploaded before the end of business, and the official
database will also be uploaded with all precincts reporting to the election results page
before the end of business tomorrow.

**November 14 Update:** The Return Board resumed work at 9 AM this morning and has
continued to research provisional ballots. No watchers were present for today's Return
Board which recessed at 4 PM today.

Today was the deadline for overseas civilian and military ballots to be returned. Those ballots, 150 in all, were opened, processed, and counted today. The official database has also been uploaded with all precincts reporting to the election results page: https://results.enr.clarityelections.com/PA/Allegheny/118632/web.317647/#/summary

The Return Board will reconvene tomorrow at 9 AM to continue their work. Provisional ballots that are recommended for full or partial count, for which no challenge has been recorded, will be opened, processed, and counted beginning tomorrow.

**November 15 Update:** The Return Board resumed their work at 9 AM this morning and completed their research into all provisional ballots. Approximately 1,400 of those have been processed and counted and those results added to the election results page. This reflects about 2/3 of the ballots that have been recommended for full or partial count for which no challenge has been recorded.

The staff has also begun to review write-in results for school board director positions. There are potentially seven (7) school districts in which write-in results may impact declared winners.

One watcher was present for today's Return Board which recessed at 4 PM today.

The Return Board will reconvene tomorrow at 9 AM to continue its work. Any remaining provisional ballots that are recommended for full or partial count, for which no challenge has been recorded, will be counted and added to the election results page.

The review of write-in results for school board director positions will also continue.

Finally, the reconciliation of in-person voting using the poll books, voter lists, and ballots cast will begin tomorrow.

**November 16 Update**: The Return Board reconvened today at 9 AM.

Approximately 740 provisional ballots that were recommended for full count, for which no challenge has been recorded, were counted and added to the election results page.

The review of write-in results for school board director positions has been completed. Write-in candidates were successful in the following school districts:  Brentwood, Duquesne and Sto-Rox (Region 1 and 2, 2-year and 4-year terms). The full list of write-in candidates will be posted tomorrow and the division will begin to reach out to those individuals to determine who will accept their votes and would then determine winners based on those responses.

The Return Board completed its reconciliation of in-person voting using the poll books, voter lists, and ballots cast.

There were no watchers present today. Appeals of provisional ballot decisions that had previously been raised were withdrawn today. The Return Board recessed at 4 PM.

Tomorrow, the Return Board will reconvene at 9 AM. Provisional ballots recommended for partial count will be created, scanned and counted, and added to the election results page tomorrow.

**November 17 Update**: The Return Board reconvened today at 9 AM.

The remaining provisional ballots that were recommended for count were completed today and the results added to the election results page.

All write-in votes have been tallied. A listing of those candidates will be posted next week, rather than today, as initially indicated. The division will reach out to those individuals to determine who will accept their votes and would then determine winners based on those responses.

There were no watchers present today. The Return Board recessed at 3 PM.

On Monday, the Return Board will reconvene at 9 AM. The board will be conducting two state-required audits – the audit of 2% or 2,000 ballots, and the risk-limiting audit of 11 batches.

**November 22 Update:** The Return Board has completed its work.

Preliminary results are now posted. Preliminary vote totals include in-person, absentee, mail-in, and counted provisional ballots. These preliminary results will become official on Monday, November 27, 2023 unless a petition for recanvass or recount has been filed with the appropriate Court awaiting disposition.

All write-in votes have been tallied. A listing of those candidates is available here. The division will reach out to those individuals to determine who will accept their votes and would then determine winners based on those responses.

The Allegheny County Board of Elections shall convene at 10:00 a.m. on Monday, November 27, 2023, in the Gold Room, County Courthouse, Fourth Floor, 436 Grant Street, Pittsburgh, PA 15219 to certify the 2023 Municipal Election and general business. The meeting will be streamed on the county's Facebook page.

Anyone wishing to submit written comments should do so by 10:00 a.m. on Sunday, November 26, to BOE@alleghenycounty.us. Written comments will be summarized at the meeting and entered into the record. Anyone wishing to address the board in person should register by 10:00 a.m. on Sunday, November 26, by emailing their name, address and that they wish to speak in-person to BOE@alleghenycounty.us. Remarks will be limited to three (3) minutes.

**November 28 Update:** The Board of Elections met yesterday at 10 AM and voted unanimously to certify the results of the November 7, 2023 Municipal Election.

Certificates of election were sent out yesterday to the winning school board candidates. By state law, those officials are sworn in during the first week of December.

Remaining certificates of election will begin going out after December 7, 2023.

As reported last week, there were a number of write-in candidates. The division will be contacting those individuals by letter to determine who will accept their votes and would then determine winners based on those responses. That unofficial list is available

on the Election Day Updates page, the Candidates page, and the Election Results page.

This will be the last update for this election.

# Exhibit 4

Create a Website Account - Manage notification subscriptions, save form progress and more.

Case: 23-3166     Document: 34     Page: 67     Date Filed: 12/12/2023

Website Sign In



| | | | | |
|---|---|---|---|---|
| MONTGOMERY COUNTY \| PA | 2024 Budget | Administration | Departments | Doing Business | Parks, Trails, & Historic Sites | How Do I? |

What can we help you find?

**Agendas & Minutes**

**Commissioners' Board Meetings** ►

**Requests for Proposal/Bids**

**Employment Opportunities**

**Community Connections** ►

**ReadyMontco**

**Stay Informed** ►

**Contact Directory**

**Overdose Prevention**

Home › News Flash

2023 Press Releases

### MONTGOMERY COUNTY GENERAL ELECTION CERTIFICATION POSTPONED DUE TO COURT RULING

Posted on: November 22, 2023

NORRISTOWN, PA—The Montgomery County Board of Elections is postponing the certification of the 2023 General Election due to yesterday's ruling of the United States District Court for the Western District of Pennsylvania.

