No. 23-3166

# IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

PENNSYLVANIA CONFERENCE OF THE NAACP, *et al.*,

v.

SECRETARY OF THE COMMONWEALTH, *et al.*,

REPUBLICAN NATIONAL COMMITTEE, *et al.*,

*Appellants*

On Appeal from the United States District Court for the Western District of Pennsylvania, Case No. 1:22-cv-00339

Secretary of the Commonwealth's Combined Response to the Motion to Intervene and Motion for a Stay

Robert A. Wiygul
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933

Sean A. Kirkpatrick
Elizabeth Lester-Abdalla
OFFICE OF ATTORNEY GENERAL
15th Floor, Strawberry Square
Harrisburg, PA 17120

Michael J. Fischer
Jacob B. Boyer
GOVERNOR'S OFFICE OF GENERAL COUNSEL
333 Market Street, 17th Floor
Harrisburg, PA 17101
(717) 460-6786
jacobboyer@pa.gov

*Counsel for Secretary of the Commonwealth Al Schmidt*

# INTRODUCTION

Richard Marino's motion to intervene and the RNC's motion for a stay both rest on the mistaken premise that this appeal could affect the outcome of the 2023 race for Towamencin Township Supervisor. The Montgomery County Board of Elections has certified the result of that election. Certification extinguished Marino's interest in this case and the RNC's interests in a stay, just as certification of a 2021 Lehigh County race for judge extinguished the losing candidate's interest in appealing this Court's decision in *Migliori v. Lehigh County Board of Elections* that certain ballots should be counted in that race. *See Ritter v. Migliori*, 143 S. Ct. 297 (2022) (vacating *Migliori* as moot after election was certified).

Marino's and the RNC's motions not only ignore that effect of certification on their respective interests here, but they also seek relief from the wrong decision. Their complaint was with Montgomery County, which elected to count ballots with irrelevant errors in a handwritten date for the 2023 election. Multiple counties not subject to the declaratory judgment in this case made the same decision. *See* Ex. 1, Ramachandran Decl. ¶ 8. All those counties were free to follow the *reasoning* of the district court's decision because, contrary to the RNC's claims, *see* RNC

Stay Mot. at 1 (Doc. # 9), the Pennsylvania Supreme Court explicitly disclaimed deciding the federal issue presented in this case. *See Ball v. Chapman*, 289 A.3d 1, 28 (Pa. 2023). Nothing this Court can do in this appeal could compel Montgomery County to reverse course.

Marino and the RNC had ample opportunity to challenge Montgomery County's decision. But for nine days after the county announced it would count these ballots, Marino did nothing. He chose to forgo multiple methods of state court review and did not seek to delay certification. Marino's inaction is inexcusable and, under the circumstances, makes his motion to intervene untimely.

The motions have additional flaws beyond their pursuit of unobtainable relief.

As to intervention, Marino's interests are adequately represented by the RNC, which intervened in the district court to protect Republican candidates' electoral success, ECF No. 30 at 12 (RNC brief in support of intervention), and with which Marino shares counsel.

As to a stay, the RNC is unlikely to prevail on the merits. This Court already persuasively resolved the central issue here contrary to the RNC's position. *See Migliori*, 36 F.4th 153, *vacated as moot by Ritter v.*

2

*Migliori*, 143 S. Ct. 297 (2022). The RNC contorts itself to avoid *Migliori* and the plain meaning of 52 U.S.C. § 10101(a)(2)(B), but the district court's resolution of this matters follows from a straightforward application of that statute. Further, the RNC invents a parade of horribles it claims will result if counties are not compelled to disregard the votes of legal, registered voters who make an inconsequential error in filling out their ballot return envelope,[1] but greatly exaggerates the consequences of interpreting the law based on what it says.

For these reasons, this Court should deny both motions and then consider the issue in this case on fully developed briefing and arguments.

## ARGUMENT

## I.    Intervention Should Be Denied.

A party seeking to intervene as of right must file a timely motion and show that it has "an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to

---

[1] As has consistently been the case, the voters who made a date error in Towamencin were disproportionately older. The voters who submitted those ballots were ages 83, 78, 77, 74, 29, and 25. *See* Ex. 1, Ramachandran Decl. ¶ 3.

protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P.24(a)(2); *see also Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 277 (2022) (explaining that intervention on appeal is determined by "the policies underlying intervention in the district courts" (cleaned up)).

