No. 23-3166

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

───────────

PENNSYLVANIA CONFERENCE OF THE NAACP, *et al.*,

v.

SECRETARY COMMONWEALTH OF PENNSYLVANIA, *et al.*

REPUBLICAN NATIONAL COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE; THE REPUBLICAN PARTY OF PENNSYLVANIA,

*Appellants.*

───────────

**On Appeal From The United States District Court For The Western District Of Pennsylvania**

───────────

**REPLY IN SUPPORT OF APPELLANTS' EMERGENCY MOTION FOR A STAY PENDING APPEAL**

───────────

Kathleen A. Gallagher
THE GALLAGHER FIRM, LLC
436 Seventh Ave., 31st Floor
Pittsburgh, PA 15219
(412) 717-1900
kag@gallagherlawllc.com

Thomas W. King, III
Thomas E. Breth
DILLON, MCCANDLESS, KING,
COULTER & GRAHAM, LLP
128 W. Cunningham St.
Butler, PA 16001
(724) 283-2200
tking@dmkcg.com
tbreth@gmkcg.com

John M. Gore
  *Counsel of Record*
E. Stewart Crosland
Louis J. Capozzi, III
Ryan M. Proctor
JONES DAY
51 Louisiana Ave. NW
Washington, DC  20001
(202) 879-3939
jmgore@jonesday.com
scrosland@jonesday.com
lcapozzi@jonesday.com
rproctor@jonesday.com

*Counsel for Appellants*

**INTRODUCTION**

The District Court's order creates disparate election rules across Pennsylvania, retroactively changed the rules for Richard Marino's election, imposes severe irreparable harms, and is wrong. A stay is warranted.[1]

**ARGUMENT**

## I. THE PUBLIC INTEREST DEMANDS A STAY.

The public interest alone warrants a stay. *See* Appellants' and Proposed Intervenor's Motion For A Stay 9-11 ("Mot."). Plaintiffs' various arguments fail to show otherwise.

*First*, Plaintiffs argue Appellants cannot make *Purcell*-related equitable arguments because they do not administer elections. *E.g.*, NAACP Op. 24. But the Supreme Court has granted at least one stay to private parties making *Purcell* arguments over the objection of a state government. *Frank v. Walker*, 574 U.S. 929 (2014); *see RNC v. DNC*, 140 S. Ct. 1205, 1207 (2020) (recognizing this). It has also granted a *Purcell* stay when a political party and a state legislature jointly sought a stay,

---

[1] Plaintiffs, the Secretary, Philadelphia County, and Montgomery County filed aligned briefs. This brief refers to them collectively as "Plaintiffs."

*id.*, even though neither entity administered elections. Nor does *RNC v. Common Cause R.I.*, 141 S. Ct. 206 (2020), help Plaintiffs. There, the Supreme Court emphasized that the contested rule was not "used in Rhode Island's last election," leading "many . . . voters" to believe the "status quo [was] one in which the challenged requirement [was not] in effect." *Id.* Here, by contrast, all agree the date requirement governed Pennsylvania's 2022 elections and was in effect on Election Day 2023. And, in fact, Montgomery County provides another reason for a stay: there are imminent local elections. Montgomery Opp. 6, 9; *e.g.*, *RNC*, 140 S. Ct. at 1207.

*Second*, Plaintiffs question whether the District Court's declaration establishes disparate rules for Pennsylvania's elections. NAACP Opp. 26; Sec'y Opp. 13. Plaintiffs do not dispute that 55 counties are not subject to that declaration. Plaintiff instead half-heartedly suggest those 55 counties "*should* comply with federal law as set forth in the [D]istrict [C]ourt's order." NAACP Opp. 26 (emphasis added). But Plaintiffs do not dispute that those 55 counties remain subject to the Pennsylvania Supreme Court's conflicting order *not* to count undated ballots. *Ball v. Chapman*, 284 A.3d 1189, 1192 (Pa. 2022). The NAACP Plaintiffs

2

shockingly ignore *Ball*, but the District Court's opinion on federal law does *not* trump the Pennsylvania Supreme Court's order. *E.g.*, *Johnson v. Williams*, 568 U.S. 289, 305 (2013); *Hall v. Pa. Bd. of Prob. & Parole*, 851 A.2d 859, 865 (Pa. 2004). Because conflicting court orders now compel Pennsylvania's counties to apply an election rule differently, a stay is needed to avoid an Equal Protection problem and potential mass confusion. *See Bush v. Gore*, 531 U.S. 98, 105-07 (2000).

