No. 23-3166

## IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

PENNSYLVANIA STATE CONFERENCE OF NAACP BRANCHES, et al.,

*Plaintiffs-Appellees*,

*v.*

SECRETARY COMMONWEALTH OF PENNSYLVANIA, et al.,
*Defendants-Appellees*,

REPUBLICAN NATIONAL COMMITTEE, et al.,
*Intervenors-Appellants*.

On Appeal from the United States District Court
for the Western District of Pennsylvania
Case No. 1:22-cv-00339 (Hon. Susan Paradise Baxter)

## MOTION TO INTERVENE OF THE DEMOCRATIC NATIONAL COMMITTEE, DSCC, AND DCCC

Seth P. Waxman
WILMER CUTLER PICKERING
 HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
(202) 663-6000
seth.waxman@wilmerhale.com

Clifford B. Levine
DENTONS COHEN & GRIGSBY P.C.
625 Liberty Avenue
Pittsburgh, Pennsylvania 15222
(412) 297-4998
clifford.levine@dentons.com

*Counsel for the Democratic
National Committee*

Uzoma N. Nkwonta
 *Counsel of Record*
ELIAS LAW GROUP LLP
250 Massachusetts Avenue NW,
Suite 400
Washington, D.C. 20001
(202) 968-4490
unkwonta@elias.law

*Counsel for DSCC and DCCC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ............................................................................ 1

BACKGROUND .............................................................................. 3

LEGAL STANDARD ....................................................................... 6

ARGUMENT .................................................................................... 7

    I.    The Democratic Committees satisfy the requirements for intervention as of right. ............................................................ 8

        A.    This motion is timely. .................................................... 8

        B.    The Democratic Committees have significant interests in the outcome of this appeal. ......................................... 9

        C.    The outcome of this appeal threatens the Democratic Committees' interests. ................................................. 12

        D.    The Democratic Committees' interests are not adequately represented by the current parties. ........... 15

    II.    Alternatively, permissive intervention is appropriate. ......... 17

CONCLUSION ............................................................................... 19

COMBINED CERTIFICATIONS ............................................................ 21

CERTIFICATE OF SERVICE ................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ball v. Chapman,*
284 A.3d 1189 (Pa. 2022) ........................................................ 4

*Benjamin ex rel. Yock v. Dep't of Pub. Welfare,*
701 F.3d 939 (3d Cir. 2012) .............................................. 8, 9

*Brody ex rel. Sugzdinis v. Spang,*
957 F.2d 1108 (3d Cir. 1992) ............................................. 18

*Cameron v. EMW Women's Surgical Ctr., P.S.C.,*
595 U.S. 267 (2022) ..................................................... 6, 8, 9

*Conservation L. Found. of New Eng., Inc. v. Mosbacher,*
966 F.2d 39 (1st Cir. 1992) ................................................ 16

*Crawford v. Marion Cnty. Election Bd.,*
472 F.3d 949 (7th Cir. 2007) ............................................. 12

*Democratic Nat'l Comm. v. Bostelmann,*
No. 20-cv-249-wmc, 2020 WL 1505640 (W.D. Wis. Mar.
28, 2020) ............................................................................ 16

*Democratic Party of Va. v. Brink,*
No. 3:21-cv-756-HEH, 2022 WL 330183 (E.D. Va. Feb. 3,
2022) .................................................................................. 18

*Georgia v. U.S. Army Corps of Eng'rs,*
302 F.3d 1242 (11th Cir. 2002) ......................................... 13

*Harris v. Pernsley,*
820 F.2d 592 (3d Cir. 1987) .............................................. 13

*Issa v. Newsom,*
    No. 2:20-cv-01044-MCE-CKD, 2020 WL 3074351 (E.D.
    Cal. June 10, 2020) ............................................................... 12

*La Union del Pueblo Entero v. Abbott,*
    29 F.4th 299 (5th Cir. 2022) ................................................ 11

*Mecinas v. Hobbs,*
    30 F.4th 890 (9th Cir. 2022) ................................................ 14

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder,*
    *Inc.,*
    72 F.3d 361 (3d Cir. 1995) ............................................. 8, 17

*Pennsylvania v. President U.S.,*
    888 F.3d 52 (3d Cir. 2018) ..................................... passim

*Shays v. FEC,*
    414 F.3d 76 (D.C. Cir. 2005) ............................................... 14

*Sw. Ctr. for Biological Diversity v. Berg,*
    268 F.3d 810 (9th Cir. 2001) ............................................... 16

*United States v. Alcan Aluminum, Inc.,*
    25 F.3d 1174 (3d Cir. 1994) ................................................. 8

*United States v. Alisal Water Corp.,*
    370 F.3d 915 (9th Cir. 2004) ................................................. 9

*United States v. All Assets Held at Credit Suisse (Guernsey)*
    *Ltd.,*
    45 F.4th 426 (D.C. Cir. 2022) ............................................... 6

*United States v. Territory of Virgin Islands,*
    748 F.3d 514 (3d Cir. 2014) ..................................... 7, 17, 18

*Yniguez v. Arizona,*
    939 F.2d 727 (9th Cir. 1991) ............................................... 11

**Statutes**

25 P.S. § 3146.6 ........................................................................ 3

25 P.S. § 3150.16 ...................................................................... 3

52 U.S.C. § 10101 ..................................................................... 2

**Other Authorities**

Fed. R. Civ. P. 24 ............................................................. passim

## INTRODUCTION

The Democratic National Committee ("DNC"), DSCC, and DCCC (collectively, the "Democratic Committees") respectfully move to intervene in this appeal.

DSCC and DCCC are the Democratic Party's national senatorial and congressional committees, charged with supporting the election of Democratic candidates—including in Pennsylvania. They accomplish this mission by, among other things, assisting state parties and mobilizing their supporters. They also protect access to the franchise for Democratic voters, who are disproportionately likely to cast ballots by mail.

