IN THE

# United States Court of Appeals

## FOR THE THIRD CIRCUIT

No. 23-3166

PENNSYLVANIA STATE CONFERENCE OF NAACP BRANCHES, et al.

V.

SECRETARY COMMONWEALTH OF PENNSYLVANIA, et al.

RICHARD MARINO, et al.
*Appellants*.

Appeal from the United States District Court for the Western District of
Pennsylvania
No. 1-22-cv-00339
Honorable Susan Paradise Baxter

AMICUS BRIEF OF REPUBLICAN LEADER OF THE PENNSYLVANIA
HOUSE OF REPRESENTATIVES, BRYAN CUTLER, PRESIDENT PRO
TEMPORE OF THE PENNSYLVANIA SENATE, KIM WARD, AND MAJORITY
LEADER OF THE PENNSYLVANIA SENATE, JOE PITTMAN
IN SUPPORT OF APPELLANTS URGING REVERSAL

December 29, 2023

Zachary M. Wallen
CHALMERS, ADAMS,
BACKER & KAUFMAN, LLC
301 South Hills Village Drive
Suite LL200-420
Pittsburgh, PA 15241
(412) 200-0842
zwallen@chalmersadams.com

Counsel for *Amici Curiae*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... I

INTEREST OF AMICI CURIAE .............................................................. 1

INTRODUCTION AND SUMMARY OF ARGUMENT ....................................... 2

ARGUMENT ...................................................................................... 2

I.  THE STATUTES IN QUESTION WERE PROPERLY ENACTED PURSUANT TO THE GENERAL ASSEMBLY'S CONSTITUTIONAL AUTHORITY TO LEGISLATE FOR THE PROCEDURES THAT GOVERN PENNSYLVANIA'S ELECTIONS ............................................. 2

    A. THE LEGISLATIVE HISTORY OF THE STATUTES IN QUESTION DEMONSTRATES A CLEAR COMMITMENT BY THE GENERAL ASSEMBLY TO FREE, EQUAL, AND FAIR ELECTIONS ................................................................................... 4

    B. THE REQUIREMENT TO DATE AND SIGN ABSENTEE AND MAIL-IN BALLOTS SERVES A CLEAR PURPOSE AS A PART OF THE GENERAL ASSEMBLY'S COMPREHENSIVE ELECTION CODE ............................................................................................ 5

II.  THE DISTRICT COURT MISAPPLIED THE MATERIALITY PROVISION ................................................................................... 7

    A. THE DISTRICT COURT'S DECISION IS INCONSISTENT WITH THE HISTORY OF THE MATERIALITY PROVISION .................. 7

    B. THE DISTRICT COURT ERRED IN REVIVING THE VACATED AND UNWORKABLE *MIGLIORI* FRAMEWORK ..................................... 11

    C. THE DISTRICT COURT'S OPINION IGNORES STATUTORY CONSTRUCTION ISSUES RAISED BY OTHER COURTS .................... 16

1. THE "DATE AND SIGN" REQUIREMENT DOES NOT DENY THE RIGHT TO VOTE ...............................................................................17

2. THE BALLOT RETURN ENVELOPE IS NOT RELATED TO AN APPLICATION, REGISTRATION, OR OTHER ACT REQUISITE TO VOTING ...........................................................................19

3. THE STATUTES IN QUESTION HAVE NO BEARING ON WHETHER AN INDIVIDUAL IS QUALIFIED UNDER STATE LAW TO VOTE IN AN ELECTION ...........................................................21

III.   THE DECISION OF THE COURT BELOW IMPROPERLY TRUNCATED THE POWER OF THE GENERAL ASSEMBLY TO LEGISLATE FOR PENNSYLVANIA'S ELECTIONS .......................25

CONCLUSION .......................................................................................27

COMBINED CERTIFICATIONS

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) .................................................. 15, 16

*Ball v. Chapman*, 289 A.3d 1 (Pa. 2022) ........................................................ *passim*

*Brnovich v. Democratic National Committee*, 141 S. Ct. 2321 (2021) ..................13

*Burdick v. Takushi*, 504 U.S. 428 (1992) .................................................... 15, 16, 18

*Clinton Cty. Comm'rs v. United States EPA*,
    116 F.3d 1018 (3d Cir. 1997) ........................................................ 26, 27

*Commonwealth v. Mihaliak*, Docket Nos. MJ-02202-CR-000126-2022;
    CP-36-CR-0003315-2022 ........................................................................6

*Crandon v. United States*, 494 U.S. 152 (1990) ............................................8

*Democratic Nat'l Comm. v. Wis. State. Legis.*, 141 S. Ct. 28 (2020) .............. 18, 19

*Democratic Party v. Hobbs*, 18 F.4th 1179 (9th Cir. 2021) ...................................18

*Diaz v. Cobb*, 435 F. Supp. 2d 1206 (S.D. Fla. 2006) ............................................10

*Donald J. Trump for President, Inc. v. Boockvar*,
    493 F. Supp. 3d 331 (W.D. Pa. 2020) ........................................................6

*Dondiego v. Lehigh Cty. Bd. of Elections*,
    No. 5:22-cv-2111-JLS (E.D. Pa.) ........................................................24

*Eakin v. Schmidt*, No. 1:22-CV-00340 (W.D. Pa.) .................................................12

*Ferguson v. Skrupa*, 372 U.S. 726 (1963) ............................................................26

*Friedman v. Snipes*, 345 F. Supp. 2d 1356 (S.D. Fla. 2004) ..................................10

*In re 2,349 Ballots in 2020 General Election*,
    241 A.3d 694  (Pa. Commw. Ct. 2020). ................................................5

I

*In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020*
   *General Election,* 241 A.3d 591 (Pa. 2020). .............................................. 5, 22, 23