The election certification, which was scheduled to happen on Wednesday, November 22, 2023, will be postponed to allow for the canvass and tabulation of undated and improperly dated mail-in ballots. The canvass and tabulation will begin on Monday, November 27 at 10 a.m. at the Montgomery County Voters Services Warehouse, located at 1006 W Washington St, Norristown, PA 19401. Canvassers will open up to 349 ballots that have missing or incorrectly dated envelopes, tabulate them, and include them in the official results for the election.

The court's ruling declared that not counting ballots with a missing or incorrect date violates federal law. "The provision protects a citizen's right to vote by forbidding a state actor from disqualifying a voter because of their failure to provide or error in providing some unnecessary information on a voting application or ballot," Judge Susan Baxter wrote in her opinion. The court's order states that the missing or incorrect date is unnecessary information and thus should not affect a voter's eligibility to have their votes counted.

"In Montgomery County, we have consistently taken the position that the Election Code should be interpreted broadly in favor of voters' rights. All eligible voters should have their ballots counted," said **Kenneth E. Lawrence Jr., Chair of the Montgomery County Board of Elections**. "We will take the additional time needed to ensure that these ballots are included in the official results of the 2023 General Election."

After all eligible ballots have been counted, in accordance with the election code, the results will be posted for the five-day waiting period. The County will then certify the 2023 General Election.

The unofficial results of the 2023 General Election are available on the County's election results dashboard.

For more information about Montgomery County Voters Services, visit www.montgomerycountypa.gov/voters.

Media Contact: megan.alt@montgomerycountyPA.gov

###



⇦ Previous
MONTGOMERY COUNTY ISSUES CODE BLUE COLD WEATHER DECLARATION FOR NOVEMBER 24 - 25, 2023

Next ⇨
MONTGOMERY COUNTY ISSUES CODE BLUE COLD WEATHER DECLARATION FOR NOVEMBER 20 - 21, 2023

### Other News in 2023 Press Releases

MONTGOMERY COUNTY ISSUES CODE BLUE COLD WEATHER DECLARATION FOR December 6 - 7, 2023

**Search**

All categories

**Tools**
- RSS
- Notify Me
- View Archived

**Categories**
- All Categories
- Commerce
- Recorder of Deeds
- Health Department
- Parks, Trails, and Historic Sites
- Voters
- Sheriff
- DA - 2015 News Releases
- DA - 2016 News Releases
- Domestic Relations
- Planning
- DA - 2017 News Releases
- DA - 2018 News Releases
- 2019 Press Releases
- DA - 2019 News Releases
- HHS News
- 2020 Press Releases
- DA - 2020 News Releases
- DA - 2021 News Releases
- 2021 Press Releases



Select Language

Powered by Google Translate

# Exhibit 5



November 30, 2023

Philadelphia Ballot Processing Center Hearing Room
11311 Roosevelt Blvd.
Philadelphia, PA 19154

12:00PM

Call to order the Return Board Meeting of Thursday, November 30, 2023

    I.    Public Comments
        A.  In-Person
        B.  Report from the Secretary – Emailed Public Comments

    II.   New Business
        A.  Signing of Certification
        B.  Additional Non-Agenda Items

# Exhibit 6



**Montgomery County**
**Election Board Meeting Agenda**
**December 4, 2023**

**Kenneth E. Lawrence, Jr.**
**Chair**

**Hon. Daniel J. Clifford**                                    **Joseph C. Gale**

A. <u>Call to Order</u>

B. <u>Pledge of Allegiance</u>

C. <u>Election Board Comments</u>

D. <u>General Public Comment – Limited to 3 minutes</u>

E. <u>Approval of Minutes</u>

F. <u>Certification of the 2023 General Election – Francis Dean</u>

G. <u>Adjourn</u>

# Exhibit 7

Case# 2023-26306-6 Docketed at Montgomery County Prothonotary on 12/07/2023 4:02 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# IN THE COURT OF COMMON PLEAS MONTGOMERY COUNTY, PENNSYLVANIA

IN RE CONTEST OF NOVEMBER 7, 2023    :
ELECTION OF TOWAMENCIN           :        No. 2023-26306
TOWNSHIP SUPERVISOR            :

## ORDER

**AND NOW,** this  7  day of  _Dec._  , 2023, upon consideration of the

PETITION FOR ELECTION CONTEST, *OR IN THE ALTERNATIVE* PETITION FOR

ELECTION CONTEST *NUNC PRO TUNC* filed in the above captioned lawsuit, and the

response thereto, it is hereby **ORDERED** and **DECREED** that this Petition is **DENIED,** and

this lawsuit is **DISMISSED.**[1]

BY  THE COURT:

_____

**JOSEPH A. SMYTH, S.J.**

Copy of the above order E-Filed 12/7/23
Copies Mailed via Prothonotary to:
All Parties of Record
Copies Emailed via Chambers to:
Court Administration: Civil Division
Judicial Assistant _Alandee Hygge_

---

[1] This court adopts as the basis for this ruling the reasoning set forth in the opinion of United States District Judge Susan Paradise Baxter dated November 21, 2023 in *Pennsylvania State Conference of the NAACP, et al v. Al Schmidt, In His Official Capacity as Secretary of the Commonwealth, et al*, United States District Court for the Western District of Pennsylvania, Erie Division Case No, 1:22- CV-00339 Section V. - C pp. 49-73.

RULE 236 NOTICE PROVIDED ON 12/07/2023