Marino's motion fails at each step.

## A.    Marino's Motion Was Untimely.

Because Marino waited until after the district court entered final judgment before attempting to intervene, he must show "extraordinary circumstances" justify intervention. *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982). Yet, Marino has failed to demonstrate what extraordinary circumstance warrants his untimely intervention, has failed to explain why he inexcusably delayed, and has failed to explain why he did not protect his interests through avenues available in state court.[2]

On November 21, the district court issued its declaratory judgment that 52 U.S.C. § 10101(a)(2)(B) prohibits cancelling ballots merely

---

[2] Permissive intervention fails as well. *See* Fed. R. Civ. P. 24(b) (requiring a "timely motion").

because a voter neglected to properly write a meaningless date on their return-envelope declaration. ECF No. 348.

The next day, Montgomery County, which had not yet certified its 2023 election results, announced it would count mail ballots "that have missing or incorrectly dated envelopes." Montgomery County Press Release (Nov. 22, 2023), https://www.montgomerycountypa.gov/CivicAlerts.aspx?AID=4252.

Anyone "aggrieved" by Montgomery County's decision had two days to appeal. *See* 25 P.S. § 3157(a). Marino did not do so. Nor did any party in this litigation seek any relief in district court after Montgomery County announced its decision.

Also on November 22, the district court issued an order informing the parties—including those sharing Marino's counsel—that "if no further motions are filed by November 28, 2023, a Rule 58 judgment will be entered." Docket Order (Nov. 22, 2023). Again, neither Marino nor the RNC took any action in response.

On November 27, Montgomery County canvassed 349 ballots returned without a properly dated envelope declaration, including six ballots submitted in Towamencin Township. With all ballots counted, the

race for Supervisor was tied. Marino Mot. ADD., Marino Decl. ¶ 10 (Doc. # 8). Still, no one did anything in state court, including pursuing a recount under 25 P.S. §§ 3261 and 3263, or in the district court.

The county publicly announced on November 29 that it would certify its results on December 4. Montgomery County Press Release (Nov. 29, 2023), https://www.montgomerycountypa.gov/CivicAlerts.aspx?AID=4263. Also on November 29, the district court entered the final judgment it had said was forthcoming. ECF No. 350. Again, no party sought relief in state court or this court.

A tiebreaker was held on November 30 and Marino lost. Marino Mot. ADD., Marino Decl. ¶¶ 11-12.

On December 1, Marino finally moved to intervene and the RNC moved to stay the district court's order. *See* ECF No. 354 (stay); ECF No. 355 (intervene). Marino claimed "[t]ime is of the essence," ECF No. 355 at 2 (motion to intervene), but was silent as to why he had not acted accordingly in the preceding days. Nor did Marino attempt to forestall certification. In fact, Marino failed to mention that certification would occur on December 4 and instead asked for a resolution of his motion by December 8. *Id.*

Marino defends his lack of diligence by ascribing his interest in this case to the judgment entered on November 29, Marino Mot. at 9, but his own declaration avers that his purported interests derive from the district court's November 21 order and Montgomery County's November 22 decision to count six ballots, Marino Mot. ADD., Marino Decl. ¶¶ 8-13. The ballots were counted and the race declared tied before judgment was entered.

The only challenge to Marino's loss brought under the Election Code was an election "contest" filed on December 4. Petition, *In re: Contest of Nov. 7, 2023 Election*, No. 23-26306 (Mont. Cnty. C.C.P. Dec. 4, 2023).[3] The contest was filed seven days after the statutory deadline, *see* 25 P.S. § 3456, and already has been dismissed, with the common pleas court citing the "reasoning" of the district court's order. See Order,

---

[3] Election contests differ from challenges to the decisions of county boards (under 25 P.S. § 3157(a)) or recount requests (under 25 P.S. §§ 3261 and 3263), as they require the party contesting the election to meet the high threshold of showing that the election was "illegal." 25 P.S. § 3456.