*Third*, Plaintiffs deem the risk of electoral chaos in 2024 "speculative." NAACP Opp. 26. However, Plaintiffs cannot dispute that three elections in the last four years have been determined by undated ballots, and that Pennsylvania's statewide races are typically close. Unsurprisingly, external observers have recognized the potential for the District Court's order to cause chaos in 2024. *E.g.*, The Editorial Board, *A Mail-Vote Time Bomb Keeps Ticking*, WSJ (Nov. 26, 2023).

## II. A STAY IS NECESSARY TO PREVENT MULTIPLE IRREPARABLE HARMS.

The District Court's order threatens imminent irreparable harm on Richard Marino, Appellants and their voters, and Pennsylvania and its citizens. *See* Mot. 11-13. Plaintiffs' arguments to the contrary are unpersuasive.

*First*, effectively conceding Marino was injured by the District Court's post-election rule change, Plaintiffs argue a stay would not redress his harm because a state court dismissed a contest to the election's certification.  NAACP Opp. 20-21; Sec'y Opp. 2; Philadelphia Opp. 1.  That is wrong.  The Montgomery County Board relied on *one* reason to certify the election against Marino: the District Court's order.  Mot. 7.  That decision was challenged in state court, and the state trial court gave one reason for ruling against Marino: the District Court's order.  *See* Ex. A.  That decision is being appealed.  *See* Montgomery Opp. 8 n.4.  It also demonstrates that the District Court's declaration is *the* fatal obstacle to Marino obtaining a favorable state-court ruling.[2]  If this Court enters a stay, that obstacle will disappear, allowing Marino to obtain a state-court order certifying him as the winner—either through appeal or reconsideration.  That Marino must take one extra step to regain office if this Court enters a stay does *not* mean his irreparable harm is not redressable.  Indeed, this is how candidates must obtain relief anytime a federal court order flips an election result.  But here, where

---

[2] Plaintiffs suggest Marino cannot obtain a state-court remedy because the contest was untimely.  That is false.  *See* Intervention Reply 7-9.

4

the state court relied *solely* on the District Court's order, Marino's path to relief is unusually straightforward.

*Second*, Plaintiffs suggest Marino is not irreparably harmed because he did not move to intervene until nine days after the District Court's order. *E.g.*, NAACP Op. 21. But Marino sought relief one day after he was harmed. And even if Plaintiffs are correct that Marino had to anticipate that he would lose his election because of the District Court's order, they point to no authority suggesting a mere *nine-day* delay is unreasonable. *See* Intervention Reply 2-4.

*Third*, Plaintiffs wrongly downplay Appellants' irreparable harms. Appellants must divert resources if the District Court's order is not stayed, Mot. 12, a well-established irreparable harm, *e.g.*, *Fair Hous. Rts. Ctr. v. Post Goldtex GP*, 823 F.3d 209, 214 n.5 (3d Cir. 2016). Even the District Court understood that invalidating the date requirement would harm Appellants' "ability to participate in the election process within the state." ECF No. 167 at 9; *accord La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022). Appellants and their candidates in statewide races are also harmed by the date requirement being disparately applied in various counties. *Supra* 2-3. So are all

Pennsylvanians.  Mot. 12-13.  Meanwhile, Plaintiffs never explain why they should benefit from a post-election rule change where they never sought preliminary relief.  *See id.* at 13.