The DNC is the oldest continuing party committee in the United States. Its organizational purposes and functions are to communicate the Democratic Party's position and messages on issues; protect voters' rights; and aid and encourage the election of Democratic candidates at the national, state, and local levels, including by persuading and organizing citizens not only to register to vote as Democrats, but also to cast their ballots for Democratic candidates. The DNC is composed of its

chair, vice chairs, and over 200 members elected by Democrats in every U.S. state and territory and the District of Columbia.

One day before the 2022 midterm elections, and one week after the Pennsylvania Supreme Court ordered the rejection of improperly dated mail ballots, DSCC and DCCC filed a lawsuit challenging the commonwealth's mail-ballot date requirement under the Civil Rights Act's Materiality Provision, 52 U.S.C. § 10101(a)(2)(B), and the First and Fourteenth Amendments, *see Eakin*, ECF No. 1.[1] That lawsuit proceeded through discovery and summary judgment on a parallel track with the case underlying the present appeal (the "*NAACP* lawsuit"), though the two cases were not formally consolidated. *See, e.g.*, *Eakin*, ECF Nos. 147, 212.

Then, on November 21, 2023, the two lawsuits diverged: The District Court granted summary judgment for the plaintiffs in the *NAACP* lawsuit, *NAACP*, ECF No. 347, but ordered the parties in the

---

[1] Entries on the Court's docket in this appeal are cited as "Doc. No. [##]." Entries on the District Court's docket in DSCC's and DCCC's case, *see Eakin v. Adams Cnty. Bd. of Elections*, No. 1:22-CV-340 (W.D. Pa.), are cited as "*Eakin*, ECF No. [##]." Entries on the District Court's docket in the case underlying this appeal, *see Pa. State Conf. of NAACP v. Schmidt*, No. 1:22-cv-00339 (W.D. Pa.), are cited as "*NAACP*, ECF No. [##]."

parallel case (including DSCC and DCCC) to supplement their summary-judgment filings with additional briefing on the issue of standing, *Eakin*, ECF No. 348. Although DSCC and DCCC are now on a slightly modified timeline, their case and the *NAACP* lawsuit "raise many of the same arguments and defenses," *id.*; they thus possess an undeniable interest in the outcome of this appeal. So does the DNC, as a reversal of the District Court's ruling would lead to the invalidation of many votes for Democratic candidates and thus undermine the DNC's core interest in seeing Democratic candidates elected.

Given their interests, and because they also satisfy the requirements for both intervention as of right and permissive intervention, the Democratic Committees respectfully request that they be granted intervention.

## BACKGROUND

Pennsylvania law requires that voters who cast mail ballots handwrite a date on the outer ballot envelope. *See* 25 P.S. §§ 3146.6(a), 3150.16(a). In the final days before the November 2022 midterm elections, the Republican National Committee, National Republican Congressional Committee, and Republican Party of Pennsylvania (the

same collection of Republican Party organizations that initiated this appeal) successfully petitioned the Pennsylvania Supreme Court for an order directing the commonwealth's election officials to segregate, preserve, and not count mail ballots that were undated or incorrectly dated (for example, with a date after the election or with a series of numbers that did not constitute a coherent date). *See Ball v. Chapman*, 284 A.3d 1189, 1192 (Pa. 2022) (per curiam).[2]

One week later, DSCC and DCCC (joined by two individual voters and then-Senate candidate John Fetterman's campaign) sued in the District Court to challenge the requirement that improperly dated mail ballots go uncounted. *Eakin*, ECF No. 1. Their suit followed three days after a collection of voters and voting-rights organizations initiated the *NAACP* lawsuit in the District Court; the *NAACP* plaintiffs also asserted a claim under the Materiality Provision. *NAACP*, ECF No. 1.[3]

---

[2] The court reached its decision on state-law grounds and was "evenly divided on the issue of whether failing to count such ballots violates" the federal Civil Rights Act. *Ball*, 284 A.3d at 1192.

[3] The plaintiffs in both cases asserted constitutional claims as well. *See Eakin*, ECF No. 228 ¶¶ 41–49 (right-to-vote claim under First and Fourteenth Amendments); *NAACP*, ECF No. 121 ¶¶ 83–88 (equal-protection claim under Fourteenth Amendment).

Over the next year, DSCC's and DCCC's case proceeded in parallel with the *NAACP* lawsuit through the discovery and summary-judgment phases. *See, e.g.*, *Eakin*, ECF Nos. 147 (setting joint status conference for parties in both cases), 212 (setting deadlines to "mirror the deadlines" in *NAACP* lawsuit), 227 (requiring defendants to send *Eakin* plaintiffs "all discovery materials produced in *NAACP*" lawsuit on same timeline and setting same schedule for dispositive motions). Then, on November 21, the District Court granted summary judgment for the plaintiffs in the *NAACP* lawsuit, issuing injunctive relief against 12 of the 67 county defendants and declaring that the date requirement for mail ballots violates the Materiality Provision. *NAACP*, ECF Nos. 347, 348. On the same day, the District Court issued a briefing order directing DSCC, DCCC, and their co-plaintiffs to "supplement their summary judgment filings before January 5, 2024, in accordance with the [*NAACP*] opinion and order," with a "focus specifically on standing." *Eakin*, ECF No. 348.

On December 7, 2023, Appellants Republican National Committee, National Republican Congressional Committee, and Republican Party of Pennsylvania (the "Republican Intervenors") noticed this appeal. Doc. No. 1. That same day, Richard Marino—the incumbent Vice Chair of the

Towamencin Township Board of Supervisors—moved to intervene in the appeal and joined the Republican Intervenors' request for a stay of the District Court's order pending appeal. Doc. Nos. 8, 9. The Court ultimately granted both motions on December 13 and ordered an expedited briefing schedule. Doc. No. 43.