*In re Chapman*, 166 U.S. 661 (1897) ....................................................................16

*McKay v. Altobello.*, CIVIL ACTION NO. 96-3458 SECTION: E/4,
   1996 U.S. Dist. LEXIS 16651 (E.D. La. Oct. 31, 1996) ......................................9

*Migliori v. Lehigh Cty. Bd. of Elections*, No. 5:22-cv-00397,
   2022 U.S. Dist. LEXIS 46352 (E.D. Pa. Mar. 16, 2022) ................... 6, 11, 16, 24

*Migliori v. Cohen*, 36 F.4th 153 (3d. Cir. 2022)...................... 11, 12, 13, 14, 16, 24

*Pa. State Conference of the NAACP v. Schmidt,*
   No. 1:22-CV-00339, 2023 U.S. Dist. LEXIS 208213
   (W.D. Pa. Nov. 21, 2023) ........................................................................... *passim*

*Ritter v. Lehigh Cty. Bd. of Elections*, No. 1322 C.D. 2021,
   2022 Pa. Commw. Unpub. LEXIS 1 (Pa. Commw. Ct. Jan. 3, 2022) .............5, 11

*Ritter v. Migliori*, 142 S. Ct. 1824 (2022)........................................................ *passim*

*Ritter v. Migliori*, 143 S. Ct. 297 (2022)................................................................11

*Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003) ............................................ 8, 9, 10

*Southwest Airlines Co. v. Saxon*, 142 S. Ct. 1783 (2022)........................................20

*United States v. Moreno*, 727 F.3d 255 (3d. Cir. 2013) ..........................................15

*Vote.org v. Callanen*, 39 F.4th 297 (5th Cir. 2022).................................................14

*Weber v. Shelley,* 347 F.3d 1101 (9th Cir. 2003)...............................................7, 27

**Constitutional and Statutory Authorities**

U.S. Constitution Art. I, Section 4 ..................................................................... 1, 25

Pa. Constitution Art. VII, Section 1 ........................................................................ 14

25 Pa. Cons. Stat. § 1301 .........................................................................................13

25 P.S. § 2811 ................................................................................13

25 P.S. § 3031.12 ..............................................................................5

25 P.S. § 3146.1 ......................................................................... 3, 4, 5

25 P.S. § 3146.6 ............................................... 3, 4, 11, 14, 22, 25

25 P.S. § 3150.16 .............................................. 4, 11, 14, 22, 25

52 U.S.C. § 10101 .......................................................... *passim*

## Other Authorities

Act No. 37, Session of 1963, Pub. L. No. 707 § 22.............................3, 4

H.R. Rep. No. 88-914 (1963)........................................................9

# INTEREST OF AMICI CURIAE[1]

Bryan Cutler, Republican Leader of the Pennsylvania House of Representatives; Kim Ward, President Pro Tempore of the Pennsylvania Senate; and Joe Pittman, Majority Leader of the Pennsylvania Senate, bring this brief as *Amici Curiae* in support of their authority as leaders of a state legislative body under the U.S. Constitution. The Pennsylvania Senate and the Pennsylvania House of Representatives together comprise the General Assembly of the Commonwealth of Pennsylvania (the "General Assembly"), which, as the state legislature of Pennsylvania, is given authority to prescribe the "Times, Places, and Manner of holding elections" by Article I, § 4, cl. 1 of the U.S. Constitution.

*Amici* present the following arguments in support of reversing the judgment of the court below and respectfully request they be heard in support of the General Assembly's authority to enact election regulations pursuant to the U.S. Constitution's plain text. Because the issues raised in this action directly pertain to the General Assembly's power under the U.S. Constitution, *Amici* have a significant interest in this case.

---

[1] No party's counsel authored this brief in whole or in part, and no one other than *Amici* and their counsel contributed money to fund the brief's preparation or submission.

**INTRODUCTION AND SUMMARY OF ARGUMENT**

The Elections Clause of Article I, § IV of the U.S. Constitution delegates to state legislatures in the first instance, and Congress in the second, the authority to enact regulations for federal elections. Pursuant to these constitutional powers, the General Assembly has adopted a comprehensive election framework to govern the Commonwealth's elections.

Here, pursuant to the grant of authority under the Elections Clause, the General Assembly unambiguously mandated that mail-in ballots' envelopes must bear the date on which the voter signed the voter declaration. Despite the District Court's holding to the contrary, this statutory requirement does not violate the Materiality Provision of the Voting Rights Act.

The Materiality Provision solely governs discriminatory tactics preventing voter registration. The statutory provision at issue in the present case is neither discriminatory nor does it relate to voter registration.

As such, this Court should reverse the court below.

**ARGUMENT**

## I.    The Statutes in Question Were Properly Enacted Pursuant to the General Assembly's Constitutional Authority to Legislate for the Procedures that Govern Pennsylvania's Elections

The statutes that have been the subject of this litigation are straightforward sections of the Election Code implemented by the General Assembly pursuant to its

2

constitutional powers under the Elections Clause of Article I, § IV of the U.S. Constitution. Notwithstanding the decision of the court below, by the plain meaning of the Election Code and as confirmed by the decisions of Pennsylvania courts, it is unequivocal that Pennsylvania law requires both a signature and date on a legally cast mail-in ballot. *See Ball v. Chapman*, 289 A.3d 1, 21-22 (Pa. 2022) ("the Election Code's command is unambiguous and mandatory, and . . . failure to comply with the date requirement would render a ballot invalid in any election after 2020."). Moreover, the orderly procedures necessary for the free and equal administration of elections are of vital importance to the Commonwealth and cannot reasonably be deemed immaterial.