*In re: Contest of Nov. 7, 2023 Election*, No. 23-26306 (Mont. Cnty. C.C.P. Dec. 7, 2023).[4]

## B.    Marino has not Established an Interest that Will Be Impaired by this Case.

As announced on November 29, *supra* at 6, Montgomery County certified its races on December 4. When it did, Marino formally lost his election. As a result, Marino cannot "demonstrate that there is a tangible threat to a legally cognizable interest" as is required under Rule 24. *Harris v. Pernsley*, 820 F.2d 592, 601 (3d Cir. 1987).[5]

Given the chronology of events, this case's posture, and the issues in this case, nothing will change the outcome of Marino's election. Neither staying the district court's declaratory judgment—or even reversing it— will force Montgomery County to act. Indeed, without a specific court order responding to a request to amend certification, there is no mechanism for a county board to recertify a race it already has certified.

---

[4] State courts are not bound by the decisions of lower federal courts on federal law. *See Hall v. Pennsylvania Bd. of Prob. & Parole*, 851 A.2d 859, 865 (Pa. 2004).

[5] Like his delay, Marino's lack of any interest in this case is fatal to his argument for permissive intervention, because he lacks "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

Marino has no more interest in this case than the candidate who lost a 2021 judicial race in Lehigh County had in appealing this Court's decision in *Migliori* after his loss was certified. Indeed, the candidate petitioning for review of *Migliori* argued the case had become moot because "certification marks the end of the parties' controversy." *See* Pet. for Writ of Certiorari at 13, *Ritter v. Migliori*, No. 22-30 (U.S. July 7, 2022). The U.S. Supreme Court agreed, and vacated *Migliori* because the appeal was moot. *See Ritter*, 143 S. Ct. 297.

Marino simply ignores that, under these circumstances, final certification is fatal to his request to intervene, and he never explains how he would convert any order in this case into a reversal of his election defeat. He claims that a stay would allow him "to seek redress from that impairment [*i.e.*, the election result]," Marino Mot. at 14-15, but does not elaborate on what "redress" he will seek or where. Indeed, there is nothing left for him to do because he 1) failed to challenge Montgomery County's decision to count the six ballots; 2) never pursued a recount; and 3) never asked to delay certification of his race.

The claim that a stay here will "ensure that Mr. Marino is timely certified as the winner," *id.* at 2, is simply wishful.

### C.    Existing Parties Adequately Represent Marino's Interests.

Finally, Marino hardly disputes that the RNC adequately represents his interests.

Because Marino does not allege collusion between existing parties or that the RNC is not diligently litigating this case, Marino can show inadequate representation only if his purported interests and the RNC's "diverge sufficiently" such that the RNC cannot "devote proper attention" to Marino's interests. *Brody By & Through Sugzdinis v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992). That is not the case.

The RNC intervened below based on its "obvious interest in advancing the overall electoral prospects of Republican candidates in Pennsylvania, and in winning elections in the Commonwealth." ECF No. 30 at 12 (RNC brief in support of intervention). The motion for a stay filed in this court includes a declaration from the Executive Director of the Republican Party of Pennsylvania professing a specific interest in Marino's victory. RNC Stay Mot. ADD., Alleman Decl. ¶ 37-38.

Marino notes that he alone is interested "in receiving compensation" as Supervisor, Marino Br. at 15, but *why* Marino wants to reverse his defeat is irrelevant to the analysis. Whether the RNC cares

about Marino's compensation, it will litigate this case in precisely the same way, because it too wants to reverse his defeat. If the election could be flipped to Marino, he would get paid as Supervisor.

Marino even employs the same counsel as the RNC for this litigation. Inadequacy of representation "can hardly be claimed [where] the same attorney[s] represents both the original [party] and the proposed intervenor[]." *Carroll v. Am. Fed'n of Musicians of U. S. & Canada*, 33 F.R.D. 353, 353 (S.D.N.Y. 1963).[6] Indeed, Marino and the RNC filed a single stay motion arguing a stay is needed to reverse the election outcome.

## II.   The Motion for a Stay Should Be Denied.

A stay pending appeal should be entered only when, weighing the applicant's likelihood of success on the merits, their likelihood of irreparable injury, and the public interest, there is a strong basis for

---

[6] The use of the same counsel as an existing party may be determinative of adequate representation or, instead, "a strong factor pointing to adequate representation." *Steinberg v. Shearson Hayden Stone, Inc.*, 598 F. Supp. 273, 281 (D. Del. 1984). Either way, Marino's use of the same counsel further establishes that his interests are adequately represented.

entering relief. *In re Citizens Bank, N.A.*, 15 F.4th 607, 616 (3d Cir. 2021). No factor here counsels for staying the district court's order.