## III.  APPELLANTS WILL LIKELY SUCCEED ON THE MERITS.

The Materiality Provision applies only to voter-qualification decisions made during voter registration.  Mot. 13-27; *Ritter v. Migliori*, 142 S. Ct. 1824, 1825 (2022) (Alito, J., dissental); *Vote.Org v. Callanen*, 39 F.4th 297, 305 n.6 (5th Cir. 2022); *Ball v. Chapman*, 289 A.3d 1, 38 n.11 (Pa. 2023). (Opinion of Brobson, J.).  Plaintiffs' attempts to expand the statute are foreclosed by text, history, precedent, the federalism canon, and constitutional avoidance.

> A.   *The Materiality Provision Applies Only During Voter Registration.*

The Materiality Provision applies only to an "application, registration, or other act requisite to voting."  52 U.S.C. § 10101(a)(2)(B).  Plaintiffs do not contest that the terms "application" and "registration" refer only to voter registration.  Instead, they focus on the phrase "or other act requisite to voting."  NAACP Opp. 12-13; Sec'y Opp. 18-19; Philadelphia Opp. 21.  Plaintiffs insist that phrase is not limited by the

*ejusdem generis* canon because it begins with the word "any."  NAACP Op. 15; Sec'y Opp. 19 (citing *Ali v. BOP*, 552 U.S. 214, 225 (2008)).

This purported exception to *ejusdem generis* does not exist.  Courts regularly apply the canon to phrases containing the term "any." *E.g.*, *Circuit City Stores v. Adams*, 532 U.S. 105, 109 (2001); *Arcadia v. Ohio Power Co.*, 498 U.S. 73, 77-78 (1990); *McBoyle v. United States*, 283 U.S. 25, 26 (1931) (Holmes, J.); A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 200-02 (2012) (approvingly citing several cases applying canon to phrases including "any").  *Ali* is not to the contrary.  The Supreme Court there found *ejusdem generis* inapplicable because the phrase at issue did not consist of "a list of specific items separated by commas and followed by a general or collective term," not because it included "any." 552 U.S. at 225; *see Scalia & Garner*, *supra*, at 206-07 (explaining *Ali*).

Nor does *ejusdem generis* make the catchall superfluous, as Plaintiffs insist.  NAACP Opp. 14-15; Philadelphia Opp. 21.  This phrase prevents election officials from circumventing the Materiality Provision based on labeling:  Referring to a qualification-determining practice as something other than a voter "application" or "registration" does not

7

liberate officials to disqualify voters for immaterial paperwork "error[s] or omission[s]." § 10101(a)(2)(B). Moreover, the phrase may cover any forms citizens must submit to remain registered to vote besides initial applications and registrations, such as a declaration by a released felon that he has paid all outstanding fines or by an inactive voter that she continues to reside at her registered address.

In contrast, Plaintiffs' reading would make "application" and "registration" utterly superfluous, since they would be subsumed by the catchall. *E.g.*, NAACP Opp. 13 (ignoring these words). The Court should not read these essential words out of the statute. *E.g.*, *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 635 (2012).[3]

---

[3] The Secretary suggests that the Materiality Provision is not limited to voter registration because it uses the phrase "such election." Sec'y Opp. 22. But states commonly establish special registration processes and requirements for specific local elections. *E.g.*, *Sayler Land Co. v. Tulare Lake Basin Water Dist.*, 410 U.S. 719, 725 (1973) (local water-district election where only landowners could vote). The Materiality Provision applies to single-election qualification processes.

The Secretary also suggests a mail ballot carrier envelope "is akin" to voter registration because a voter must reaffirm he is eligible to vote. Sec'y Opp. 19-20. But as the District Court explained, the date requirement applies only to voters who "ha[ve] previously been determined to be eligible and qualified to vote." ECF No. 347 at 67. The carrier envelope is thus not used to qualify voters.