## LEGAL STANDARD

As "[n]o statute or rule provides a general standard to apply in deciding whether intervention on appeal should be allowed," appellate courts "consider[] the 'policies underlying intervention' in the district courts, including the legal 'interest' that a party seeks to 'protect' through intervention on appeal." *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 276–77 (2022) (citation omitted) (first quoting *UAW, Local 283 v. Scofield*, 382 U.S. 205, 217 n.10 (1965); and then quoting Fed. R. Civ. P. 24(a)(2)); *see also, e.g.*, *United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*, 45 F.4th 426, 432 (D.C. Cir. 2022) (applying intervention standards of Federal Rule of Civil Procedure 24).

"A potential intervenor must satisfy four criteria to" intervene as of right: "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or

impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *United States v. Territory of Virgin Islands*, 748 F.3d 514, 519 (3d Cir. 2014) (quoting *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987)).

Permissive intervention allows "anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." *Id.* at 524 (quoting Fed. R. Civ. P. 24(b)(1)(B)). "In exercising its discretion, the [Court] must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* (quoting Fed. R. Civ. P. 24(b)(3)). Courts "have broader discretion in making a determination about whether permissive intervention is appropriate as opposed to intervention as of right." *Id.*

## ARGUMENT

The requirements for both intervention as of right and permissive intervention are readily satisfied here. This is especially true given that DSCC and DCCC are actively litigating a similar Materiality Provision claim in a parallel proceeding before the District Court.

I.     **The Democratic Committees satisfy the requirements for intervention as of right.**

A.     **This motion is timely.**

"To determine whether [an] intervention motion is timely," this Court considers "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Benjamin ex rel. Yock v. Dep't of Pub. Welfare*, 701 F.3d 939, 949 (3d Cir. 2012) (quoting *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995)). Importantly, timeliness "is not just a function of counting days," *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1181 (3d Cir. 1994), and "[t]he mere passage of time . . . does not render an application [to intervene] untimely," *Mountain Top Condo. Ass'n*, 72 F.3d at 369. Instead, timeliness "should be assessed in relation to th[e] point in time" when the movant's "need to seek intervention first ar[ose]," *Cameron*, 595 U.S. at 280, with the "critical inquiry" being "what proceedings of substance on the merits have occurred," *Mountain Top Condo. Ass'n*, 72 F.3d at 369. This Court has made clear, moreover, that "[t]here is a general reluctance to dispose of a motion to intervene as of right on untimeliness grounds because the would-be intervenor actually

may be seriously harmed if not allowed to intervene." *Yock*, 701 F.3d at 949.

Here, the Republican Intervenors filed their notice of appeal—the point at which the Democratic Committees' "need to seek intervention . . . ar[ose]," *Cameron*, 595 U.S. at 280—just 15 days ago, and thus any delay is minimal. Moreover, the Democratic Committees will abide by the expedited briefing schedule set by the Court, Doc. No. 44, and so their participation will not pose any risk of delay or prejudice or expand the scope of this appeal, *see, e.g.*, *United States v. Alisal Water Corp.*, 370 F.3d 915, 922 (9th Cir. 2004) (prejudice occurs where "intervention would inject new issues into the litigation" or "relief . . . [would be] delayed" (cleaned up)). Indeed, the lack of prejudice is confirmed by the fact that the Court granted Mr. Marino's intervention motion just last week.

## B.     The Democratic Committees have significant interests in the outcome of this appeal.

To satisfy "this prong, the Supreme Court has held that an applicant must assert an interest that is 'significantly protectable'" by "demonstrat[ing] that its interest is 'specific to [it], is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought.'" *Pennsylvania v. President U.S.*, 888 F.3d 52, 58 (3d

Cir. 2018) (second alteration in original) (first quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971); and then quoting *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998)).

DSCC's and DCCC's interest in this appeal is confirmed by the fact that they are currently litigating similar claims in a related case before the District Court. The *NAACP* lawsuit that forms the basis of this appeal challenged the rejection of improperly dated ballots under the Civil Rights Act's Materiality Provision, *NAACP*, ECF No. 121, and the District Court granted summary judgment on that basis, *NAACP*, ECF No. 347. DSCC and DCCC have also asserted a claim under the Materiality Provision, *Eakin*, ECF No. 228, and moved for summary judgment on the same ground, *Eakin*, ECF No. 287. As representatives from all three Democratic Committees attest in the attached declarations, they have significant interests in how Pennsylvania—its constituent counties in particular—treats undated or improperly dated mail ballots, both in terms of the voters who might be disenfranchised by the rejection requirement and the resources the Democratic Committees must divert to help voters navigate the commonwealth's election rules. *See* Exs. 1–3. Indeed, these interests are substantial enough to confer

Article III standing on DSCC and DCCC to challenge the date requirement in federal court, which more than suffices for intervention as of right. *See Yniguez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991) ("determination that [putative intervenors] have standing under Article III compels the conclusion that they have an adequate interest" for purposes of intervention "because the Article III standing requirements are more stringent than those for intervention under rule 24(a)").

Moreover, the Democratic Committees support Democratic candidates and expend time and money to help voters cast and cure mail ballots. Their members and supporters include eligible voters in Pennsylvania who rely on mail ballots and candidates who have appeared or will appear on ballots across the commonwealth. The Democratic Committees thus have a substantial interest in the outcome of an appeal that will determine how Pennsylvania's mail ballots are counted in next year's election and beyond, which will in turn impact their supporters, their electoral prospects, and the allocation of their limited financial and personnel resources. *See, e.g.*, *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022) (political-party committees had interest sufficient for intervention as of right where "claims . . . could affect [their]

ability to participate in . . . the election process"); *Issa v. Newsom*, No. 2:20-cv-01044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020) (granting intervention as of right where political-party organizations "cite[d] three protectable interests as the basis for their intervention: (1) asserting the rights of their members to vote . . . ; (2) advancing their overall electoral prospects; and (3) diverting their limited resources to educate their members on the election procedures"); *cf. Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007) (political party had standing in case involving election rules), *aff'd*, 553 U.S. 181 (2008). Indeed, the DNC has a specific interest in electing a Democratic candidate in an election directly affected by this appeal: As Mr. Marino's motion to intervene explained, a Democratic candidate won the 2023 election for Towamencin Township Board of Supervisors after the District Court ordered the counting of undated and improperly dated mail ballots.