### A. The Legislative History of the Statutes in Question Demonstrates a Clear Commitment by the General Assembly to Free, Equal, and Fair Elections

The requirement in question has a long history as a part of the Commonwealth's Election Code. While originally absentee voting was limited to military voters, absentee voting was extended to the general public in 1963. *See* Act No. 37, Session of 1963, Pub. L. No. 707, § 22 (amending Section 1306 of the Election Code (25 P.S. § 3146.6) to apply beyond military voters). Even then, Pennsylvania law only allowed absentee voting by those with a statutorily defined excuse to do so, such as physical disability or absence from their municipality on Election Day. *See* 25 P.S. § 3146.1. For someone to vote absentee, the voter would

have had to provide a permissible reason to do so, and the voter would have been provided with an absentee ballot that would have had to be returned by the voter no later than 5:00 p.m. on the Friday before the election. *Id*.

Since that 1963 enactment, the procedure for marking an absentee ballot has remained constant. A Pennsylvania absentee voter, after marking his or her ballot, shall:

> then fold the ballot, enclose and securely seal the same in the envelope on which is printed, stamped or endorsed 'Official Election Ballot.' This envelope shall then be placed in the second one, on which is printed the form of declaration of the elector, and the address of the elector's county board of election and the local election district of the elector. **The elector *shall* then fill out, date and sign the declaration printed on such envelope**. Such envelope shall then be securely sealed and the elector shall send same by mail, postage prepaid, except where franked, or deliver it in person to said county board of election.

25 P.S. § 3146.6(a)(emphasis added); *see also* Act No. 37, Session of 1963, Pub. L. No. 707, § 22 (amending Section 1306 of the Election Code (25 P.S. § 3146.6) to apply beyond military voters) ("The elector shall then fill out, date[,] and sign the declaration printed on such envelope.").

In 2019, when the General Assembly expanded the ability to vote by mail by creating a new category of "no excuse" mail-in voting through Act 77, that identical procedure of filling out, dating, and signing the envelope was applied to mail-in voters. *See* 25 P.S. § 3150.16(a).

Moreover, the traditional voting options have always remained available – voters may still choose to request an absentee ballot if they have a statutorily permitted reason for doing so, or vote in-person on Election Day. *See* 25 P.S. § 3146.1; 25 P.S. § 3031.12.

## B. The Requirement to Date and Sign Absentee and Mail-In Ballots Serves a Clear Purpose as a Part of the General Assembly's Comprehensive Election Code

The requirement that electors date and sign their absentee or mail-in ballot return envelope serves a variety of important election administration purposes. "The date on the ballot envelope provides proof of when the 'elector actually executed the ballot in full, ensuring their desire to cast it in lieu of appearing in person at a polling place. The presence of the date also establishes a point in time against which to measure the elector's eligibility to cast the ballot[.]' The date also ensures the elector completed the ballot within the proper time frame and prevents the tabulation of potentially fraudulent back-dated votes." *In re Canvass of Absentee and Mail-in Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d at 1079 (Dougherty, J., concurring and dissenting) (*quoting In re 2,349 Ballots in the 2020 Gen. Election*, 241 A.3d 694 (Pa. Commw. Ct. 2020) (memorandum); *Ritter v. Lehigh Cty. Bd. of Elections*, No. 1322 C.D. 2021, 2022 Pa. Commw. Unpub. LEXIS 1, at *10-11 (Pa. Commw. Ct. Jan. 3, 2022) (same).

5

One such example is that in a recent Lancaster County election fraud case concerning a mail-in ballot cast 12 days after a voter's death, the "date supplied on the . . . ballot declaration was the only piece of evidence of fraud on the face of the ballot" and that in conjunction with the Commonwealth's SURE system, "the date on the ballot declaration helped to detect fraud." App.109-110; *see also Commonwealth v. Mihaliak*, Docket Nos. MJ-02202-CR-000126-2022; CP-36-CR-0003315-2022.

The *Migliori* District Court similarly concluded that these statutory provisions serve "an important public interest in the integrity of an election process that ensures fair, efficient, and fraud-free elections is served by compliance with the statute mandating the handwritten date requirement." *Migliori v. Lehigh Cty. Bd. of Elections*, No. 5:22-cv-00397, 2022 U.S. Dist. LEXIS 46352, at *38-39 (E.D. Pa. Mar. 16, 2022). As Judge Leeson further observed:

> An elector's compliance with the signature and date requirement is an important guard against fraud. Where an elector fully complies with the instructions on the outer envelope, the electoral authorities conducting the election can be assured of the date on which the ballot was executed. Where, however, the outer envelope remains undated, the possibility for fraud is heightened, as individuals who come in contact with that outer envelope may, post hoc, fill in a date that is not representative of the date on which the ballot was executed.

> *Id*. at *38.

As the District Court for the Western District of Pennsylvania previously concluded, "the Pennsylvania legislature 'weigh[ed] the pros and cons,' and adopted

a broader system of 'no excuse' mail-in voting as part of the Commonwealth's Election Code." *Donald J. Trump for President, Inc. v. Boockvar*, 493 F. Supp. 3d 331, 395 (W.D. Pa. 2020) (*citing Weber v. Shelley*, 347 F.3d 1101, 1107 (9th Cir. 2003)). "And the key point is that the legislature made that judgment in the context of erecting a broader election scheme that authorizes other forms of voting and has many . . . safeguards in place to catch or deter fraud and other illegal voting practices." *Id*. at 396. "In this larger context, the Court cannot say that the balance Pennsylvania struck across the Election Code was unreasonable, illegitimate, or otherwise not 'sufficiently weighty to justify . . .'" *Id*.

Therefore, given the General Assembly's constitutional power to prescribe the time, place, and manner of the Commonwealth's elections, the clear legislative mandate of what is required of the elector, and the election-administration purposes of the statute, the statute in question is an important part of Pennsylvania's Election Code.