### A. The RNC Has No Interest that would Justify Staying the District Court's Order.

*First*, the RNC insists a stay is needed to exclude six ballots counted for Marino's Supervisor race, RNC Stay Mot. at 9-10, 11-12, but staying the order will not stop those ballots from being counted, *supra* at 8-9. They have already been counted and both the RNC and Marino failed to timely challenge that decision, or seek any other relief, *supra* at 4-7.

Any interest the RNC might have had in staying the district court's order is now moot, just as the losing candidate's interest in appealing this Court's order in *Migliori* that certain ballots be counted in a 2021 election became moot after the election was certified. *See Ritter*, 143 S. Ct. 297 (vacating *Migliori* under the *Munsingwear* doctrine); *see also* Pet. for Writ of Certiorari at 15, *Ritter v. Migliori*, No. 22-30 (U.S. July 7, 2022) (arguing appeal became moot after certification).

The RNC's stay motion is almost indistinguishable in substance and posture to one filed after this Court's decision in *Migliori. Compare* Emergency Application for Stay, *Ritter v. Migliori*, No. 21A772 (U.S. May 27, 2022) *with* RNC Stay Mot. The notable difference is that a stay of

*Migliori*, unlike a stay here, would have prevented ballots from being counted. The U.S. Supreme Court, however, denied the request to stay *Migliori*. *See Ritter v. Migliori*, 142 S. Ct. 1824 (2022). There is no reason the RNC's motion should now be granted.

*Second*, the district court's order will not fracture Pennsylvania election procedure. *Contra* RNC Stay Mot. at 10, 11, 12. Counties must follow federal law. In *Ball v. Chapman*, the Pennsylvania Supreme Court issued an unexplained order right before the 2022 General Election that counties must "refrain from counting any absentee and mail-in ballots received for the November 8, 2022 general election that are contained in undated or incorrectly dated outer envelopes." 284 A.3d 1189 (Pa. 2022). The Court added that it "is evenly divided on the issue of whether failing to count such ballots violates 52 U.S.C. § 10101(a)(2)(B)." *Id.*

While the RNC concludes that the Pennsylvania Supreme Court adopted its view of § 10101(a)(2)(B), RNC Stay Mot. at 27, the Court's majority explicitly stated that, "the Court having divided evenly on the question of the federal materiality provision, we issued no order on that basis." *Ball*, 289 A.3d at 28.

There is no conflict between a decision explicitly silent on the application of federal law and a federal court's interpretation of federal law. Indeed, while the Department has not conducted a comprehensive survey, at least six counties that were dismissed by the district court but had not yet certified their 2023 election by the district court's decision counted ballots returned without a properly dated envelope declaration. *See* Ex. 1, Ramachandran Decl. ¶ 8.

*Third*, the RNC asserts that allowing the district court's order to take effect for either the 2023 General Election, or even for a 2024 election, will be chaotic, undermine confidence in elections, and require it to divert resources. RNC Stay Mot. At 9, 10-11, 12. They do not explain how counting ballots with inconsequential errors could have these results, or why a stay is needed now to address harms they claim will occur in the next election. And the same parties filed an action in the Pennsylvania Supreme Court barely three weeks before the 2022 General Election asking that court to modify rules regarding what mail ballots are counted. *See* RNC Petition, *Ball v. Chapman*, No. 102 MM 2022 (Pa. Oct. 16, 2022).

When the RNC initiated that action, almost 300,000 voters had already returned their mail ballot, *see* Ex. 1, Ramachandran Decl. ¶ 3, and those voters had been repeatedly told by courts that mail ballots would be counted even if the voter neglected to properly date their declaration, *see Migliori*, 36 F.4th 153; *Chapman v. Berks Cnty. Bd. of Elections*, No. 355 MD 2022, 2022 WL 4100998 (Pa. Cmwlth. Ct. Aug. 19, 2022); *McCormick v. Chapman*, No. 286 MD 2022, 2022 WL 2900112 (Pa. Cmwlth. Ct. June 2, 2022). And when the Pennsylvania Supreme Court issued an order eight days before the 2022 General Election that changed what ballots would count for that election, *Ball*, 284 A.3d 1189, more than 960,000 voters had already returned a mail ballot, Ex. 1, Ramachandran Decl. ¶ 3.