B.    *The Materiality Provision Applies Only to Voter Qualification Determinations.*

The Materiality Provision only covers records used "in determining" the voter's qualifications.  52 U.S.C. § 10101(a)(2)(B).  Plaintiffs claim instead that it prohibits any paper-based error "'not material' *to*" determining a voter's qualifications.  NAACP Opp. 13 (emphasis added); Sec'y Opp. 21.  This formulation, however, swaps out the key statutory term "in" for the very different word "to."  *Ball*, 289 A.3d at 38 (opinion of Brobson, J.)  ("[I]t is not enough that the error or omission be immaterial *to* whether the individual is qualified to vote; the paper or record must also be used 'in determining' the voter's qualifications.").  Plaintiffs make no attempt to grapple with the meaning of "in," which in this context means "when."  Mot. 18.

Plaintiffs also fail to engage with statutory structure and the fact the Materiality Provision's neighboring provisions refer only to "qualification" decisions.  Their only response is that reading section 10101(a)(2) to "limit[] the prohibition on literacy tests to the initial qualification process, thereby *allow[s]* literacy tests at the polls."  NAACP Opp. 16 n.3.  But that is precisely how Congress understood that section, which is why Congress subsequently adopted a *separate* provision,

section 201 of the 1965 Voting Rights Act, to ban the use of literacy tests at all other steps in the election process, including at the polls. *See* 52 U.S.C. § 10501. There would have been *no reason* for Congress to enact that separate provision if section 10101 sweeps as broadly as Plaintiffs suggest.[4] And Plaintiffs have no explanation, on their construction of the Materiality Provision, for why subsection (e)'s remedy for a violation of "*any* right … secured by subsection (a)" is a declaration that the individual is qualified to vote. 52 U.S.C. § 10101(e) (emphasis added).

C.    *The Materiality Provision Prohibits Only Denial of the Right to Vote.*

The Materiality Provision prohibits only the "den[ial]" of "the right … to vote." *Id.* § 10101(a)(2)(B); *see* Mot. 20-21. Plaintiffs heavily emphasize the broad definition of the term "vote," but they ignore the well-established meaning of the statutory phrase at issue: "*right … to vote.*" *E.g.*, Philadelphia Opp. 17-18. Under a properly-limited Materiality Provision, election officials *do* deny the "right . . . to vote" when they improperly deny a voter's registration application—but not

---

[4] Congress originally only barred literacy tests during voter registration because southern states usually used literacy tests as part of the voter-registration process. *E.g.*, *Lassiter v. Northampton Cnty. Bd. of Elections*, 360 U.S. 45, 46 (1959).

when they apply evenhanded, mandatory rules regulating how individuals cast ballots. *E.g.*, *Rosario v. Rockefeller*, 410 U.S. 752, 757 (1973); *DNC v. Wis. State Legislature*, 141 S. Ct. 28, 35 (2020) (Kavanaugh, J., concurral). ("[A] State's election [rule] does not disenfranchise voters who are capable of [following it] but fail to do so.").

D. *Plaintiffs' Reading Would Invalidate Many Longstanding, Commonsense Election Laws.*

On Plaintiffs' telling, in 1964, Congress disabled the states from pursuing *any* interest in regulating elections through paper-based requirements other than determining voter eligibility. *E.g.*, NAACP Op. 12-13. Appellants have identified several longstanding state election laws that are jeopardized if Plaintiffs' interpretation is correct. Mot. 23-24. It is not hard to find more examples—like requirements that witnesses sign mail ballots. *E.g.*, *Andino v. Middleton*, 141 S. Ct. 9, 9-10 (2020).

Plaintiffs artificially attempt to shield just two cited examples. First, they claim overvoting prohibitions are safe because they prohibit errors *on the ballot* instead of other voting documents. NAACP Opp. 19. But if Plaintiffs are right that the Provision covers all "voting-related" paperwork, NAACP Op. 1, the ballot itself is covered. Second, Plaintiffs

tenuously suggest signature requirements "*might* be considered material." *Id.* at 19 (emphasis added).  However, completing a signature is not a voter eligibility criterion in Pennsylvania.  ADD.62.

Unable to disguise the radical implications of their position, Plaintiffs ultimately show their hand.  They eagerly praise the novel use of the Materiality Provision to invalidate what they deride as "various irrelevant paperwork requirements."  NAACP Opp. 20.