### C.    The outcome of this appeal threatens the Democratic Committees' interests.

"To meet this requirement, an applicant 'must demonstrate that [its] legal interests may be affected or impaired[] as a practical matter by the disposition of the action.'" *Pennsylvania*, 888 F.3d at 59 (alterations

in original) (quoting *Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1122 (3d Cir. 1992)). Because the Court's focus "is on the 'practical consequences' of the litigation, [it] 'may consider any significant legal effect on the applicant's interest,' including a decision's stare decisis effect or a proposed remedy's impact on the applicant for intervention." *Id.* (quoting *Sugzdinis*, 957 F.2d at 1122–23).

Here, the outcome of this appeal risks impairment of both DSCC's and DCCC's interest in the outcome of their own litigation and the Democratic Committees' electoral prospects more generally.

First, this Court's ruling will have a significant—and potentially dispositive—effect on DSCC's and DCCC's lawsuit, which alone presents sufficient ground for intervention as of right. *See Harris*, 820 F.2d at 601 ("Courts [] have found that an applicant has a sufficient interest to intervene when the action will have a significant *stare decisis* effect on the applicant's rights."); *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1258 (11th Cir. 2002) ("Because a final ruling in this case may adversely impact [putative intervenor's] ongoing lawsuit against the [defendant], we find that its interests could be impaired by the denial of intervention.").

Additionally, the outcome of this appeal—in particular, the Court's determination whether and how election officials are permitted to count improperly dated ballots—will also impact (and possibly impair) the Democratic Committees' electoral prospects and allocations of resources. A reversal of the District Court's order would mean that election officials in certain counties would again be required to reject improperly dated mail ballots, thus impacting the ability of Democratic voters to make their voices heard in future elections (especially given that they disproportionately rely on mail ballots to vote[4]). *Cf. Mecinas v. Hobbs*, 30 F.4th 890, 898 (9th Cir. 2022) (political parties have interest in challenging voting regulations that "make[] the competitive landscape worse for a candidate or that candidate's party than it would otherwise be if the regulation[s] were declared unlawful"); *Shays v. FEC*, 414 F.3d 76, 85–86 (D.C. Cir. 2005) (finding Article III standing where case would

---

[4] *See, e.g., 2022 General Election Official Returns: Statewide*, Pa. Dep't of State, https://www.electionreturns.pa.gov/General/SummaryResults?ElectionID=94&ElectionType=G&IsActive=0 (Dec. 21, 2023) (Pennsylvania voters cast 960,405 mail ballots for Democratic Senate candidate and 234,371 mail ballots for Republican Senate candidate); *2020 Presidential Election Official Returns: Statewide*, Pa. Dep't of State, https://www.electionreturns.pa.gov/General/SummaryResults?ElectionID=83&ElectionType=G&IsActive=0 (Dec. 21, 2023) (similar).

"fundamentally alter the environment in which [] parties defend their concrete interests (e.g., their interest in . . . winning []election").

## D.  The Democratic Committees' interests are not adequately represented by the current parties.

"[A]n applicant's interests are not adequately represented if they diverge sufficiently from the interests of the existing party, such that 'the existing party cannot devote proper attention to the applicant's interests.' This burden is generally 'treated as minimal' and requires the applicant to show 'that representation of his interest "*may be*" inadequate.'" *Pennsylvania*, 888 F.3d at 60 (citation omitted) (first quoting *Territory of Virgin Islands*, 748 F.3d at 520; and then quoting *Mountain Top Condo. Ass'n*, 72 F.3d at 368).

Here, no current party to the appeal shares the Democratic Committees' interests. That the *NAACP* plaintiffs and the *Eakin* plaintiffs (including DSCC and DCCC) both challenge the rejection of improperly dated mail ballots under the Materiality Provision does *not* mean that their interests are aligned for purposes of this intervention requirement. The Democratic Committees represent the interests of Democratic voters and candidates (in addition to DSCC's and DCCC's unique interest in the outcome of their pending lawsuit), while the

15

*NAACP* plaintiffs include "nonpartisan organizations . . . and a bipartisan group of Pennsylvania voters." *NAACP*, ECF No. 121 ¶ 1. Adequacy of representation cannot be assumed where, as here, the existing parties "may see their own interest in a different, perhaps more"—or less—"parochial light." *Conservation L. Found. of New Eng., Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992); *see also, e.g.*, *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir. 2001) ("presumption of adequacy of representation" that exists where parties "have the same ultimate objective" can be "rebutted" where parties "do not have sufficiently congruent interests" (quoting *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996))).

Nor does any current party share the Democratic Committees' specific interest in ensuring access to the franchise for Democratic voters and the electoral success of Democratic candidates—instead, only the interests of *Republican* entities are currently reflected in this appeal. That weighs in favor of intervention by the Democratic Committees, who "represent the 'mirror-image' interests of the" Republican Intervenors. *Democratic Nat'l Comm. v. Bostelmann*, No. 20-cv-249-wmc, 2020 WL 1505640, at *5 (W.D. Wis. Mar. 28, 2020).

Finally, the individual plaintiffs in the *NAACP* lawsuit do not adequately represent the Democratic Committees' interests. Those plaintiffs have interests in ensuring that their *own* votes are properly counted and in the election of their candidates of choice. They do not necessarily share the Democratic Committees' broader political interests, and they certainly do not share the organizational concerns of political committees that must decide how and where to expend their resources on voter-education and other programs.