## II.    The District Court Misapplied the Materiality Provision

### A. The District Court's Decision is Inconsistent with the History of the Materiality Provision

The District Court incorrectly granted relief under the Materiality Provision of the Voting Rights Act, a civil rights statute dealing with discrimination pertaining to voter registration that has no applicability to a non-discriminatory election administration statute.

As discussed ably by the Appellants, there are numerous important threshold problems with the standing of the Appellee-Plaintiffs to bring this case,[2] but even should this Court need to consider the merits of this case, the Materiality Provision has no application to the statutes that are the subject of this litigation.

Pursuant to 52 U.S.C. § 10101(a)(2), "[n]o person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is **qualified under State law to vote** in such election." (Emphasis added.)

"In determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Crandon v. United States*, 494 U.S. 152, 158 (1990). Here, the statute in question, known as the "materiality provision" of the Voting Rights Act ("VRA"), "was intended to address the practice of requiring unnecessary information for **voter registration** with the intent that such requirements would increase the number of errors or omissions on the application forms, thus providing an excuse to disqualify

---

[2] See Appellants' Brief (ECF # 97-1) at 49-53.

potential voters." *Schwier v. Cox*, 340 F.3d 1284, 1294 (11th Cir. 2003) (emphasis added).

"Section 1971, read in its entirety, targets conduct, or state laws, that restrict *who* may vote. There are three subjects covered in subsection (a)(2) toward this aim. The first—(a)(2)(A)—makes it unlawful for political subdivisions to apply discriminatory voter qualification standards, practices, or procedures. The third—(a)(2)(C)—generally bars literacy tests as a qualification for voting, with some exceptions. The second—(a)(2)(B)—is the material error provision. Read in its entirety and in context, like the other two, it relates to determinations of *who* may vote—*i.e.*, voter qualifications." *Ball v. Chapman*, 289 A.3d 1, 37 (Pa. 2022) (Brobson. J., concurring and dissenting) (emphasis in original).[3]

The operative section (a)(2)(B) is "an anti-discrimination statute, designed to eliminate discriminatory practices of registrars through arbitrary enforcement of **registration** requirements . . ." *McKay v. Altobello*, CIVIL ACTION NO. 96-3458 SECTION: E/4, 1996 U.S. Dist. LEXIS 16651, at *1 (E.D. La. Oct. 31, 1996)

---

[3] Justice Brobson's summary is consistent with the legislative history of the bill in question. *See* H.R. Rep. No. 88-914 (1963) ("the committee has amended the 1957 and 1960 Civil Rights Acts to provide that . . . State registration officials must: (1) apply standards, practices, and procedures equally among individuals seeking to register to vote; (2) disregard minor errors or omissions if they are not material in determining whether an individual is qualified to vote; (3) administer literacy tests in writing."

(emphasis added). "There are two types of non-material omissions possible under the VRA: 1) failure to provide information, such as race or social security number, that is not directly relevant to the question of eligibility; and 2) failure to follow needlessly technical instructions, such as the color of ink to use in filling out the form." *Diaz v. Cobb*, 435 F. Supp. 2d 1206, 1213 (S.D. Fla. 2006).

Said statutory "section . . . provides specifically for protections against denials based on errors or omissions on 'records or papers' that are immaterial to the determination of an individual's qualification to vote." *Friedman v. Snipes*, 345 F. Supp. 2d 1356, 1372 (S.D. Fla. 2004). Such "error and omission" . . . [must] pertain to determining eligibility to vote." *Id*.

Accordingly, the challenged election administration language in this case is far afield from the types of provisions that have been held to be violative of the Materiality Provision, as the date-and-sign statute has a clear administrative purpose, only constitutes a limited burden to all absentee and mail-in voters, and has no application to voter registration. *Compare Diaz*, 435 F.Supp. 2d at 1213; *see also Schwier v. Cox*, 439 F.3d 1285 (11th Cir. 2006) (affirming immateriality of statutory provision that required disclosure of social security numbers for purposes of the VRA when required disclosure of such information is otherwise prohibited by federal law).

10

The Materiality Provision is therefore completely inapplicable to the present circumstances.

### B) The District Court Erred in Reviving the Vacated and Unworkable *Migliori* Framework

The District Court's analysis of the materiality question is largely a revival of this Court's vacated decision in *Migliori v. Cohen*. 36 F. 4th 153 (3d Cir. 2022), *vacated sub nom*, *Ritter v. Migliori*, 143 S. Ct. 297 (2022). In *Migliori*, following consecutive decisions of the Commonwealth Court,[4] the Supreme Court of Pennsylvania,[5] and the District Court for the Eastern District of Pennsylvania[6] upholding the "date and sign" requirement, a panel of this court found that the appellant-voters possessed both a private right of action to enforce the materiality provision, and that "the dating provisions contained in 25 Pa. Cons. Stat. §§ 3146.6(a) and 3150.16 are immaterial to a voter's qualifications and eligibility under § 10101(a)(2)(B)." *Id.* at 156.

In the subsequent months, the United States Supreme Court vacated this Court's *Migliori* decision (*Ritter v. Migliori*, 143 S. Ct. 297 (2022)) and the Supreme

---

[4] *Ritter v. Lehigh Cty. Bd. of Elections*, No. 1322 C.D. 2021, 2022 Pa. Commw. Unpub. LEXIS 1, at *10-11 (Pa. Commw. Ct. Jan. 3, 2022).

[5] *Ritter v. Lehigh Cty. Bd. of Elections*, 271 A.3d 1285, 1286 (Pa. 2022) (denying petition for allowance of appeal from Commonwealth Court decision).

[6] *Migliori v. Lehigh Cty. Bd. of Elections*, 2022 U.S. Dist. LEXIS 46352 (E.D. Pa. 2022).