*Fourth*, the RNC believes a stay is needed because counting ballots returned by qualified electors may change the outcome of future elections. RNC Stay Mot. at 10-11, 12. But counting timely ballots from qualified electors does not *change* the outcome; it *is* the outcome.

Similarly, the RNC urges the Court to consider not the injury to individuals' whose votes are cancelled, but the injury inflicted upon individuals when other peoples' votes are counted. RNC Stay Mot. at 11.

Courts—including this one—have rightfully rejected that such an injury exists. *Bognet v. Sec'y Commonwealth of Pa.*, 980 F.3d 336, 356-60 (3d Cir. 2020), *vacated as moot by Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021); *Wood v. Raffensperger*, 981 F.3d 1307, 1314-15 (11th Cir. 2020); *Toth v. Chapman*, No. 22-208, 2022 WL 821175, at *7 (M.D. Pa. Mar. 16, 2022) (three-judge court).

*Fifth*, the RNC maintains that a stay is needed to avoid harm to Pennsylvania. RNC Stay Mot. at 12. Pennsylvania believes in "free and equal" elections, and it has no interest in disenfranchising qualified voters. Pa. Const. art. I, § 5.

## B. The RNC is Not Likely to Prevail on the Merits.

Federal law forbids state actors from "deny[ing] the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B). Rejecting ballots because a voter neglected to write a date on the declaration submitted with the ballot denies the right to vote for an immaterial error, because the date

on a return-envelope declaration serves no purpose in Pennsylvania's elections.[7]

Indeed, the RNC has conceded that the date serves no purpose in determining a voter's eligibility. ECF No. 347 at 62-63 (summary judgment opinion); *Ball*, 289 A.3d at 24 & n. 139.[8] The district court, this Court, and others, also have recognized that the date has no election function. ECF No. 347 at 67-69 (summary judgment opinion); *see also*

---

[7] Until 1968, a declaration date confirmed that a ballot had been completed on time, a function it stopped serving when the Election Code was amended to make 8 p.m. on Election Day the deadline to complete and return a mail ballot. 25 P.S. §§ 3146.6(a), 3146.8(g)(1)(ii), 3150.16(a). A ballot returned on time necessarily was completed on time, and county boards track when ballots are returned by date stamping envelopes and scanning return envelopes' barcodes into a statewide registration system. ECF No. 276 ¶ 12 (plaintiffs' statement of fact); ECF No. 305 ¶ 12 (RNC response to plaintiffs' statement of fact).

[8] Despite its concession, the RNC cites a 2022 criminal complaint that furnishes no support for the date's utility in Pennsylvania elections. RNC Stay Mot. at 22. In 2022, a woman returned her deceased mother's ballot and dated the declaration 12 days after her mother's death. *See* ECF No. 273-12 (criminal complaint). But because of her death, the mother had been removed from the voting rolls *three days before* the county received the ballot. *Id.* When the county scanned the ballot, the county flagged it for rejection. ECF No. 299 ¶ 48 (Secretary's statement of fact). As the relevant county commissioner testified, the date had no bearing on the decision to reject the ballot. ECF No. 347 at 67 n.39 (summary judgment opinion)

*Migliori*, 36 F.4th at 164; *In re Canvass of Absentee and Mail-in Ballot*, 241 A.3d 1058, 1077 (Pa. 2020) (opinion announcing judgment) (explaining that the date is "unnecessary and, indeed, superfluous.").

Consistent with these findings, this Court already has ruled that § 10101(a)(2)(B) prohibits counties from rejecting a mail ballot merely because it was returned without the voter's handwritten date on the return-envelope declaration. *Migliori*, 36 F.4th 153. Still, the RNC encourages this Court to jettison its earlier conclusion and instead rule that § 10101(a)(2)(B) does not apply here because its application is frozen to the moment an individual attempts to register. Nothing in the statute's text supports doing so.

*First*, § 10101(a)(2)(B) applies to errors made on any record "relating to any application, registration, or *other act requisite to voting*." Dating the declaration returned with a mail ballot currently is a necessary predicate for a ballot to be canvassed and counted. *Ball*, 289 A.3d at 20-23. So, writing a date is an "act requisite to voting."

The RNC strangely insists that unless "other act requisite to voting," refers "only to voter registration," RNC Stay Mot. at 16,

"registration" is superfluous. The reverse is true: reading "other act" as redundant of "registration" renders statutory text superfluous.