To justify this shift of authority from the states to the federal courts, Plaintiffs must point to "exceedingly clear [statutory] language." *Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2489 (2021).  Yet Plaintiffs do not even attempt this showing—providing the Court yet another basis to reject their position.

E.  *Constitutional Avoidance Forecloses Plaintiffs' Reading.*

If Plaintiffs' atextual interpretation of the Materiality Provision is correct, the statute is likely unconstitutional.  Because the Materiality Provision governs both federal *and* state elections, Congress could only enact it using its powers to enforce the 14th and 15th Amendments, a point Plaintiffs acknowledge, NAACP Opp. 19-20 n.5.  As Plaintiffs again admit, the Supreme Court limited the scope of permissible enforcement

legislation in *City of Boerne*. *Id.* (citing *City of Boerne v. Flores*, 521 U.S. 507, 518 (1997)). Whenever Congress enacts prophylactic legislation to "remedy or prevent unconstitutional actions … [t]here must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *City of Boerne*, 521 U.S. at 519-20. And courts must consult Congress's legislative "record" to identify what unconstitutional practices Congress was legitimately targeting. *Id.* at 530.

The Congress that enacted the Materiality Provision was responding to racially discriminatory practices *in voter registration*. Mot. 16-18. Plaintiffs have not contested that point—nor could they. There is no evidence that Congress was concerned with states applying voting rules outside voter registration that served goals unrelated to voter qualifications—let alone a legislative record showing *constitutional* violations occurring in such situations. If Plaintiffs are right that the Materiality Provision reaches far beyond racially discriminatory voter-registration practices, the Materiality Provision is likely unconstitutional. *E.g.*, *City of Boerne*, 521 U.S. at 530-36; *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 365-374 (2001). Therefore, even if the Materiality

Provision is ambiguous, constitutional avoidance demands reading it to apply only to voter registration.  *E.g.*, *Clark v. Martinez*, 543 U.S. 371, 380-81 (2005).

## CONCLUSION

This Court should stay the District Court's order pending appeal.

14

Dated:  December 13, 2023               Respectfully submitted,

Kathleen A. Gallagher                   */s/* John M. Gore
THE GALLAGHER FIRM, LLC                 John M. Gore
436 Seventh Ave., 31st Floor              *Counsel of Record*
Pittsburgh, PA 15219                    E. Stewart Crosland
(412) 717-1900                          Louis J. Capozzi, III
kag@gallagherlawllc.com                 Ryan M. Proctor
                                        JONES DAY
Thomas W. King, III                     51 Louisiana Ave. NW
Thomas E. Breth                         Washington, DC  20001
DILLON, MCCANDLESS, KING,               (202) 879-3939
COULTER & GRAHAM, LLP                   jmgore@jonesday.com
128 W. Cunningham St.                   scrosland@jonesday.com
Butler, PA 16001                        lcapozzi@jonesday.com
(724) 283-2200
tking@dmkcg.com
tbreth@gmkcg.com

## COMBINED CERTIFICATIONS

1.     Pursuant to Third Circuit L.A.R. 28.3(d), at least one of the attorneys whose names appear on this motion, including the undersigned, is a member in good standing of the bar of this Court.

2.     This brief complies with the word limit of Fed. R. App. P. 27(d)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,598 words.  This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced 14-point serif font (Century Schoolbook Std), using Microsoft Word.

3.     Pursuant to Third Circuit L.A.R. 31.1(c), Microsoft Safety Scanner version 1.387.711.0 has been run on this electronic file and no virus was detected.

Dated: December 13, 2023          */s/* John M. Gore
                                                       John M. Gore
                                                       *Counsel for Appellants*

# CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2023, this brief was electronically filed with the Clerk of Court using the appellate CM/ECF system. Service on counsel for all parties in the district court has been accomplished via notice filed through the district court's CM/ECF system attaching a copy of this filing.

Dated: December 13, 2023          /s/ John M. Gore
                                  John M. Gore
                                  *Counsel for Appellants*