In short, because "the interest[s] of [the Democratic Committees are] not represented at all," they are "not adequately represented." *Mountain Top Condo. Ass'n*, 72 F.3d at 368 (quoting 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1909 (2d ed. 1986)).

## II. Alternatively, permissive intervention is appropriate.

Federal Rule of Civil Procedure 24(b) "provides that a 'court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact.'" *Territory of Virgin Islands*, 748 F.3d at 524 (alteration in original) (quoting Fed. R. Civ. P. 24(b)(1)(B)). Whether to grant permissive intervention is a "highly

17

discretionary decision," *Sugzdinis*, 957 F.2d at 1115, and courts "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights," *Territory of Virgin Islands*, 748 F.3d at 524 (quoting Fed. R. Civ. P. 24(b)(3)).

As discussed, the Democratic Committees are seeking intervention at the outset of the appeal and, because they will follow the docketed briefing schedule, their participation will neither delay the proceedings nor prejudice the existing parties. The "common question of law or fact" requirement, Fed. R. Civ. P. 24(b)(1)(B), is satisfied because the Democratic Committees will address the central issue in this appeal: whether enforcing the date requirement against undated and incorrectly dated mail ballots contravenes the Materiality Provision.

Moreover, as party organizations representing "one of [Pennsylvania's] two major political parties," the Democratic Committees "bring[] a unique perspective on the election laws being challenged and how those laws affect its candidates and voters. Courts often allow the permissive intervention of political parties in actions challenging voting laws for exactly this reason." *Democratic Party of Va. v. Brink*, No. 3:21-cv-756-HEH, 2022 WL 330183, at *2 & n.5 (E.D. Va. Feb. 3, 2022)

(citation omitted) (collecting cases). Finally, DSCC and DCCC have asserted—and are currently litigating—a Materiality Provision claim that overlaps almost entirely with the issues before the Court. Allowing them to participate in this appeal might expedite or even resolve their pending claims before the District Court, vindicating this Court's "policy preference which, as a matter of judicial economy, favors intervention over subsequent collateral attacks." *Pennsylvania*, 888 F.3d at 59 (quoting *Kleissler*, 157 F.3d at 970).

## CONCLUSION

For the foregoing reasons, the Democratic Committees respectfully request that the Court allow them to intervene in this appeal.

Dated: December 22, 2023

Seth P. Waxman
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
(202) 663-6000
seth.waxman@wilmerhale.com

Clifford B. Levine
DENTONS COHEN & GRIGSBY P.C.
625 Liberty Avenue
Pittsburgh, Pennsylvania 15222
(412) 297-4998
clifford.levine@dentons.com

*Counsel for the Democratic
National Committee*

Respectfully submitted,

*s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta
ELIAS LAW GROUP LLP
250 Massachusetts Avenue NW,
Suite 400
Washington, D.C. 20001
(202) 968-4490
unkwonta@elias.law

*Counsel for DSCC and DCCC*

## COMBINED CERTIFICATIONS

1.     Pursuant to 3d Cir. L.A.R. 28.3(d), at least one of the attorneys whose names appear on this motion, including the undersigned, is a member in good standing of the bar of this Court.

2.     This brief complies with the word limit of Fed. R. App. P. 27(d)(2) because, excluding the parts exempted by Fed. R. App. P. 32(f), it contains 3,632 words. This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced 14-point serif font (Century Schoolbook) using Microsoft Word.

3.     Pursuant to 3d Cir. L.A.R. 31.1(c), Sophos Endpoint version 3.4.530.0 has been run on this electronic file and no virus was detected.

 Dated: December 22, 2023          *s/ Uzoma N. Nkwonta*
                                   Uzoma N. Nkwonta

## CERTIFICATE OF SERVICE

I hereby certify that, on December 22, 2023, this motion and attached exhibits were electronically filed with the Clerk of Court using the appellate CM/ECF system.

Dated: December 22, 2023              *s/ Uzoma N. Nkwonta*
                                      Uzoma N. Nkwonta

# EXHIBIT 1

No. 23-3166

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

PENNSYLVANIA STATE CONFERENCE OF NAACP BRANCHES
et al.,

*Plaintiffs-Appellees,*

*v.*

SECRETARY COMMONWEALTH OF PENNSYLVANIA et al.,
*Defendants-Appellees,*

REPUBLICAN NATIONAL COMMITTEE et al.,
*Intervenors-Appellants.*

---

On Appeal from the United States District Court
for the Western District of Pennsylvania
Case No. 1:22-cv-00339 (Hon. Susan Paradise Baxter)

---

## DECLARATION OF DNC STATES' DIRECTOR RAMSEY REID
## IN SUPPORT OF MOTION TO INTERVENE

---

I, Ramsey Reid, declare as follows:

1.    I am over the age of 18, am competent to testify, and have personal knowledge of the facts and information set forth in this declaration.

2.    I am the Director of States at the Democratic National Committee's ("DNC"). I have held that position since January 2021. In this role, I manage the DNC's national political and organizing staff, and I oversee the DNC's state programs, strategy, and resources.

3.    The DNC is the oldest continuing party committee in the United States, and the Democratic Party's national committee as defined by 52 U.S.C. § 30101(14). The DNC's organizational purposes and functions are to communicate the Democratic Party's position and messages on issues; protect voters' rights; and aid and encourage the election of Democratic candidates at the national, state, and local levels, including by persuading and organizing citizens not only to register to vote as Democrats but also to cast their ballots for Democratic nominees and candidates. The DNC is composed of the chair, vice chairs, and over 200 members elected by Democrats in every U.S. state and territory and the District of Columbia.