Court of Pennsylvania ordered that the Commonwealth's county boards of election "refrain from counting any absentee and mail-in ballots received for the November 8, 2022 general election that are contained in undated or incorrectly dated outer envelopes." *Ball v. Chapman*, 284 A.3d 1189, 1192 (Pa. 2022).[7]

Following the Pennsylvania Supreme Court's decision in *Ball*, two separate groups of plaintiffs[8] brought the latest attempts to get a court to strike the Election Code's "date and sign" requirement, this time in the District Court for the Western District of Pennsylvania. *See Pa. State Conference of the NAACP v. Schmidt*, No. 1:22-CV-00339, 2023 U.S. Dist. LEXIS 208213 (W.D. Pa. Nov. 21, 2023).

In the present case, the District Court found the *Migliori* court's analysis to be "persuasive", and "[f]ollow[ed] *Migliori's* guidance that a requirement is material if it goes to determining age, citizenship, residency, or current imprisonment for a felony, and given the evidence and the parties' agreement that the handwritten date was not used to determine any of those, the Date Requirement is therefore immaterial." App.71; App.75.

---

[7] The six justices were "evenly divided on the issue of whether failing to count such ballots violates 52 U.S.C. §10101(a)(2)(B)." *Ball*, 284 A.3d at 1192.

[8] In addition to the instant case, a parallel case challenging the "date and sign" requirement was brought by the DCCC, DSCC, Fetterman for PA, and two individual voters. *See Eakin, et al. v. Schmidt*, No. 1:22-CV-00340 (W.D.Pa.). That case is currently pending before Judge Baxter.

However, that very cramped application of permissible voter administration rules is deeply flawed and was previously deemed by Justice Alito to be "very likely wrong." *Ritter v. Migliori*, 142 S. Ct. 1824, 1824 (2022) (Alito, J., dissenting).

The court below revived the *Migliori* court's strained view that an election administrative requirement is only permissible "if it goes to determining age, citizenship, residency, or current imprisonment for a felony. . ." App.75; *see also Migliori*, 36 F.4th at 163 (a "requirement is material [is] if it goes to determining age, citizenship, residency, or current imprisonment for a felony.") (citing 25 Pa. Cons. Stat. § 1301(a), 25 P.S. § 2811).

And indeed, the District Court and the *Migliori* court were ultimately correct that the "date and sign" statutes had no applicability "in determining whether [an] individual is qualified to vote under Pennsylvania law." *Id*. Rather than rendering the statutes in question violative of the Materiality Provision, however, that determination instead reflects the threshold problems with the court's lens of analysis.

The qualification of electors is but one of many parts of administering a free and equal election. Ballots must be cast through specifically prescribed manners,[9]

---

[9] *See Brnovich v. Democratic National Committee*, 141 S. Ct. 2321 (2021) ("Casting a vote, whether by following the directions for using a voting machine or completing a paper ballot, requires compliance with certain rules.").

and they must be cast on time,[10] and in the proper locations.[11]  Moreover, all of these common-sense administrative rules are well outside the scope of a board of elections determining a prospective elector's "age, citizenship, residency, or current imprisonment for a felony." *Id*.

Indeed, if the court below is correct, "no election law that imposes informational requirements on a record or paper unrelated to determining voter qualification can survive a Section 1971 challenge." *Ball*, 289 A.3d at 39 (Brobson, J., concurring and dissenting); *see also Vote.org v. Callanen*, 39 F.4th 297, 305 n.6 (5th Cir. 2022) ("It cannot be that any requirement that may prohibit an individual from voting if the individual fails to comply denies the right of that individual to vote under § 1971. Otherwise, virtually every rule governing how citizens vote would is suspect.").

But our constitutional system does contain election administration rules. "Even the most permissive voting rules must contain some requirements, and the failure to follow those rules constitutes the forfeiture of the right to vote, not the denial of that right." *Ritter*, 142 S. Ct. at 1825.

---

[10] Indeed, the Third Circuit's *Migliori* decision notes this fact, observing that ballot "[d]elivery is timely if received by the board of elections by 8:00 p.m. on Election Day." *Migliori*, 36 F.4th at 153 (citing 25 Pa. Stat. §§ 3146.6(a), 3150.16(a).

[11] *See, e.g.*, Pa. Const. Art. VII, § 1.

The District Court's analysis, however, ignores the obvious necessity of "rules setting the date of an election, the location of the voter's assigned polling place, the address to which a mail-in ballot must be sent." *Id*. While none of these rules "ha[ve] anything to do with the requirements that must be met in order to establish eligibility to vote . . . it would be absurd to judge the validity of voting rules based on whether they are material to eligibility." *Id*.

To follow this interpretation—that Congress intended to unconstitutionally usurp the role of the General Assembly in legislating for the time, place, and manner of the Commonwealth's elections and to eliminate all state election rules unrelated to the qualification of electors—"defies rationality" and "renders the statute nonsensical. . . ." *United States v. Moreno*, 727 F.3d 255, 259 (3d. Cir. 2013) (citations omitted).

Moreover, it further strains credulity that should such an expansive construction have been understood, that courts would have ignored this putatively boundless Materiality Provision during the decades that followed its enaction, and instead devised the carefully considered *Anderson-Burdick* doctrine, balancing governmental interests and burdens of voting restrictions. *See Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992). If this is the case, courts erred for decades in applying such a test when they could have

just applied the Materiality Provision to see if a restriction concerned voter qualification; if not, all such restrictions could have been struck.[12]

The unfortunate, natural conclusion of this *Migliori* framework is an anarchistic system where any elector, once qualified, could pick and choose any (or none) of the democratically enacted election regulations to follow—casting a ballot whenever, wherever, and in whatever form the elector so chose. This is plainly an absurd result.