Congress's repeated use of "any" in § 10101(a)(2)(B) confirms that the statute protects against more than just immaterial errors that prevent registration. When "read naturally, the word 'any' has an expansive meaning." *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 219 (2008). Here, the phrase "on *any* record or paper" requires reading the statute as encompassing documents other than registration documents. The phrase "relating to *any* application, registration, or other act requisite to voting" dictates that an immaterial error may not justify denying the right to vote beyond the moment of registration.

The result is the same assuming the *ejusdem generis* canon applies. That canon does not instruct that general terms in a list share the same meaning as specific terms used in that list. *Contra* RNC Stay Mot. at 16. Rather, the canon assumes that a general term covers something distinct from specific terms and ensures commonality between the reach of the specific and general terms. *See Ali*, 552 U.S. at 223. Here, completing the declaration that must be returned with a ballot is akin to registering because each requires submitting a document to the voter's county board

of elections swearing that the individual is qualified to vote. *Compare* 25 Pa.C.S. § 1327 (registration) *with* 25 P.S. §§ 3146.4, 3150.14(b) (declaration).[9]

*Second*, the RNC argues that the Court should construe the phrase "if such error or omission is not material *in determining* whether such individual is qualified under State law to vote in such election," to mean "when determining" because "in" sometimes means "when." RNC Stay Mot. at 18. That argument ignores the structure of § 10101(a)(2)(B)'s text.[10]

Section 10101(a)(2)(B) first directs state actors not to "deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration,

---

[9] The RNC cites the Fifth Circuit's decision in *Vote.Org v. Callanen*, 39 F.4th 297 (5th Cir. 2022) multiple times, claiming that denying a stay would create a circuit split. RNC Stay Mot. at 27. It bases this conclusion on a line from a footnote characterizing their preferred construction of § 10101(a)(2)(B) as "plausible." 39 F.4th at 305 n.6. And they fail to note that the decision was preliminary, as the Fifth Circuit has yet to issue a decision on the merits. *See generally*, *Vote.Org v. Callanen*, No. 22-50536 (5th Cir.).

[10] Assuming § 10101(a)(2)(B) applies only when determining someone's eligibility to vote, it certainly applies here. The declaration is a voter's attestation that they are qualified to vote in the election. 25 P.S. §§ 3146.4, 3150.14(b).

or other act requisite to voting." The statute then qualifies that direction with a clause that defines which errors or omissions are encompassed: "[I]f such error or omission is not material in determining whether such individual is qualified under State law to vote in such election."

Because "material in determining" defines the relationship between the error and a voter's qualification such that the error cannot be used to deny the right to vote, a voter cannot be denied the right to vote only for failing to provide (or correctly provide) information that does not bear on their qualifications to vote. This is precisely how the Eleventh Circuit has interpreted the statute, explaining that §10101(a)(2)(B) requires asking "whether, accepting the error as true and correct, the information contained in the error is material to determining the eligibility of the applicant." *Florida State Conference of NAACP v. Browning*, 522 F.3d 1153, 1175 (11th Cir. 2008).

Two striking differences between § 10101(a)(2)(A) and § 10101(a)(2)(B) confirm this interpretation. *See Environmental Defense v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007) (explaining that presumption that similar words have similar meaning "readily yields whenever there is such variation in the connection in which the words

are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent)"

Unlike in § 10101(a)(2)(B), Congress used "in determining whether any individual is qualified" to introduce § 10101(a)(2)(A). The natural reading of using that phrase to introduce that subparagraph is that establishes the scope of the subparagraph's application to the process of determining—or "when determining"—an individual's qualification. Additionally, § 10101(a)(2)(A) uses "in determining whether any individual is qualified under State law or laws to vote in *any* election." The use of "any" communicates a concern with determining if a voter is qualified to vote generally in elections—the process of voter registration. But § 10101(a)(2)(B) uses "if such error or omission is not material in determining whether such individual is qualified under State law to vote in *such* election." The use of "such" signals concern with determining a voter's qualifications for a specific election. *Migliori*, 36 F.4th at 163. That is not the function of voter registration.

*Third,* the RNC's argument that someone is "den[ied] the right … to vote" under § 10101(a)(2)(B) only if not allowed to register to vote, RNC Stay Mot. at 20-21, points everywhere but the statute's text.