DocuSign Envelope ID: 41F39BF4-B637-4149-85B0-14F1AEF0DD5A

4.     In recent election cycles, the DNC has spent millions of dollars and invested significant staff and volunteer time to persuade and mobilize voters to support Democratic candidates across the country, and it will continue to do so in future elections, including in 2024 to support Democratic candidates in Pennsylvania.

5.     Mail voting has been critical to the DNC's Pennsylvania strategy since universal no-excuse mail voting was introduced in 2019.

6.     The DNC works to accomplish its mission by, among other things, mobilizing and persuading voters. It engages in grassroots mobilization of volunteers and field organizers to conduct get-out-the-vote activities. The DNC also engages in activities to explain the voting process to eligible voters, including how voters can successfully cast their ballots and ensure those ballots are counted.

7.     These activities take the form of door knocking, text messaging, and phone banking. The DNC also invests in digital advertisements along with mailings in support of Democratic candidates throughout Pennsylvania and the rest of the country.

DocuSign Envelope ID: 41F39BF4-B637-4149-85B0-14F1AEF0DD5A

8.      Given the DNC's mission of electing Democrats up and down the ballot, its efforts have included (and will include in future elections) every county in Pennsylvania.

9.      In particular, the DNC's volunteer phone banking, volunteer texting, and paid phone banking programs operate on a statewide basis in Pennsylvania. The recipients of the DNC's mailings have also been located statewide.

10.     Since the DNC operates across the country, investing additional funds or personnel in one state will necessarily divert those resources from others states and key races.

11.     The DNC also separates funds for "curing" activities in states where it anticipates there will be close races. These efforts involve contacting voters whose ballots have been rejected and helping them perform whatever tasks are necessary to ensure that their ballot is ultimately counted, to the extent legally permissible. These activities require the DNC to devote substantial personnel time and money to track data from counties, contact voters, and assist them in completing the curing process, which varies in each state (and sometimes, in states like Pennsylvania, in each county). The DNC conducts its "curing"

activities in every county in Pennsylvania for which it has requisite data.

12.     Enforcing the requirement of Pennsylvania law that county boards of elections must reject an otherwise valid mail-in or absentee ballot if, in timely submitting that ballot, the voter mistakenly fails to write a correct date on the ballot return envelope, 25 P.S. §§ 3146.6(a) and 3150.16(a) (hereafter, the "Date Provision"), frustrates the DNC's mission. It does so by erecting an obstacle to ensuring all lawful mail ballots cast by Pennsylvanians supporting Democratic candidates are actually counted, thereby impairing those Democratic candidates' electoral prospects.

13.     If Appellants succeed here, reinstatement of the Date Provision will force the DNC to divert personnel, time, and money away from its broader advocacy and persuasion activities, and towards educating voters in Pennsylvania about the Date Provision and the severe consequences of failing to "correctly" date the outer envelope of a mail ballot. For example, the DNC has a specific interest in electing Democratic candidates in elections directly affected by this case: a Democratic candidate won the 2023 election for Towamencin Township

Board of Supervisors after the district court ordered the counting of undated or improperly dated mail ballots.

14.    If Appellants succeed here, DNC personnel will also be forced to spend time researching (1) how each county intends to determine whether a date written on a mail-ballot envelope is "correct" in the upcoming 2024 election and (2) each county's procedures for curing such ballots. Because the DNC has limited resources, these activities—again, forced by the reinstatement of the Date Provision in this appeal—will come at the cost of the DNC's broader statewide get-out-the-vote and voter persuasion activities in Pennsylvania and in other states.

15.    The DNC also represents the interests of voters in each county in Pennsylvania who vote for Democratic candidates for positions up and down the ballot. The DNC considers those individuals to be its constituents.

16.    Democratic voters (1) provide financial support in the form of political contributions to the DNC and candidates supported by the DNC on a regular basis, (2) help select the DNC's leadership, and (3)

ultimately determine the DNC's strategic and political direction by electing Democratic candidates to office.

17.    By requiring county boards to reject otherwise valid mail ballots, a reinstated Date Provision would disenfranchise DNC constituents, which would significantly impair the DNC's mission to elect Democratic candidates to office.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on:_____12/22/2023_____

_____

Ramsey Reid

# EXHIBIT 2

No. 23-3166

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

PENNSYLVANIA STATE CONFERENCE OF NAACP BRANCHES, et al.,

*Plaintiffs-Appellees,*

*v.*

SECRETARY COMMONWEALTH OF PENNSYLVANIA, et al.,

*Defendants-Appellees,*

REPUBLICAN NATIONAL COMMITTEE, et al.,

*Intervenors-Appellants.*

On Appeal from the United States District Court
for the Western District of Pennsylvania
Case No. 1:22-cv-00339 (Hon. Susan Paradise Baxter)

## DECLARATION OF DEVAN BARBER IN SUPPORT OF MOTION TO INTERVENE OF THE DEMOCRATIC NATIONAL COMMITTEE, DSCC, AND DCCC

I, Devan Barber, declare as follows:

1.    I am over the age of 18, am competent to testify, and have personal knowledge of the facts and information set forth in this declaration.

2.    I am a Senior Advisor at DSCC, where I am responsible for tracking, analyzing, and providing advice on DSCC's operations and strategy, including its use of paid staff and volunteer time as well as financial resources. I previously served as Deputy Executive Director for DSCC in 2020, Political Director for DSCC in 2018, and Research Director for DSCC in 2016.

3.    DSCC is the Democratic Party's national senatorial committee, as defined by 52 U.S.C. § 30101(14).

4.    DSCC's mission is to support the election of Democratic candidates from across the country, including in Pennsylvania, to the U.S. Senate.

5.    In recent election cycles, DSCC has spent millions of dollars and invested significant staff and volunteer time to persuade and mobilize voters to support senatorial candidates who affiliate with the Democratic Party, and it will continue to do so in future elections,

including in 2024 in support of the Democratic senatorial candidate in Pennsylvania.