And given that "nothing is better settled that statutes should receive a sensible construction, such as will effectuate the legislative intention, and . . . so as to avoid an unjust or an absurd conclusion," the District Court's adoption of this absurd and obviously overbroad interpretation should be expressly reversed. *In re Chapman*, 166 U.S. 661, 667 (1897).

### C) The District Court's Opinion Ignores Statutory Construction Issues Raised by Other Courts

The most helpful framework for analyzing a putative violation of the Materiality Provision was offered by Justice Alito, who noted that the Materiality

---

[12] The only court to examine the "date and sign" requirement under the traditional *Anderson-Burdick* framework concluded that the handwritten date requirement did not pose an undue burden on plaintiff's right to vote under the First and the Fourteenth Amendments, as the government interests outweighed the minor condition imposed by the handwritten date requirement. *See Migliori v. Lehigh Cty. Bd. of Elections*, No. 5:22-cv-00397, 2022 U.S. Dist. LEXIS 46352 (E.D. Pa. Mar. 16, 2022).

Provision:

> has five elements: (1) the proscribed conduct must be engaged in by a person who is 'acting under color of law'; (2) it must have the effect of 'deny[ing]' an individual 'the right to vote'; (3) this denial must be attributable to 'an error or omission on [a] record or paper'; (4) the 'record or paper' must be "related to [an] application, registration, or other act requisite to voting"; and (5) the error or omission must not be 'material in determining whether such individual is qualified under State law to vote in such election.'

*Ritter v. Migliori*, 142 S. Ct. 1824, 1825 (2022) (Alito, J., dissenting) (quoting 52 U.S.C. § 10101(a)(2)(B)). Only through the presence of all five elements would a statute violate 52 U.S.C. § 10101(a)(2)(B).

Here, the District Court considered these factors in its alternative analysis and correctly concluded that there is no dispute about the first or the third elements. *See* App.76. The problem lies with the court's analysis of the other three factors, none of which is met here. As such, the District Court's decision should be reversed.

### 1. *The "date and sign" requirement does not deny the right to vote*

To satisfy the second element of the test, a statute "must have the effect of 'deny[ing]' an individual 'the right to vote'" *Ritter*, at 142 S. Ct. at 1825. "When a mail-in ballot is not counted because it was not filled out correctly, the voter is not denied 'the right to vote.' Rather, that individual's vote is not counted because he or she did not follow the rules for casting a ballot." *Id*.

The District Court focused on the "expansive" statutory definition of the word "vote" in the Civil Rights Act. App.77. However, that has no bearing on whether the statute in question affects the *right* to do so.

In our electoral system, ballots, both in person and mail-in, can be voided for a litany of reasons beyond the voter's ineligibility to vote. "A registered voter who does not follow the rules may be unable to cast a vote for any number of reasons. A voter may go to the polling place on the wrong day or after the polls have closed. A voter may go to the wrong polling place and may not have time to reach the right place before it is too late. A voter who casts a mail-in ballot may send it to the wrong address. A State's refusal to count the votes of these voters does not constitute a denial of 'the right to vote.'" *Ritter*, 142 S. Ct. at 1825.

Here, it is through the electors' "own negligence only" that the electors have failed to sign and date the ballot return envelope "and thereby fail[ed] to comply with . . . [the Commonwealth's] laws for submitting a completed ballot. Most forms of voter negligence have no remedy. For example, a voter who accidentally votes for a candidate other than the voter's preferred candidate or who forgets to show up at the polls on election day cannot correct those mistakes." *Democratic Party v. Hobbs*, 18 F.4th 1179, 1188 (9th Cir. 2021); *see also Democratic Nat'l Comm. v. Wis. State Legis.*, 141 S. Ct. 28, 33 (2020) (*citing Burdick*, 504 U.S. at 438) ("the right to vote is not substantially burdened by a requirement that voters 'act in a timely

fashion if they wish to express their views in the voting booth.'").

Here, the county boards' "refusal to count the votes of these voters . . . [who fail to follow the Commonwealth's Election administration rules] does not constitute a denial of 'the right to vote.'" *Ritter*, 142 S. Ct. at 1825. Accordingly, the statutes do not violate the Materiality Provision.

2. <u><em>The ballot return envelope is not related to an application, registration, or other act requisite to voting</em></u>

To satisfy the fourth prong of the materiality analysis, the "record or paper" must be "related to [an] application, registration, or other act requisite to voting." 52 U.S.C. § 10101(a)(2)(B). The court below quickly dispatched with its consideration of this element on the basis that "to cast a mail-in ballot, the voter must write a date on the envelope near the pre-printed verification. This is necessary to complete the act of voting and, thus, implicates the statute." App.76 at fn. 38 (citing 52 U.S.C. § 10101(a)(2)(B)). This analysis, however, errantly breezes over meaning of the key phrase: "other act requisite to voting." *Id*.

A mail-in ballot is a record or paper, and "does not appear to be related in any direct sense to any 'application' or 'registration.'" *Ritter*, 142 S. Ct. at 1826 n.2. Therefore, the operative "question is whether it is 'related to' some 'other act requisite to voting.' But the casting of a ballot constitutes the act of voting. Indeed, the statute specifies that 'the word 'vote' includes all action necessary to make a vote effective including . . . casting a ballot, and having such ballot counted.' [52 U.S.C.]

19

§10101(e). It is therefore awkward to describe the act of voting as 'requisite to the act of voting.'" *Id*.

A more natural interpretation is the one arrived at by the Supreme Court of Pennsylvania's Justice Brobson in the *Ball* case. There, Justice Brobson employed the "*ejusdem generis* canon of statutory construction. Under that canon, courts are instructed 'to interpret a general or collective term at the end of a list of specific items in light of any common attributes shared by the specific items.'" *Ball*, 289 A.3d at 38 n.11 (citing *Southwest Airlines Co. v. Saxon*, 142 S. Ct. 1783, 1789 (2022)).