But "[o]nly the written word is the law." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1737 (2020).

Congress incorporated into § 10101(a) the definition of "vote" found in § 10101(e). *See* 52 U.S.C. § 10101(a)(3). That definition is "all action necessary to make a vote effective including, but not limited to, registration or other action required by State law prerequisite to voting, casting a ballot, and having such ballot counted and included in the appropriate totals of votes cast with respect to candidates for public office." *Id.* § 10101(e). Through that definition, Congress instructed "courts to look not only for individuals being stripped of their ability to exercise the right to vote generally, but for individuals who are denied the right to have their ballots counted and included in the tallies for an individual election." *Ball*, 289 A.3d at 25 (Wecht, J.).

Faithfully applying the statutory text means that even "mandatory ballot-casting rules" are subject to review under § 10101(a)(2)(B). *Contra* RNC Stay Mot. at 20. In fact, § 10101(a)(2)(B) operates *only* when there is non-compliance with some obligatory voting rule that results in a ballot not being counted (or registration being denied) and would never be

23

violated if non-compliance with a mandatory rule did not implicate the statute. *Ball*, 289 A.3d at 25 (Wecht, J.).

Instead of squaring its position with this text, the RNC quickly concludes that the statute deals with only registration and hurries on. *See* RNC Stay Mot. at 26.

*Fourth,* while nothing about Congress's purpose in enacting § 10101 permits interpreting the statute based on something other than its text, *contra* RNC Stay App. at 16-17, it is the Secretary's interpretation that comports with congressional purpose.

Congress passed § 10101 "to counteract state and local government tactics of using, among other things, burdensome registration requirements to disenfranchise African–Americans" because some states historically made trivial demands for information that "served no purpose other than as a means of inducing voter-generated errors that could be used to justify rejecting applicants." *NAACP*, 522 F.3d at 1173. Section 10101(a)(2)(B) is a prudent remedy for a history of disenfranchising voters through demands for immaterial information at registration because a statute limited to registration could easily be circumvented by shifting the same demands to any later time. Indeed,

"Congress in combating specific evils might choose a broader remedy." *Id.* at 1175.

*Fifth*, the litany of harms to election administration that the RNC maintains will follow from the district court's decision, RNC Stay Mot. at 23-24, is divorced from fact and law. Signing a Pennsylvania return-envelope declaration is "material" because the signature affirms the "statement of the elector's qualifications." 25 P.S. §§ 3146.4, 3150.14. An overvote is not an error "relating to any application, registration, or other act requisite to voting," but instead the failure to register a vote in a particular contest. And election officials' obligation to maintain certain records does not implicate 52 U.S.C. § 10101(a)(2)(B).

## CONCLUSION

For these reasons, the applications to intervene and for a stay pending appeal should be denied.

December 12, 2023

Respectfully submitted,

Robert A. Wiygul (Bar. No. 310760)
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933

Sean A. Kirkpatrick
Elizabeth Lester-Abdalla
OFFICE OF ATTORNEY
GENERAL
15th Floor, Strawberry Square
Harrisburg, PA 17120

Michael J. Fischer
Executive Deputy General Counsel

/s/ *Jacob B. Boyer*

Jacob B. Boyer (Bar. No. 324396)
Deputy General Counsel
GOVERNOR'S OFFICE OF
GENERAL COUNSEL
333 Market Street, 17th Floor
Harrisburg, PA 17101
(717) 460-6786
jacobboyer@pa.gov

*Counsel for Secretary of the*
*Commonwealth Al Schmidt*

# CERTIFICATES

I, Jacob B. Boyer, certify that:

1.    I am a member of the bar of this Court in good standing;

2.    Malwarebytes Premium was run on this file and no virus

was detected;

3.    The text of this response is identical to the text in paper

copies that will be filed with the Court; and

4.    This response contains 5,057 words and therefore complies

with Federal Rule of Appellate Procedure 27(d)(2). In

making this certificate, I have relied on the word count of

the word-processing system used to prepare the brief.


December 12, 2023                /s/ *Jacob B. Boyer*

Jacob B. Boyer
*Counsel for Secretary of the*
*Commonwealth Al Schmidt*

# CERTIFICATE OF SERVICE

I, Jacob B. Boyer, hereby certify that a copy of this response has

been served on all counsel of record using the Court's CM/ECF system.