6.    Mail voting has been critical to DSCC's Pennsylvania strategy in each senatorial election since no-excuse mail voting was introduced in 2019, and especially so since the COVID-19 pandemic led to its increased use in Pennsylvania.

7.    DSCC works to accomplish its mission by, among other things, mobilizing and persuading voters. It engages in grassroots mobilization of volunteers and field organizers to conduct get-out-the-vote activities. DSCC also engages in activities aimed at explaining the voting process to eligible voters, including the means by which voters can successfully cast their ballots and ensure that they are counted.

8.    These activities take the form of door knocking, text messaging, and phone banking. DSCC also runs paid television, digital, and radio advertisements along with mailings in support of Democratic candidates throughout the country and in Pennsylvania.

9.    Given the statewide nature of Senate elections, DSCC's efforts have focused on each and every county in Pennsylvania, and will continue to do so in future elections. These include—but are not limited

to—Allegheny, Berks, Bucks, Lancaster, Lehigh, Montgomery, Northampton, Philadelphia, Warren, Washington, Westmoreland, and York Counties.

10.    In particular, DSCC's volunteer phone banking, volunteer texting, and paid phone banking programs conduct operations on a statewide basis. The recipients of DSCC's mailings have also been located statewide.

11.    Since DSCC operates across the country, investing additional funds or personnel in one state will necessarily divert those resources from other states and key races.

12.    DSCC also separately allocates funds for "curing" activities in states where it anticipates there will be close senatorial races. These efforts involve contacting voters whose ballots have been rejected and helping them perform whatever task is necessary to ensure that their ballot is ultimately counted, to the extent legally permissible. These activities require DSCC to devote substantial personnel time and money to track data from counties, contact voters, and assist them in completing the curing process, which varies in each state (and, sometimes in states

like Pennsylvania, in each county). DSCC conducts its "curing" activities in every county in Pennsylvania for which it has requisite data.

13.     DSCC is also a named plaintiff in the ongoing lawsuit *Eakin et al. v. Adams County Board of Elections et al.*, No. 1:22-cv-00340-SPB (W.D. Pa.), a challenge to Pennsylvania law under 25 P.S. §§ 3146.6(a) and 3150.16(a) that requires county boards of elections to reject an otherwise valid mail-in or absentee ballot if, in timely submitting that ballot, the voter mistakenly failed to write a correct date on the ballot return envelope (hereinafter, "Date Provision"). This lawsuit is parallel to *Pennsylvania State Conference of NAACP et al. v. Schmidt et al.*, No. 1:22-CV-00339-SPB (W.D. Pa.). The ongoing appeal of the grant of summary judgment in the *NAACP* lawsuit risks directly upending DSCC's efforts to seek relief from the Date Provision in its own case.

14.     By requiring county boards of elections to reject undated and misdated mail ballots, enforcement of the Date Provision frustrates DSCC's mission because it erects an obstacle to ensuring all mail ballots cast by Pennsylvanians supporting Democratic Senate candidates are actually counted, and thereby impairs those Democratic candidates' electoral prospects.

15.    If Appellants succeed here, the reinstatement of the Date Provision will force DSCC to divert personnel time and money away from its broader advocacy and persuasion activities and towards educating voters in Pennsylvania about the Date Provision and the severe consequences of failing to "correctly" date the outer envelope of a mail ballot. For example, in the 2022 general election, the Date Provision forced DSCC to divert personnel time and money away from its broader advocacy and persuasion activities and towards activities specifically aimed at explaining the Date Provision to voters and warning them of the costs of noncompliance.

16.    DSCC also diverted resources from efforts to assist voters in curing their rejected ballots in other states towards identifying Pennsylvania voters whose ballots had been rejected because of the Date Provision and helping them take the steps necessary to ensure their votes would be counted.

17.    DSCC will also be forced to spend personnel time researching (1) how each and every county intends to determine whether a date written on a mail-ballot envelope is "correct" in the upcoming 2024 election and (2) their respective procedures for curing such ballots.

Because DSCC has limited resources, these activities—forced by the reinstatement of the Date Provision in this appeal—will come at the cost of DSCC's broader statewide get-out-the-vote and voter persuasion activities in Pennsylvania and in other states.

18.    DSCC also represents the interests of voters in each and every county in Pennsylvania who vote for the Democratic candidate for Senate. DSCC considers those individuals to be its constituents.

19.    Democratic voters provide financial support in the form of political contributions to DSCC and candidates supported by DSCC on a regular basis, and help select DSCC's leadership and ultimately determine DSCC's strategic and political direction by electing candidates to the U.S. Senate.

20.    In the 2022 general election, over 2.7 million voters in Pennsylvania cast a vote for the Democratic senatorial candidate. By requiring county boards to reject otherwise valid mail ballots, a reinstated Date Provision threatens to disenfranchise DSCC's constituents, which significantly impairs DSCC's mission to elect Democratic candidates to the U.S. Senate.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 12/22/2023

_____

Devan Barber

# EXHIBIT 3

No. 23-3166

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

PENNSYLVANIA STATE CONFERENCE OF NAACP BRANCHES, et al.

*Plaintiffs-Appellees,*

*v.*

SECRETARY COMMONWEALTH OF PENNSYLVANIA, et al.

*Defendants-Appellees,*

REPUBLICAN NATIONAL COMMITTEE, et al.

*Intervenors-Appellants.*

On Appeal from the United States District Court
for the Western District of Pennsylvania
Case No. 1:22-cv-00339 (Hon. Susan Paradise Baxter)

## DECLARATION OF ERIK RUSELOWSKI IN SUPPORT OF
## MOTION TO INTERVENE OF THE DEMOCRATIC NATIONAL
## COMMITTEE, DSCC, AND DCCC

I, Erik Ruselowski, declare as follows:

1.    I am over the age of 18, am competent to testify, and have personal knowledge of the facts and information set forth in this declaration.