"As applied here, the statutory catch-all phrase 'other act requisite to voting' is limited by the prior list of 'acts,' which consist of applying or registering to vote. Limiting the catch-all phrase in this manner is entirely consistent with the remaining text of the material error provision and further supports a conclusion that the material error provision only has in its view those records and papers used 'in determining' whether an individual is qualified to vote under State law." *Id*.

Therefore, "it is not enough that the error or omission be immaterial *to* whether the individual is qualified to vote; the paper or record must also be used 'in determining' the voter's qualifications." *Id*. at 38 (*quoting* 52 U.S.C. § 10101(a)(2)(B)). Here, given that the "date and sign" requirement concerns election administration rather than "determining the voter's qualifications", the

20

statute in question is outside the scope of the Materiality Provision. *Id*. This makes

significantly more sense than the District Court's strained interpretation that "the act

of voting . . . [is] 'requisite to the act of voting.'" *Ritter*, 142 S. Ct. at 1826 n.2. Using

that more natural interpretation, the statutes do not violate the Materiality Provision.

3. *The statutes in question have no bearing on whether an individual is qualified under state law to vote in an election*

To fall under the purview of the Materiality Provision, the "error or omission"

must not be "material in determining whether such individual is qualified under State

law to vote in such election." 52 U.S.C. § 10101(a)(2)(B).

"Under this provision, if a voter makes an error in supplying this information

or fails to do so, officials are prohibited from using that error or omission 'in

determining whether such individual is qualified under State law to vote in such

election.' Thus, it is not enough that the error or omission be immaterial *to* whether

the individual is qualified to vote; the paper or record must also be used 'in

determining' the voter's qualifications." *Ball*, 289 A.3d at 38 (*quoting* 52 U.S.C. §

10101(a)(2)(B) (emphasis in original). As such, 52 U.S.C. § 10101(a)(2)(B) "applies

only to errors or omissions that are not material to the question whether a person is

qualified to vote." *Ritter*, 142 S. Ct. at 1826.

In analyzing the statutes, a court must first determine whether the "provisions

are "used 'in determining whether [an] individual is qualified under State law to

vote.' If they are, then it would be appropriate to test the legality of enforcement of

these provisions against the material error provision in Section 1971." *Ball*, 289 A.3d at 38 (*quoting* 52 U.S.C. § 10101(a)(2)(B)).

Justice Brobson presciently keyed in on the importance of asking that threshold question, as failing to do so would "risk bringing within the sweep of Section 1971 state election laws that impose requirements 'on any record or paper relating to any application, registration, or other act requisite to voting,' even when the state election law imposes the requirement for valid purposes *other than* determining voter qualification." *Id*. (emphasis in original). Given that countless election rules relate to subjects other than voter qualification, failing to ask that threshold question will result in all voting rules unrelated to determining voter qualification "run[ning] afoul of Section 1971 and be[ing] unenforceable because they indisputably do not at all relate to voter qualification and thus are not 'material in determining' voter qualification. Indeed, they were not intended for that purpose." *Id*.

Here, as a part of the Election Code's safeguards against fraud, the "date and sign" requirement of "[25 P.S. § 3146.6] and [25 P.S. § 3150.16] of the Code set forth requirements on how a qualified elector may cast a valid absentee or mail-in ballot and not to determine whether the elector, in fact and law, *is qualified* to do so, they do not fall within the scope of the laws that Congress targets in Section 1971." *Id*. at 39; *see also In re Canvass of Absentee and Mail-in Ballots of November 3,*

*2020 General Election*, 663 Pa. 283, 241 A.3d 1058 (Pa. 2020) (these sections "set forth . . . requirements for how a qualified elector may cast a valid absentee or mail-in ballot," rather than elector qualification.).

As "there is no reason why the requirements that must be met in order to register (and thus be 'qualified') to vote should be the same as the requirements that must be met in order to cast a ballot that will be counted. . . . it would be absurd to judge the validity of voting rules based on whether they are material to eligibility." *Ritter*, 142 S.Ct. at 1825.

Here, however, that is exactly what the District Court did. Despite acknowledging that "the requirement of dating the outer return envelope [does not] have anything to do with determining a voter's qualifications to vote,"[13] the District Court proceeded to "to test the legality of enforcement of these provisions against the material error provision in Section 1971." *Ball*, 289 A.3d at 38.[14] This is reversible error.

---

[13] App.81.

[14] This analysis was itself faulty as the statutes in question are important parts of the Election Code. They were enacted by the elected General Assembly based on the legislative judgement that "the signature and date requirement is an important guard against fraud. Where an elector fully complies with the instructions on the outer envelope, the electoral authorities conducting the election can be assured of the date on which the ballot was executed. Where, however, the outer envelope remains undated, the possibility for fraud is heightened, as individuals who come in contact with that outer envelope may, post hoc, fill in a date that is not representative of the

As applied by the District Court, the Materiality Provision could be used to strike a litany of important election administration rules completely unrelated to the qualification of electors, such as the present statutes which are an "important guard against fraud." *Migliori*, 2022 U.S. Dist. LEXIS 46352, at *38-39. Both Justice Alito and Justice Brobson noted scenarios where other election administration rules, such as the requirement to sign absentee and mail-in ballots or the requirement for such ballots to be cast in secret—both fraud prevention measures previously upheld by the Pennsylvania Supreme Court—could be suspect under this overbroad application of 52 U.S.C. § 10101(a)(2)(B).

These are not wild hypotheticals. Last year, immediately following this Court's *Migliori* decision, a group of voters sought to invalidate the deadline for receipt of mail-in ballots and the requirement that mail-in ballots be cast in secret on the basis that those provisions are "immaterial." *See Dondiego v. Lehigh Cty. Bd. of Elections*, No. 5:22-cv-2111-JLS (E.D. Pa.). And while that matter was dismissed with prejudice due to the consent of the parties, that case is only a taste of what is to come should the District Court's decision be upheld.