December 12, 2023                    /s/ *Jacob B. Boyer*
                                     Jacob B. Boyer
                                     *Counsel for Secretary of the*
                                     *Commonwealth Al Schmidt*

# Exhibit

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

PENNSYLVANIA STATE
CONFERENCE OF THE NAACP, *et al.*,

        Plaintiffs-Appellees,

      v.

AL SCHMIDT, *in his official capacity as Secretary of the Commonwealth, et al.*,

        Defendants-Appellees,

REPUBLICAN NATIONAL
COMMITTEE, *et al.*,

        Intervenors-Appellants.

No. 22-3166

## **DECLARATION OF SINDHU RAMACHANDRAN**

I, Sindhu Ramachandran, declare and affirm under the penalties of perjury of the laws of the United States of America as follows:

1.     I am employed by the Pennsylvania Department of State (the "Department") as Chief, Division of Election Security and Technology in the Bureau of Elections. I have been employed by the Department since April 2017. As part of my duties, I coordinate and assist with the administration of the information contained within the

Statewide Uniform Registry of Electors ("SURE") database for the

Department.  As such, I am familiar with the information that is

contained within the SURE system and also manage the team

responsible for overseeing and maintaining that information.

2.      I submit this Declaration in support of the Secretary of the

Commonwealth's Response in this matter. Given my role and

experience at the Department, I am personally knowledgeable about the

matters referenced in this Declaration and the business records of the

Department of State. I have also consulted with colleagues about

certain matters referenced in this Declaration. If called as a witness, I

could and would testify competently to the matters set forth below.

3.      With respect to the 2022 General Election, as of October 17,

2022, the total number of absentee and mail-in ballots recorded as

returned in SURE by counties was approximately 296,366.[1] As of

November 1, 2022, the total number of absentee and mail-in ballots

recorded as returned in SURE was approximately 963,934.[1] As of the

8:00 p.m. deadline for submission of absentee and mail-in ballots for the

---

[1] Number gathered from the totals posted on the Department's
website on the morning of Oct. 18, 2022, and the morning of Nov. 2,
2022.

2

General Election on November 8, 2022, the total number of absentee and mail-in ballots recorded as returned in SURE was approximately 1,224,403.[2]

4.    At the time of the 2022 General Election, there was no coding in the SURE system for counties to classify ballots that were cancelled as a result of being contained in return envelopes that were undated or incorrectly dated. That coding was added on January 27, 2023. Therefore, after this time, the Department had the ability to track such numbers of cancelled ballots for those reasons to the extent counties properly classified such rejected ballots.

5.    With respect to the 2023 Municipal Primary, the total number of absentee and mail-in ballots returned by voters was 613,995. Of those, 3,476 were recorded in the SURE system as being cancelled as a result of a missing date on the return envelope containing the containing the voter declaration. 1,442 were recorded in the SURE system as being cancelled due to an incorrect date as determined by the

---

[2] Number gathered from the totals posted on the Department's website at 9 p.m. on Nov. 8, 2022.

counties.   Because not all counties properly code all ballots that are rejected, the total number of ballots in these categories is likely higher.

6.     With respect to the 2023 Municipal Election, the total number of absentee and mail-in ballots returned by voters was 853,433. To date, 1,844 were recorded in the SURE system as being cancelled as a result of a missing date on the return envelope containing the voter declaration, and 752 were recorded in the SURE system to date as being cancelled due to an incorrect date as determined by the counties. These numbers are preliminary, as some counties continue to update information from the 2023 Municipal Election.

7.     Based on names provided by Montgomery County, I have determined using information in the SURE system the ages of the six voters whose ballots were counted for the Towamencin Township Supervisor race after the trial court's decision in this case. Those six voters were ages 83, 78, 77, 74, 29, and 25 on Election Day.

8.     Based on information provided by colleagues, I understand that the following counties were among those that chose to count undated/wrongly dated ballots: Adams, Beaver, Chester, Delaware, Lebanon, and Luzerne.

I declare under penalty of perjury of the laws of the United States of America that the facts set forth in this Declaration are true and correct to the best of my knowledge, information, and belief.

Executed on this 12th day of December, 2023

_____

Sindhu Ramachandran
Chief, Division of Election Security & Technology
Bureau of Elections
Pennsylvania Department of State