2.    I am DCCC's Chief Operating Officer, and have held that position since the middle of the 2022 election cycle. In this role, I manage DCCC's day-to-day operations, including its use of paid staff and volunteer time as well as financial resources, and provide strategic advice. I previously served as DCCC's Deputy Chief Financial Officer, where I provided financial management advice, and have worked at DCCC for five election cycles.

3.    DCCC is the Democratic Party's national congressional committee as defined by 52 U.S.C. § 30101(14).

4.    DCCC's mission is to support the election of Democratic candidates from across the country, including those running in Pennsylvania's congressional districts, to the U.S. House of Representatives.

5.    In recent election cycles, DCCC has spent millions of dollars and invested significant staff and volunteer time to persuade and

mobilize voters to support congressional candidates who affiliate with the Democratic Party, and it will continue to do so again in future elections, including in 2024 in support of the 2024 Democratic congressional candidates in Pennsylvania.

6.    Mail voting has been critical to DCCC's Pennsylvania strategy in each congressional election since no-excuse mail voting was introduced in 2019, and especially so since the COVID-19 pandemic led to its increased use in Pennsylvania.

7.    Some of the ways DCCC works to accomplish its mission are running paid advertisements in support of Democratic candidates, which includes paid television, social media, and radio advertisements and mailings; engaging in grassroots mobilization of volunteers and organizers on the ground to perform get-out-the-vote efforts, such as text messaging and phone banking; and running paid and volunteer programs where individuals knock on doors to boost voter turnout and encourage voters to exercise their right to vote.

8.    Since DCCC operates across the country, investing additional funds or personnel in one state will necessarily divert those resources from other states and key races.

9.    DCCC also supports efforts of state parties throughout the country, including in Pennsylvania, to conduct these activities by providing funding, staff and volunteer time, and ongoing coordination.

10.    DCCC also devotes staff, volunteers, and funds to assist voters in curing mail ballots in states where it anticipates there will be close congressional races. Helping voters cure their ballots involves contacting voters whose ballots have been rejected and assisting them to understand and/or perform whatever task is necessary to ensure that their ballots are ultimately counted, to the extent legally permissible. These activities require DCCC to devote substantial personnel time and money to track data from counties, contact voters, and assist them in completing the curing process established in each county.

11.    Naturally, DCCC's activities focus on each and every county in which a Democratic candidate runs to represent one of Pennsylvania's congressional districts. These include—but are not limited to—Allegheny, Berks, Bucks, Lancaster, Lehigh, Montgomery, Northampton, Philadelphia, Warren, Washington, Westmoreland, and York Counties.

12.    In 2022, Democratic candidates ran in all but the 13th and 14th Congressional Districts of Pennsylvania, which together contain 14

counties (Adams, Bedford, Blair, Cambria, Fayette, Franklin, Fulton, Greene, Huntingdon, Juniata, Mifflin, Perry, Somerset, and Washington). Nevertheless, DCCC intends to support and affiliate with Democratic candidates *in every Pennsylvania congressional district*, and thus every Pennsylvania county, in the 2024 elections.

13.    DCCC is a named plaintiff in the ongoing lawsuit *Eakin, et al. v. Adams County Board of Elections, et al.*, No. 1:22-cv-00340-SPB (W.D. Pa.), a challenge to Pennsylvania law under 25 P.S. §§ 3146.6(a) and 3150.16(a) that requires county boards of elections to reject an otherwise valid mail-in or absentee ballot if, in timely submitting that ballot, the voter mistakenly failed to write a correct date on the ballot return envelope (hereinafter, "Date Provision"). This lawsuit is parallel to *Pennsylvania State Conference of the NAACP, et al. v. Schmidt, et al.*, No. 1:22-CV-00339-SPB (W.D. Pa.). The ongoing appeal of the grant of summary judgment in the *NAACP* lawsuit risks directly upending DCCC's efforts to seek relief from the Date Provision in its own case.

14.    By requiring county boards of elections to reject undated and misdated mail ballots, enforcement of the Date Provision frustrates DCCC's mission because it erects an obstacle to ensuring all mail ballots

cast by Pennsylvanians supporting Democratic congressional candidates are actually counted, and thereby impairs those Democratic candidates' electoral prospects.

15.    If Appellants succeed here, the reinstatement of the Date Provision will force DCCC to divert personnel time and money away from its broader persuasion and mobilization activities and towards educating voters about the Date Provision and the severe consequences of failing to "correctly" date the outer envelope of a mail ballot. DCCC will also be forced to spend personnel time researching how county boards will go about determining whether the date written on a mail-ballot envelope is "correct."

16.    DCCC may also be forced to divert personnel time and money towards gathering data on the voters impacted by a county board's determination and the respective procedures for curing such ballots in each county where cure is an option. Because DCCC has limited resources, these activities—forced by the reinstatement of the Date Provision in this appeal—will come at the cost of DCCC's broader statewide get-out-the-vote and voter persuasion activities in Pennsylvania and in other states.

17.    DCCC represents the interests of voters in each and every county in Pennsylvania who vote for the Democratic candidate for the U.S. House of Representatives. DCCC considers those individuals to be its constituents.

18.    Democratic voters provide financial support in the form of political contributions to DCCC and candidates supported by DCCC on a regular basis, and help select DCCC's leadership and ultimately determine DCCC's strategic and political direction by electing candidates to the U.S. House of Representatives.

19.    In the 2022 general election, more than 2.4 million Pennsylvanians cast a vote for Democratic congressional candidates. Some of those voters saw their mail ballots rejected for failure to correctly date their ballot envelopes. By requiring county boards to reject these otherwise valid mail ballots, a reinstated Date Provision threatens to disenfranchise DCCC's constituents, which significantly impairs DCCC's mission to elect Democratic candidates to the U.S. House of Representatives.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: _12/22/2023_____

_Erik Ruselowski_____
Erik Ruselowski