In conclusion, the Pennsylvania Supreme Court has determined that "the Election Code's command is unambiguous and mandatory, and . . . failure to comply

---

date on which the ballot was executed." *Migliori*, 2022 U.S. Dist. LEXIS 46352, at *38.

with the date requirement would render a ballot invalid in any election after 2020."
*Ball*, 289 A.3d at 21-22 (Wecht, J.). Moreover, "*none* of the provisions of Sections
[25 P.S. § 3146.6] and [25 P.S. § 3150.16] of the Code have any bearing on
determining voter qualification at all." *Ball*, 289 A.3d at 39 (Brobson, J., concurring
and dissenting) (emphasis in original). Therefore, given that "§10101(a)(2)(B) . . .
applies only to errors or omissions that are not material to the question **whether a
person is qualified to vote**," the General Assembly's legislative judgment should
not be disturbed and the District Court's decision should be reversed. *Ritter*, 142
S.Ct. at 1826 (emphasis added).

## III.    The Decision of the Court Below Improperly Truncated the Power of the General Assembly to Legislate for Pennsylvania's Elections

The Elections Clause of Article I, § IV of the U.S. Constitution delegates to
state legislatures in the first instance, and Congress in the second, the authority to
enact regulations for federal elections. Pursuant to these constitutional powers, the
General Assembly has adopted a comprehensive election framework to govern the
Commonwealth's elections.

While the Materiality Provision does have a limited application to
discriminatory voter registration practices—something that is not alleged to have
occurred here—the overbroad application here is a thinly disguised attempt to force
federal courts to usurp the constitutional role of the General Assembly in legislating
for Pennsylvania's elections.

It is clear there is a wide divergence of opinions on the importance of the provision in question. In one camp, a number of courts have observed a clear and salient purpose in the statutes in question. *See* decisions discussed *supra*. Contrastingly, Plaintiff-appellees and other courts, such as the court below, reached a different conclusion.

But it is not the role of the courts to act as legislators and to generally opine as to whether the statutes "serve any strong purpose and that a voter's failure to date a ballot should not cause the ballot to be disqualified." *Ritter*, 142 S.Ct. at 1826. "Courts do not substitute their social and economic beliefs for the judgment of legislative bodies, [which] are elected to pass laws." *Ferguson v. Skrupa*, 372 U.S. 726, 730 (1963).

Here, the Materiality Provision "applies only to errors or omissions that are not material to the question whether a person is qualified to vote. It leaves it to the States to decide which voting rules should be mandatory." *Ritter*, 142 S.Ct. at 1826. Rather than acknowledging that limitation, the District Court expanded the Materiality Provision's scope to coopt the administration of Pennsylvania's elections from its elected officials. This is a very slippery slope that this Court should be keen to avoid.

The plain language of the Materiality Provision limits itself to voter registration matters. "When statutory language is as clear as it is here, it is simply

not [the] function [of] a reviewing court to act as a super-legislature and second-guess the policy choices that Congress made." *Clinton Cty. Comm'rs v. United States EPA*, 116 F.3d 1018, 1025 (3d Cir. 1997) (internal quotations omitted).

As such the legislative judgment of the General Assembly in executing a comprehensive election code should be upheld by reversing the decision of the District Court.

## CONCLUSION

*Amici* respectfully request that this Court uphold the General Assembly's constitutional power and responsibility as the Commonwealth's "democratically-elected representatives to weigh the pros and cons of various balloting systems." *Weber*, 347 F.3d at 1106. Accordingly, *Amici* respectfully request that this Court grant the Appellants' appeal and reverse the decision of the District Court.

Respectfully submitted,

Dated: December 29, 2023

/s/ *Zachary M. Wallen*
Zachary M. Wallen
Pennsylvania Bar No. 309176
CHALMERS, ADAMS, BACKER &
KAUFMAN LLC
301 South Hills Village Drive
Suite LL200-420
Pittsburgh, PA 15241
(412) 200-0842
(412) 235-5001 (*facsimile*)
zwallen@chalmersadams.com

*Counsel for Amici Curiae*
*Republican Leader of the Pennsylvania House*
*of Representatives, Bryan Cutler, President*
*Pro Tempore of the Pennsylvania Senate, Kim*
*Ward, and Majority Leader of the*
*Pennsylvania Senate, Joe Pittman*

# COMBINED CERTIFICATIONS

I, Zachary M. Wallen, hereby certify that:

1. I am a member of the bar of this Court;

2. The text of the electronic version of this brief is identical to the text of the paper copies;

3. This file was scanned with the most recent version of Windows Defender (1.403.1211.0), and no virus was detected; and

4. This brief contains 6,457 words and therefore complies with Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7).

In making this certificate, I have relied on the word count of the word-processing system used to prepare the brief.

Dated: December 29, 2023

/s/ Zachary M. Wallen

*Counsel for Amici Curiae Republican Leader of the Pennsylvania House of Representatives, Bryan Cutler, President Pro Tempore of the Pennsylvania Senate, Kim Ward, and Majority Leader of the Pennsylvania Senate, Joe Pittman*

## CERTIFICATE OF SERVICE

I filed this motion and accompanying documents with the Court via ECF, which will electronically notify all counsel of record.

Dated: December 29, 2023

*/s/ Zachary M. Wallen*
*Counsel for Amici Curiae*
*Republican Leader of the Pennsylvania House of Representatives, Bryan Cutler, President Pro Tempore of the Pennsylvania Senate, Kim Ward, and Majority Leader of the Pennsylvania Senate, Joe Pittman*