No. 23-3166

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

◆

PENNSYLVANIA CONFERENCE OF THE NAACP, *et al.*,
*Appellees*,

v.

SECRETARY COMMONWEALTH OF PENNSYLVANIA, *et al.*

RICHARD MARINO; REPUBLICAN NATIONAL COMMITTEE;
NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE;
THE REPUBLICAN PARTY OF PENNSYLVANIA,
*Appellants*.

◆

On Appeal from the United States District Court for the
Western District of Pennsylvania, Case No. 1:22-cv-00339

## BRIEF OF ALABAMA AND 16 OTHER STATES AS
## *AMICI CURIAE* SUPPORTING APPELLANTS AND REVERSAL

Steve Marshall
  *Attorney General*
Edmund G. LaCour Jr.
  *Solicitor General*
Soren Geiger
  *Assistant Solicitor General*
OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Ave.
Montgomery, AL 36130
(334) 242-7300
Edmund.LaCour@AlabamaAG.gov

*Counsel for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

The *Amici* States are governmental entities that are not required to file a corporate disclosure statement. Fed. R. App. P. 26.1, 29(a)(4)(A).

Respectfully submitted this 3rd day of January, 2024.

s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr.
*Counsel for Amici Curiae*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF CONTENTS ............................................................................... iii

TABLE OF AUTHORITIES .......................................................................... iii

INTEREST OF *AMICI CURIAE* ..................................................................... 1

SUMMARY OF ARGUMENT ........................................................................ 2

ARGUMENT ............................................................................................... 4

    I.     The Materiality Provision Is Not Privately Enforceable
           Because It Confers No Substantive Rights ......................................... 4

    II.    Congress Did Not Pass the Materiality Provision To
           Target Dozens, If Not Hundreds, Of Important Election
           Integrity Laws .................................................................................. 20

CONCLUSION ........................................................................................... 26

CERTIFICATE OF COMPLIANCE ................................................................. 29

CERTIFICATE OF SERVICE ........................................................................ 30

# TABLE OF AUTHORITIES

## Cases

*31 Foster Child. v. Bush*,
329 F.3d 1255 (11th Cir. 2003) ............................................................5

*Ala. Ass'n of Realtors v. HHS*,
141 S. Ct. 2485 (2021).....................................................................26

*Alexander v. Sandoval*,
532 U.S. 275 (2001)................................................................. 4, 5, 11

*Anderson v. Celebrezze*,
460 U.S. 780 (1983).......................................................................24

*Arkansas State Conf. NAACP v. Arkansas Bd. of Apportionment*,
86 F.4th 1204 (8th Cir. 2023) ..............................................................11

*Armstrong v. Exceptional Child Ctr.*,
575 U.S. 320 (2015)..........................................................................3

*Blessing v. Freestone*,
520 U.S. 329 (1997)........................................................................14

*Bond v. United States*,
572 U.S. 844 (2014)........................................................................22

*Boyd v. State of Nebraska*,
143 U.S. 135 (1892)......................................................................1, 22

*Brnovich v. Democratic Nat'l Comm.*,
141 S. Ct. 2321 (2021)............................................................. 3, 24, 25

*Carey v. Throwe*,
957 F.3d 468 (4th Cir. 2020) .............................................................20

*Chapman v. Houston Welfare Rights Org.*,
441 U.S. 600 (1979)........................................................................20

*City of Boerne v. Flores,*
 521 U.S. 507 (1997) .................................................................. 6, 9, 24

*City of Rancho Palos Verdes v. Abrams,*
 544 U.S. 113 (2005) ..........................................................................18

*Civil Rights Cases,*
 109 U.S. 3 (1883) ................................................................................7

*Clingman v. Beaver,*
 544 U.S. 581 (2005) ..........................................................................23

*Cok v. Cosentino,*
 876 F.2d 1 (1st Cir. 1989) ...............................................................10

*Crawford v. Marion Cnty. Election Bd.,*
 553 U.S. 181 (2008) ..........................................................................24

*Davis v. Monroe Cnty. Bd. of Educ.,*
 526 U.S. 629 (1999) ..........................................................................12

*Dellmuth v. Muth,*
 491 U.S. 223 (1989) ..........................................................................17

*DNC v. Wis. State Legislature,*
 141 S. Ct. 28 (2020) ............................................................. 23, 24, 26

*Gebser v. Lago Vista Indep. Sch. Dist.,*
 524 U.S. 274 (1998) ..........................................................................12

*Gonzaga Univ. v. Doe,*
 536 U.S. 273 (2002) ............................................. 2, 4, 5, 12, 14-16, 20

*Gregory v. Ashcroft,*
 501 U.S. 452 (1991) ..................................................................... 20, 22

*Gumber v. Fagundes,*
 2021 WL 4311904 (N.D. Cal. July 3, 2021) ...................................10

*Johnson v. Hous. Auth. of Jefferson Par.*,
   442 F.3d 356 (5th Cir. 2006) ..................................................................3

*Kimel v. Fla. Bd. of Regents*,
   528 U.S. 62 (2000)......................................................................8, 12

*Lane v. Wilson*,
   307 U.S. 268 (1939)..................................................................7

*Maine v. Thiboutot*,
   448 U.S. 1 (1980)..................................................................7

*Malecki v. Christopher*,
   No. 4:07-CV-1829, 2008 WL 11497819......................................10

*McKay v. Thompson*,
   226 F.3d 752 (6th Cir. 2000) ..............................................19

*Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*,
   453 U.S. 1 (1981)..................................................................18

*Migliori v. Cohen*,
   36 F.4th 153 (3d Cir. 2022) ....................................... 21, 25

*Milligan v. Jacob*,
   No. 2:18-CV-00496, 2019 WL 3470801 (W.D. Pa. July 8, 2019)....................10

*N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*,
   458 U.S. 50 (1982)..................................................................6

*Ne. Ohio Coal. for the Homeless v. Husted*,
   837 F.3d 612 (6th Cir. 2016) ..............................................19

*Nev. Dep't of Hum. Res. v. Hibbs*,
   538 U.S. 721 (2003)..................................................................9

*Pennhurst State Sch. and Hosp. v. Halderman*,
   451 U.S. 1 (1981)..................................................................11

*Ritter v. Migliori*,
142 S. Ct. 1824 (2022)..............................................................2, 21, 25

*Ritter v. Migliori*,
143 S. Ct. 297 (2022)..................................................................21

*Schwier v. Cox*,
340 F.3d 1284 (11th Cir. 2003) ...............................................13, 15

*Shelby County v. Holder*,
570 U.S. 529 (2013)...................................................................20

*South Carolina v. Katzenbach*,
383 U.S. 301 (1966)............................................................6, 7, 8, 19

*Storer v. Brown*,
415 U.S. 724 (1974)..................................................................1, 24

*Sugarman v. Dougall*,
413 U.S. 634 (1973)..................................................................1, 22

*Suter v. Artist M.*,
503 U.S. 347 (1992)..................................................................11

*Three Rivers Ctr. v. Hous. Auth. of City of Pittsburgh*,
382 F.3d 412 (3d Cir. 2004) ..................................................4, 5, 9

*Timmons v. Twin Cities Area New Party*,
520 U.S. 351 (1997)..................................................................22

*United States v. Cruikshank*,
92 U.S. 542 (1875)....................................................................7

*United States v. Mississippi*,
380 U.S. 128 (1965)...................................................................6

*United States v. Reese*,
92 U.S. 214 (1875)..................................................................7, 13

*United States v. Texas*,
    No. 5:21-cv-1085 (W.D. Tex. 2021) ...................................................16

*Vote.Org v. Callanen*,
    2023 WL 8664636 (5th Cir. 2023) ...................................... 13, 14, 15

*West Virginia v. EPA*,
    142 S. Ct. 2587 (2022) .......................................................................22

*Wilder v. Virginia Hospital Association*,
    496 U.S. 498 (1990) ...........................................................................16

*Wisniewski v. Rodale, Inc.*,
    510 F.3d 294 (3d Cir. 2007) ................................................................4

*Wright v. Roanoke Redevelopment and Housing Authority*,
    479 U.S. 418 (1987) ...........................................................................15

## Statutes

16 Stat. 140 ............................................................................................8

18 U.S.C. §241 ....................................................................................8, 10

18 U.S.C. §242 .......................................................................................10

20 U.S.C. §1232g ............................................................................. 15, 16

20 U.S.C. §1681 ......................................................................................12

33 U.S.C. §1365 .......................................................................................4

34 U.S.C. §12601 .....................................................................................9

42 U.S.C.§1396a .....................................................................................15

42 U.S.C. §1437 ......................................................................................15

42 U.S.C. §1983 .............................................................................. *passim*

42 U.S.C. §2000a-3 .................................................................19

42 U.S.C. §2000d ...................................................................12

52 U.S.C. §10101 ............................................................. *passim*

52 U.S.C. §10301 .............................................................6, 11

71 Stat. 637 .....................................................................8, 19

Ala. Code §17-11-2 ...............................................................25

Ala. Code §17-11-9 ........................................................ 23, 25

Ala. Code §17-11-18 ...................................................... 23, 25

Alaska Stat. §15.20.081 ........................................................23

Ariz. Stat. §16-548 ...............................................................23

Ark. Code §7-5-411 ..............................................................23

Ark. Code §7-5-412 ..............................................................23

Cal. Elec. Code §3011 ..........................................................23

Cal. Elec. Code §3020 ..........................................................23

Colo. Stat. §1-7.5-107 ..........................................................23

Conn. Gen. Stat. §9-140 .......................................................23

Conn. Gen. Stat. §9-140b .....................................................23

Del. Code tit. 15 §5507 ........................................................23

Del. Code tit. 15 §5508 ........................................................23

Fla. Stat. §101.65 ............................................................... 23

Fla. Stat. §101.67 ...................................................................................23

Ga. Code §21-2-385 ...............................................................................23

Ga. Code §21-2-386 ...............................................................................23

Haw. Stat. §11-104 .................................................................................23

Idaho Code §34-1005 .............................................................................23

10 Ill. Comp. Stat. 5/19-5 ......................................................................23

10 Ill. Comp. Stat. 5/19-6 ......................................................................23

10 Ill. Comp. Stat. 5/19-8 ......................................................................23

Ind. Code §3-11-10-1 .............................................................................23

Iowa Code §53.16 ..................................................................................23

Iowa Code §53.17 ..................................................................................23

Kan. Stat. §25-1124 ...............................................................................23

Kan. Stat. §25-1132 ...............................................................................23

Ky. Stat. §117.076 .................................................................................23

Ky. Stat. §117.086 .................................................................................23

La. Stat. §18:1310 ..................................................................................23

La. Stat. §18:1311 ..................................................................................23

Me. Stat. tit. 21-A, §754-A ....................................................................23

Me. Stat. tit. 21-A, §755 ........................................................................23

Mass. Gen. Laws ch. 54, §92 .................................................................23

Mass. Gen. Laws ch. 54, §93 ..................................................................23

Mich. Comp. Laws §168.764a ................................................................23

Minn. Stat. §203B.07 .............................................................................23

Minn. Stat. §203B.08 .............................................................................23

Miss. Code §23-15-637 ..........................................................................23

Mo. Ann. §115.290 ................................................................................23

Mo. Ann. §115.293 ................................................................................23

Mont. Code §13-13-201 .........................................................................23

Mont. Code §13-13-232 .........................................................................23

Neb. Stat. §32-947 .................................................................................23

Neb. Stat. §32-950 .................................................................................23

Neb. Stat. §32-947 .................................................................................23

N.H. Stat. §657:7 ...................................................................................23

N.H. Stat. §657:22 .................................................................................23

N.J. Stat. §19:63-12 ...............................................................................23

N.J. Stat. §19:63-13 ...............................................................................23

N.J. Stat. §19:63-16 ...............................................................................23

N.J. Stat. §19:63-22 ...............................................................................23

N.M. Stat. §1-6-9 ...................................................................................23

N.M. Stat. §1-6-10 .................................................................................23

N.Y. Elec. Law §8-410 (McKinney) ........................................................23

N.Y. Elec. Law §8-412 (McKinney) ........................................................23

N.C. Gen. Stat. §163-231 ........................................................23

N.D. Cent. Code §16.1-07-08 ........................................................23

N.D. Cent. Code §16.1-07-09 ........................................................23

Ohio Code §3509.05 ........................................................23

Okla. Stat. tit. 26, §14-104 ........................................................23

Okla. Stat. tit. 26, §14-108 ........................................................23

Or. Stat. §253.070 ........................................................23

25 Pa. Stat. §3146.4 ........................................................23

25 Pa. Stat. §3146.8 ........................................................23

17 R.I. Gen. Laws §17-20-8 ........................................................23

S.C. Code §7-15-375 ........................................................23

S.C. Code §7-15-380 ........................................................23

S.C. Code §7-15-420 ........................................................23

S.D. Codified Laws §12-19-7 ........................................................23

S.D. Codified Laws §12-19-12 ........................................................23

Tenn. Code §2-6-304 ........................................................23

Tenn. Code §2-6-309 ........................................................23

Tex. Elec. Code §86.005 ........................................................23

Tex. Elec. Code §86.007 ........................................................................23

Utah Code §20A-3a-204 ........................................................................23

Vt. Stat. tit. 17, §2542 ...........................................................................23

Vt. Stat. tit. 17, §2543 ...........................................................................23

Va. Code §24.2-707 ...............................................................................23

Va. Code §24.2-709 ...............................................................................23

Wash. Code §29A.40.091 ......................................................................23

W. Va. Code §3-3-5 ...............................................................................23

Wis. Stat. §6.87 .....................................................................................23

Wyo. Stat. §22-9-111 ............................................................................23

Wyo. Stat. §22-9-112 ............................................................................23

Wyo. Stat. §22-9-119 ............................................................................23

## Constitutional Provisions

U.S. Const. amend. XIV .......................................................... 5, 6, 7, 12

U.S. Const. amend. XV..............................................2, 5-8, 11-14, 19

## Other Authorities

Alabama Secretary of State, *Voter Registration General Information*,
    https://www.sos.alabama.gov/alabama-votes/voter-registration/general-info
    (last visited Dec. 22, 2023) ...................................................................25

Federalist No. 59 ...................................................................................23

Md. Code, Elec. Law §9-309,
 https://elections.maryland.gov/voting/absentee.html
 (last visited Dec. 21, 2023) ...................................................................23

Tracy A. Thomas, *Congress' Section 5 Power and Remedial Rights*,
 34 U.C. DAVIS L. REV. 673 (2001) ......................................................6

## INTEREST OF *AMICI CURIAE*

The States of Alabama, Arkansas, Georgia, Idaho, Indiana, Iowa, Kansas, Louisiana, Missouri, Montana, Nebraska, North Dakota, Ohio, South Carolina, Texas, Utah, and West Virginia respectfully submit this brief as *amici curiae* in support of Intervenor-Defendants the Republican National Committee, the National Republican Congressional Committee, and the Republican Party of Pennsylvania (collectively, "the RNC"). "Each state has the power to prescribe the qualifications of its officers, and the manner in which they shall be chosen …." *Boyd v. State of Nebraska*, 143 U.S. 135, 161 (1892). States have this power by virtue of their "obligation … to preserve the basic conception of a political community." *Sugarman v. Dougall*, 413 U.S. 634, 647 (1973). And "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." *Storer v. Brown*, 415 U.S. 724, 730 (1974). Thus, the *Amici* States have an interest in ensuring that laws are not misconstrued to upset the balance between federal and state governments, particularly in the area of regulating state elections.

1

## SUMMARY OF ARGUMENT

The text of the Materiality Provision of the Civil Rights Act of 1964 makes clear that it was enacted to give the U.S. Attorney General the power to target discriminatory barriers to voter registration. But in the district court's view, the statute empowers millions of private parties across the country to work with federal courts to rewrite any number of state voting laws, many of which—like the challenged provision here—are both critical to fair elections and have nothing to do with voter registration. The reasoning undergirding this result is "silly," *Ritter v. Migliori*, 142 S. Ct. 1824, 1825 (2022) (Alito, J., dissental), but the resulting damage to the people's ability to manage elections and have confidence in their outcomes is serious.

This brief addresses two significant errors in the district court's order. First, the district court held that individual plaintiffs may sue state officials for alleged violations of the Materiality Provision under §1983. But the Materiality Provision was enacted to *enforce* preexisting rights, not *create* new ones. That legislation, passed pursuant to Congress's remedial authority to enforce the Fifteenth Amendment, does not unambiguously confer substantive rights upon private parties. Rather, it creates new remedies enforceable against state officials solely by the Attorney General. The district court was too quick to identify "new federal rights" privately enforceable under §1983. With its decision in *Gonzaga University v. Doe*, the Supreme Court "plainly repudiate[d] the ready implication of a § 1983 action" that

earlier cases (and the decision below) "exemplified." *Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320, 330 n.\* (2015). Ultimately, "very few statutes are held to confer rights enforceable under § 1983." *Johnson v. Hous. Auth. of Jefferson Par.*, 442 F.3d 356, 360 (5th Cir. 2006). The federalism principles implicated by permitting individual plaintiffs to disrupt elections with challenges to neutral, standard ballot protection measures further counsel against identifying new federal rights in Title I of the Civil Rights Act of 1964 enforceable under §1983.

Second, the district court erred in adopting a sprawling scope for the Materiality Provision. The approach runs contrary to the text of the statute and principles of federalism. A reading of a federal law that would interfere with the States' sovereign powers should be avoided absent a "clear statement" from Congress to the contrary. No such clarity is provided in the text of the Materiality Provision.

Civil rights legislation like Title I "exemplifies our county's commitment to democracy, but there is nothing democratic about the … attempt to bring about a wholesale transfer of the authority to set voting rules from the States to the federal courts." *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2343 (2021).

This court should reverse the district court and render judgment for the RNC.

## ARGUMENT

I.  **The Materiality Provision Is Not Privately Enforceable Because It Confers No Substantive Rights.**

Title I of the Civil Rights Act of 1964 ("the Act") creates new remedies enforceable by the Attorney General, not new substantive rights enforceable by private plaintiffs. Unless a federal statute creates "substantive private rights," *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001), it does not secure "rights enforceable under § 1983" or "under an implied private right of action." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002). Substantive private rights are often referred to as "personal rights," in that they "inhere in the individual; they are 'individually focused'; [and] they create 'individual entitlements.'" *Three Rivers Ctr. v. Hous. Auth. of City of Pittsburgh*, 382 F.3d 412, 419 (3d Cir. 2004).[1] Sometimes, plaintiffs may "enforce more than personal rights," but only "when Congress expressly so prescribes." *Id.* at 422; *see, e.g.*, 33 U.S.C. §§1365(a), (g) (Clean Water Act). The district court acknowledged that Congress has not expressly authorized private parties to enforce the Materiality Provision. App.64.

With no express authorization, "private parties may only enforce personal rights through implied rights of action or through Section 1983." *Three Rivers Ctr.*,

---

[1] "To avoid confusion between the terms 'private right' and 'private right of action,'" courts in the Third Circuit have referred "to substantive rights granted in statutes as 'personal rights' rather than 'private rights.'" *Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 300 n.15 (3d Cir. 2007) (citing *Three Rivers Ctr.*, 382 F.3d at 419 n.9).

382 F.3d at 422. Under the former, a plaintiff "must show that the statute manifests an intent 'to create not just a private *right* but also a private *remedy*.'" *Gonzaga*, 536 U.S. at 284 (quoting *Sandoval*, 532 U.S. at 286). Under the latter, a plaintiff does "not have the burden of showing an intent to create a private remedy because § 1983 generally supplies" one. *Id.* Nevertheless, "the initial inquiry—determining whether a statute confers any right at all"—remains the same under both. *Id.* at 285. Thus, "where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Gonzaga*, 536 U.S. at 286. Where the text and structure "provide indication that Congress may have intended to create individual rights, and some indication it may not have, that means Congress has not spoken with the requisite 'clear voice.'" *31 Foster Child. v. Bush*, 329 F.3d 1255, 1270 (11th Cir. 2003).

Here, the text and structure of the Act reveal that the Materiality Provision is not privately enforceable for a fundamental reason: it does not unambiguously confer substantive rights. Rather, consistent with Congress's power to enforce the Fifteenth Amendment, the Act created remedies enforceable by the Attorney General, not rights enforceable by millions of individual plaintiffs.

**1.** Congress does not confer substantive rights when enforcing the provisions of the Fourteenth and Fifteenth Amendments because its enforcement power is

purely "remedial," not "plenary." *City of Boerne v. Flores*, 521 U.S. 507, 522, 527 (1997) ("Any suggestion that Congress has a substantive, non-remedial power under the Fourteenth Amendment is not supported by our case law.").[2] Title I of the Civil Rights Act of 1964 "was passed by Congress under the authority of the Fifteenth Amendment to enforce that Amendment's guarantee, which protects against any discrimination by a State, its laws, its customs, or its officials in any way." *United States v. Mississippi*, 380 U.S. 128, 138 (1965). As such, it created only "new remedies," not new rights. *South Carolina v. Katzenbach*, 383 U.S. 301, 308, 315, 329-31 (1966) (considering constitutional challenge to the "stringent new remedies" created by the Voting Rights Act of 1965, also enacted pursuant to Congress's Fifteenth Amendment enforcement power). Therefore, the Materiality Provision—one of the Act's new remedies—created no privately enforceable substantive rights.

Congress's "parallel" enforcement powers under Section 5 of the Fourteenth Amendment and Section 2 of the Fifteenth Amendment are "corrective or preventative, not definitional." *City of Boerne*, 521 U.S. at 518, 525. As the Supreme Court

---

[2] "Constitutional remedies, unlike statutory remedies, cannot be authorized as a derivative power based on the legislature's power over the substantive law because Congress has no power over the substance of constitutional rights." Tracy A. Thomas, *Congress' Section 5 Power and Remedial Rights*, 34 U.C. Davis L. Rev. 673, 701 (2001); *see also N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 83-84 (1982) (plurality opinion) (contrasting Congress's broad power to define and prescribe remedies for statutory rights with Congress's limited power to enforce constitutional rights, *i.e.*, rights "not of congressional creation").

explained long ago, the Fourteenth Amendment invests Congress with the power only "to provide modes of relief against State legislation[] or State action" "when these are subversive of the fundamental rights specified in the amendment." *Civil Rights Cases*, 109 U.S. 3, 11 (1883); *see also City of Boerne*, 521 U.S. at 524-25 (discussing *Civil Rights Cases*).

One such right is the right to vote free from discrimination. "The right to vote in the States comes from the States; but the right of exemption from the prohibited discrimination comes from the United States. The first has not been granted or secured by the Constitution of the United States; but the last has been." *United States v. Cruikshank*, 92 U.S. 542, 556 (1875); *see also United States v. Reese*, 92 U.S. 214, 217-18 (1875) (describing Fifteenth Amendment as securing a "new constitutional right"). Since the ratification of the Fifteenth Amendment, Congress has attempted to enforce this right in myriad ways. *See Katzenbach*, 383 U.S. at 309-14 (chronicling Congress's "unsuccessful remedies" prescribed "to cure the problem of voting discrimination"). One remedy was Section 1983 and its statutory predecessor, which have allowed private parties to seek redress for violations of their Fifteenth Amendment rights. *See, e.g., Lane v. Wilson*, 307 U.S. 268, 269 (1939); *cf. Maine v. Thiboutot*, 448 U.S. 1, 26-29 (1980) (Powell, J., dissenting) (relaying history of §1983 and noting that "cases dealing with purely statutory civil rights claims remain nearly as rare as in the early years"). Criminal prohibitions were another

enforcement mechanism. *See, e.g.*, 18 U.S.C. §241 (prohibiting conspiracy "to injure, oppress, threaten, or intimidate any person … in the free exercise or enjoyment of any right or privilege secured to him by the Constitution").

Title I of the Civil Rights Act of 1964 was another. This Act followed and amended several previous laws passed to enforce the Fifteenth Amendment's guarantees. First, the Civil Rights Act of 1957, 71 Stat. 637, "authorized the Attorney General to seek injunctions against public and private interference with the right to vote on racial grounds." *Katzenbach*, 383 U.S. at 313. The 1957 Act also brought forward Section 1 of the Enforcement Act of 1870, 16 Stat. 140, which is now codified at 52 U.S.C. §10101(a)(1) and roughly "parrots" the text of the Fifteenth Amendment. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 81 (2000). The Civil Rights Act of 1960 then "permitted the joinder of States as parties defendant, gave the Attorney General access to local voting records, and authorized courts to register voters in areas of systematic discrimination." *Katzenbach*, 383 U.S. at 313. "Title I of the Civil Rights Act of 1964 expedited the hearing of voting cases before three-judge courts and outlawed some of the tactics used to disqualify [black Americans] from voting in federal elections." *Id.* It was in this Act that the Materiality Provision was first promulgated. 78 Stat. 241.

The Materiality Provision was added to better enforce the preexisting right to vote free from discrimination. It did not create a new right, but instead created at

most a prophylactic remedy to protect the underlying constitutional right. *See City of Boerne*, 521 U.S. at 518 (collecting examples of similar remedies promulgated to protect voting rights). Such "prophylactic legislation" may not "substantively redefine the States' legal obligations." *Nev. Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721, 722 (2003). It has no "definitional" or "substantive" qualities. *City of Boerne*, 521 U.S. at 520, 525. As such, it does not confer "personal rights" privately enforceable under §1983 or under an implied right of action. *Three Rivers Ctr.*, 382 F.3d at 419.

The same is true of other statutes enacted to enforce preexisting rights. The Violent Crime Control and Law Enforcement Act of 1994, for example, declared it "unlawful for any governmental authority" or agent "to engage in a pattern or practice of conduct by law enforcement officers … that deprives persons of rights, privileges, or immunities secured or protected by the Constitution" or federal law. 34 U.S.C. §12601(a). That provision references "rights," but the text makes clear that no new right is being created. And structure confirms it too, where the following subsection empowers the Attorney General to bring civil actions when he has "has reasonable cause to believe that a violation of" §12601(a) has occurred. §12601(b). Courts interpreting this statute have concluded that it "confers no such express right upon a benefitted class. Instead, the statute only prohibits certain governmental conduct without conferring an unambiguous private right of action to a particular class."

*Malecki v. Christopher*, No. 4:07-CV-1829, 2008 WL 11497819, at *3 n.6 (M.D. Pa. May 27, 2008); *see also Gumber v. Fagundes*, 2021 WL 4311904, at *5 (N.D. Cal. July 3, 2021).

Likewise, 18 U.S.C. §241 makes it illegal for "two or more persons [to] conspire to injure, oppress, threaten, or intimidate any person … in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States." This criminal statute references and enforces rights, but it does not confer new ones. Thus, the statute "do[es] not give rise to a civil action for damages." *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989); *see also Milligan v. Jacob*, No. 2:18-CV-00496, 2019 WL 3470801, at *10 (W.D. Pa. July 8, 2019) ("These criminal statutes," including 18 U.S.C. §§241 & 242, "do not create any private right—that is, any right in another individual—to bring an action for their violation."), *R. & R. adopted*, No. 18-cv-496, 2019 WL 3460136 (W.D. Pa. July 31, 2019), *aff'd*, 826 F. App'x 256 (3d Cir. 2020).

**2.** The district court overlooked this crucial distinction between "substantive" and "remedial" legislation. The court held that the Materiality Provision both contains an implied right of action and creates rights enforceable through §1983. App.63-67. But the court appeared to collapse the inquiries into a single issue. It found only that Congress intended to create a "personal right" and did not examine whether Congress intended to create a "private remedy," which is a mandatory part

10

of the "judicial task" of discerning an implied right of action. *Sandoval*, 532 U.S. at 286; *see also Arkansas State Conf. NAACP v. Arkansas Bd. of Apportionment*, 86 F.4th 1204, 1216 (8th Cir. 2023) (holding that "there is no private remedy," and therefore no private right of action, "to enforce § 2" of the VRA). Regardless, the district court's conclusion that the Materiality Provision confers a new federal right is wrong. Thus, there can be no private enforcement through either avenue.

The Materiality Provision references the denial of "the right to vote." 52 U.S.C. §10101(a)(2)(B). But there is no presumption of §1983 enforceability just because a statute "speaks in terms of 'rights.'" *Pennhurst State Sch. and Hosp. v. Halderman*, 451 U.S. 1, 18-20 (1981) (holding that the "bill of rights" provision of the Developmentally Disabled Assistance and Bill of Rights Act was not enforceable under §1983). Rather, courts must take "pains to analyze the statutory provisions in detail, in light of the entire legislative enactment, to determine whether the language in question created enforceable rights, privileges, or immunities within the meaning of § 1983." *Suter v. Artist M.*, 503 U.S. 347, 357 (1992) (internal quotation marks omitted).

As explained above, the "right" referenced in the text of the Materiality Provision is the preexisting right to vote free from discrimination conferred by the Fifteenth Amendment. If the Materiality Provision created a right, it must be something

different. And if this different right exists, it must be "unambiguously conferred." *Gonzaga*, 536 U.S. at 282.

The district court first found that the Materiality Provision's language resembles that of Titles VI and IX, which the Supreme Court has cited as statutes containing "explicit rights-creating terms," *Gonzaga*, 536 U.S. at 284, so it too must be read as conferring individual rights, App.65-66. But those statutes conferred *new* rights never before articulated in federal law. *Gonzaga*, 536 U.S. at 284. Title VI, for example, conferred the new right not to be "excluded [on the ground of race, color, or national origin] from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. §2000d. And Title IX established the new right not to be "subjected to discrimination [on the basis of sex] under any educational program or activity receiving Federal financial assistance." 20 U.S.C. §1681(a). These stand in stark contrast to 52 U.S.C. §10101,[3] which largely "parrots the precise wording" of the Fifteenth Amendment, *Kimel*, 528 U.S. at 81, and the Materiality Provision itself does nothing more than create a prophylactic *remedy* around the right to vote free from discrimination.

---

[3] Also, Titles VI and IX are Spending Clause legislation, not legislation enforcing the Fourteenth or Fifteenth Amendments. *See Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 640 (1999); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 287 (1998). As such, Titles VI and IX are not purely "remedial" in nature.

The district court went on to find that the "right is not vague or amorphous" and "the language of the provision is mandatory as opposed to discretionary." App.66. That much is certainly true, but the district court was misidentifying the source of the right it found. The right to vote free from discrimination, protected by the Materiality Provision, is not a vague right, nor is the prohibition on violating it discretionary. But the right to vote free from discrimination was created by the Fifteenth Amendment, *see Reese*, 92 U.S. at 217-18, and although Congress may (and should) use clear and mandatory language when enforcing constitutional rights, doing so does not create new substantive rights.

The Fifth Circuit's recent decision in *Vote.Org v. Callanen* inadvertently confirms the conclusion that the Materiality Provision is not a rights-creating statute. There, the court found that the "first section of the statute" contained "strong 'rights-creating' language" and then stated that the Materiality Provision merely identified "a specific means of denying the rights described" in the first section. 2023 WL 8664636, at *7 (5th Cir. Dec. 15, 2023). The court went on to hold that the Materiality Provision itself contained enough "rights-focused" language to confer an individual right enforceable under §1983. *Id.* at *7-8.[4]

---

[4] The Eleventh Circuit in *Schwier v. Cox* devoted just a couple sentences to this question and similarly concluded the Materiality Provision "creates enforceable individual rights." 340 F.3d 1284, 1296-97 (2003).

Aside from the Fifth Circuit's failure to distinguish between Congress's plenary and remedial powers, three problems undermine the court's cursory analysis. First, Section 10101(a)(1) contains no "rights-creating language." As explained above, it simply uses a few more words to declare the same right created by the Fifteenth Amendment. It does not unambiguously confer any "new rights." *See Gonzaga*, 536 U.S. at 290. Further, plaintiff Vote.org did not invoke the general right to vote free from discrimination protected by Section 10101(a)(1). Rather it sought specifically to enforce Section 10101(a)(2)(B), the Materiality Provision, against Texas in its challenge to the state's wet signature rule for voter registration. Complaint at ¶¶ 37-40, *Vote.Org*, No. 5:21-cv-00649, ECF No. 1.

Second, the Fifth Circuit painted "with too broad a brush," in contravention of the Supreme Court's instruction in *Blessing v. Freestone*, 520 U.S. 329, 342 (1997). The court failed "to identify with particularity the rights" it claimed to locate in the text of the Materiality Provision. *Id.* Nor did it state what right Section 10101(a)(1) purportedly created.

Finally, it is difficult, if not impossible, to reconcile its conclusion that the Materiality Provision both contains rights-creating language and also serves to identify "a specific means of denying the rights described in subsection (a)(1)." *Vote.Org*, 2023 WL 8664636, at *7. A provision that articulates the means of denying rights articulated elsewhere does not itself create new rights. This interpretation

14

in fact supports the doctrine that Congress is not in the "rights-creating" business when promulgating legislation pursuant to its enforcement powers.

**3.** Finally, Congress decided to name only the Attorney General when articulating the means of enforcement. *See* 52 U.S.C. §10101(c). Where a statute provides a "federal review mechanism," the Supreme Court has been far less willing to identify "individually enforceable private rights."[5] *Gonzaga*, 536 U.S at 289-90. For example, the *Gonzaga* Court held that the Family Educational Rights and Privacy Act's nondisclosure provisions created no rights enforceable under §1983. *Id.* at 290-91. The Court's conclusion was "buttressed by the mechanism that Congress chose to provide for enforcing those provisions. Congress expressly authorized the Secretary of Education to '*deal with violations*' of the Act …." *Id.* at 289.

The Court contrasted FERPA's federal enforcement scheme with provisions in the Public Housing Act and the Medicaid Act that lacked a "federal review mechanism." *Id.* at 280, 290. In *Wright v. Roanoke Redevelopment and Housing Authority*, 479 U.S. 418 (1987), the Court held that the rent-ceiling provision of the Public

---

[5] This argument is distinct from the second prong of the §1983 enforceability inquiry, which asks whether Congress, *after* conferring new individual rights, "specifically foreclosed a remedy under § 1983." *Gonzaga*, 536 U.S. at 284 n.4; *see also* Blue Br.51-53 (making a "second prong" argument). Under the first prong, the burden remains with the plaintiff. *Id.* at 284. The district court, *see* App.66-67, and the courts in *Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003), and *Vote.Org v. Callanen*, 2023 WL 8664636 (5th Cir. 2023), considered the Act's enforcement provision only under the second prong of the §1983 inquiry.

Housing Act was enforceable under §1983 in "significant" part because "the federal agency charged with administering the Public Housing Act had never provided a procedure by which tenants could complain to it about the alleged failures of state welfare agencies to abide by the Act's rent-ceiling provision." *Gonzaga*, 536 U.S. at 280 (cleaned up). And in *Wilder v. Virginia Hospital Association*, 496 U.S. 498 (1990), the Court also held that a reimbursement provision of the Medicaid Act was privately enforceable in part because there was "no sufficient administrative means of enforcing the requirement against States that failed to comply." *Gonzaga*, 536 U.S. at 280-81.

Here, like in FERPA, Congress expressly provided for federal enforcement of the Act: "Whenever any person has engaged … in any act or practice which would deprive any other person of any right or privilege secured by subsection (a) or (b), the Attorney General may institute for the United States … a civil action or other proper proceeding for preventative relief …." 52 U.S.C. §10101(c).[6]

Subsection (c) also expressly provides that the Attorney General may sue "the State … as a party defendant," *id.*, which is relevant for at least three reasons. First, this additional remedy for the federal government further cautions against assuming that the statue gives private parties enforceable rights. Second, there is no

---

[6] Pursuant to his statutory grant of authority, the Attorney General can and does enforce the Materiality Provision. *See, e.g.*, Complaint at 16, *United States v. Texas*, No. 5:21-cv-1085 (W.D. Tex. 2021) ECF No. 1.

"unmistakably clear" language that could abrogate state sovereign immunity and thus allow private parties to also sue States directly. *Dellmuth v. Muth*, 491 U.S. 223, 228 (1989). And, third, this case demonstrates why Congress would have wanted to make the State a defendant in a Materiality Provision proceeding, something Congress did not empower private plaintiffs to do. Here, because only private plaintiffs sued, and because they had standing against only certain state and local officials, Pennsylvania is now governed by a patchwork of election laws, with 55 of its county boards of elections applying Pennsylvania law and 12 applying a regime crafted by the district court. App.6, 10-11. All this confirms that Congress did not want to place the authority to alter state election laws in the hands of millions of potential plaintiffs.

This result is bolstered further still by subsection (e), which allows the Attorney General to seek a federal-court-run voter registration process that is overseen by the court until offending practices have been eliminated. That provision states that if "the court finds that any person has been deprived on account of race or color of any right or privilege secured by subsection (a), the court shall upon request of the Attorney General" determine "whether such deprivation was or is pursuant to a pattern or practice." 52 U.S.C. §10101(e). If the finding is made, any affected person, for at least a year and until the practice has ceased, may obtain an order from the federal court "declaring him qualified to vote" if he proves he is qualified under state

law and that, since the court identified the offending practice, the applicant has "been (a) deprived of or denied under color of law the opportunity to register to vote or otherwise to qualify to vote, or (b) found not qualified to vote by any person acting under color of law." *Id.*[7] Applications for such orders "shall be heard within ten days," an applicant "declared qualified to vote shall be permitted to vote," and "[t]he Attorney General shall cause to be transmitted certified copies of such order to the appropriate election officers." *Id.* Either the Attorney General or the defendant may request a three-judge court to hear these pattern-and-practice challenges. 52 U.S.C. §10101(g). And more broadly, "[i]t shall be the duty of the judge designated pursuant to this section to assign the case for hearing at the earliest practicable date and to cause the case to be in every way expedited." *Id.* Thus, the context in which the Materiality Provision is embedded shows that Congress intended to give new enforcement authority to the Attorney General and new oversight powers to courts.

But no mention is made of a right to separate enforcement by private parties. And none was intended. Just look to Title II of the Civil Rights Act of 1964, which

---

[7] This provision contains the only "express, private means of redress in the statute itself" and is significantly "more restrictive" than the "more expansive remedy under § 1983." *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 121 (2005). Thus, as Appellants argue (at 51-53), even if the Materiality Provision created a new federal right, enforcement of that provision "through § 1983 would distort the scheme of expedited judicial review and limited remedies created by" §10101(e). *Id.* at 127. This is strong evidence that Congress "intended to supplant any remedy that otherwise would be available under § 1983." *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 21 (1981).

prohibits discrimination in places of public accommodation. The relevant provision there states, "Whenever any person has engaged … in any act or practice prohibited by … this title, a civil action for preventive relief … may be instituted by the person aggrieved. … [T]he court may, in its discretion, permit the Attorney General to intervene in such civil action." 42 U.S.C. §2000a-3(a). This absence of a similar private enforcement mechanism in Title I, alongside Title I's inclusion of a detailed and express "federal review mechanism" confirms that Congress did not confer privately enforceable rights in Title I. *See McKay v. Thompson*, 226 F.3d 752, 756 (6th Cir. 2000) (The Materiality Provision "is enforceable by the Attorney General, not by private citizens."); *see also Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 630 (6th Cir. 2016) (citing *McKay* when affirming the dismissal of plaintiff's immaterial-error claim).

In sum, the Civil Rights Act of 1957 expressly "authorized the Attorney General to seek injunctions against public and private interference with the right to vote on racial grounds." *Katzenbach*, 383 U.S. at 313. The Civil Rights Act of 1964 added the Materiality Provision and maintained enforcement by the Attorney General. This suggests that Congress intended to give the Attorney General another tool to enforce the guarantees of the Fifteenth Amendment, not to confer upon millions of Americans a right to sue.

**4.** If unmistakable clarity is the standard for conferring individual rights enforceable under §1983, the Materiality Provision does not meet it. "Basic federalism principles confirm" this. *Carey v. Throwe*, 957 F.3d 468, 481, 483 (4th Cir. 2020) ("To the extent [the *Gonzaga*] standard permits a gradation, we think it sound to apply its most exacting lens when inferring a private remedy [that] would upset the usual balance of state and federal power."). States have "broad powers to determine the conditions under which the right of suffrage may be exercised." *Shelby County v. Holder*, 570 U.S. 529, 543 (2013). To scrutinize the Materiality Provision with anything less than the "most exacting lens," *Carey*, 957 F.3d at 483, for the presence of a privately enforceable federal right would "subject to judicial oversight" every state ballot-casting law "at the behest of a single citizen," *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 645 (1979) (Powell, J., concurring). The Materiality Provision's text and context do not make unmistakably clear Congress's intent to "upset the usual constitutional balance of federal and state powers" in that way. *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991).

## II.   Congress Did Not Pass the Materiality Provision To Target Dozens, If Not Hundreds, Of Important Election Integrity Laws.

After deciding that individual voters could bring immaterial-error claims against state officials under §1983, the district court proceeded to resurrect the novel interpretation of the Materiality Provision proposed in the recently vacated *Migliori* decision. There, the Third Circuit held that the Materiality Provision applies to all

voting-paper-related regulations, not just voter registration requirements, and that any such regulation is immaterial, and therefore unlawful, unless "it goes to determining age, citizenship, residency, or current imprisonment for a felony"—the four requirements for qualifying to vote under Pennsylvania law. *Migliori v. Cohen*, 36 F.4th 153, 162-63 (3d Cir. 2022), *cert. granted, judgment vacated sub nom. Ritter v. Migliori*, 143 S. Ct. 297 (2022). Justice Alito considered this interpretation "silly," and even "absurd," for there "is no reason why the requirements that must be met in order to register (and thus be 'qualified') to vote should be the same as the requirements that must be met in order to cast a ballot that will be counted." *Ritter v. Migliori*, 142 S. Ct. 1824, 1825 (2022) (Alito, J., dissental).

Before the district court, the RNC made powerful textual arguments against the *Migliori* interpretation. App.95-102. This presented the district court with a choice: interpret the law according to its plain meaning, which respects the sovereign power of the States to regulate their own elections; or follow the vacated *Migliori* decision and cast doubt on ballot integrity measures across the country. The court chose the latter path, holding that the Materiality Provision applies to regulations governing the marking and mailing of absentee ballots, and that "the requirement of dating the outer return envelope" is immaterial because it has nothing "to do with determining a voter's qualifications to vote." App.75, 81. Aside from the illogic and impossibility of its interpretation, which Appellants thoroughly refute, *see* Blue

Br.19-30, the district court paid no heed to basic federalism principles and their influence upon the process of statutory construction, *see id.* at 30-35. This section elaborates on that failure.

Courts must be "certain of Congress's intent before finding that federal law overrides the usual constitutional balance of federal and state powers." *Bond v. United States*, 572 U.S. 844, 858 (2014) (internal quotation marks omitted). To gain this certainty, courts look for a "clear statement" to support an interpretation that would "alter sensitive federal-state relationships" in "areas of traditional state responsibility." *Id.* at 858, 863. This "unexpressed presumption," *id.* at 857—the "longstanding" "federalism canon," *West Virginia v. EPA*, 142 S. Ct. 2587, 2621 (2022) (Gorsuch, J., concurring)—recognizes that "the States retain substantial sovereign powers under our constitutional scheme, powers with which Congress does not readily interfere." *Gregory*, 501 U.S. at 461.

One such traditional area of state responsibility is the "regulation[] of parties, elections, and ballots." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). This "power to prescribe the qualifications of its officers, and the manner in which they shall be chosen," *Boyd v. State of Nebraska*, 143 U.S. 135, 161 (1892), "inheres in the State by virtue of its obligation … to preserve the basic conception of a political community," *Sugarman v. Dougall*, 413 U.S. 634, 647 (1973). Courts should be wary of accepting an interpretation of federal law that would "compel

federal courts to rewrite state electoral codes." *Clingman v. Beaver*, 544 U.S. 581, 593 (2005).

Yet, the district court did just the opposite. Its reading of the Materiality Provision amounts to a "*de facto* green light to federal courts to rewrite dozens of state election laws around the country." *DNC v. Wis. State Legislature*, 141 S. Ct. 28, 35 (2020) (Kavanaugh, J., concurral). If permitted to stand, this will cast doubt on ordinary ballot-casting laws in all fifty states.[8]

This invitation for federal takeover, *cf.* Federalist No. 59, cannot be reconciled with the Supreme Court's repeated recognition that "evenhanded restrictions that

---

[8] The following state laws govern the casting, mailing, and counting of absentee ballots. But far more than these would be implicated by the district court's interpretation of the Materiality Provision. *See, e.g.*, Ala. Code §§17-11-9, -18; Alaska Stat. §15.20.081; Ariz. Stat. §16-548; Ark. Code §§7-5-411, -412; Cal. Elec. Code §§3011, 3020; Colo. Stat. §1-7.5-107; Conn. Gen. Stat. §§9-140, 140b; Del. Code tit. 15 §§5507, 5508; Fla. Stat. §§101.65, .67; Ga. Code §§21-2-385, 386; Haw. Stat. §11-104; Idaho Code §34-1005; 10 Ill. Comp. Stat. 5/19-5, -6, -8; Ind. Code §3-11-10-1; Iowa Code §§53.16, .17; Kan. Stat. §§25-1124, -1132; Ky. Stat. §§117.076, .086; La. Stat. §§18:1310, 1311; Me. Stat. tit. 21-A, §§754-A, 755; Md. Code, Elec. Law §9-309, https://elections.maryland.gov/voting/absentee.html (last visited Dec. 21, 2023); Mass. Gen. Laws ch. 54, §§92, 93; Mich. Comp. Laws §168.764a; Minn. Stat. §§203B.07, .08; Miss. Code §23-15-637; Mo. Ann. §§115.290, .293; Mont. Code §§13-13-201, -232; Neb. Stat. §§32-947, -950; Neb. Stat. §32-947; N.H. Stat. §§657:7, :22; N.J. Stat. §§19:63-12, -13, -16, -22; N.M. Stat. §§1-6-9, -10; N.Y. Elec. Law §§8-410, -412 (McKinney); N.C. Gen. Stat. §163-231; N.D. Cent. Code §§16.1-07-08, -09; Ohio Code §3509.05; Okla. Stat. tit. 26, §§14-104, -108; Or. Stat. §253.070; 25 Pa. Stat. §§3146.4, .8; 17 R.I. Gen. Laws §17-20-8; S.C. Code §§7-15-375, -380, -420; S.D. Codified Laws §§12-19-7, -12; Tenn. Code §§2-6-304, -309; Tex. Elec. Code §§86.005, .007; Utah Code §20A-3a-204; Vt. Stat. tit. 17, §§2542, 2543; Va. Code §§24.2-707, -709; Wash. Code §29A.40.091; W. Va. Code §3-3-5; Wis. Stat. §6.87; Wyo. Stat. §§22-9-111, -112, -119; *see also* Blue Br.33-34.

protect the integrity and reliability of the electoral process itself" are not constitutionally suspect. *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 189-90 (2008) (plurality op.) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 n.9 (1983)); *see also Brnovich*, 141 S. Ct. at 2347 (A "State indisputably has a compelling interest in preserving the integrity of its election process."); *Wis. State Legislature*, 141 S. Ct. at 33 (Kavanaugh, J., concurral) ("The Court has long recognized that a State's reasonable deadlines for registering to vote, requesting absentee ballots, submitting absentee ballots, and voting in person generally raise no federal constitutional issues …."). This makes perfect sense, because "if there are to be fair and honest" elections, "and if some sort of order, rather than chaos, is to accompany the democratic process," "there must be a substantial regulation of elections." *Storer*, 415 U.S. at 730. Further, because remedial legislation like the Materiality Provision may not "attempt a substantive change in constitutional protections," an interpretation that would render the statute "so out of proportion" to remedying or preventing unconstitutional behavior should be strenuously avoided. *City of Boerne*, 521 U.S. at 532.[9]

Take, for example, Alabama's laws regulating absentee voting. Ala. Code §17-11-2 *et seq*. Prospective absentee voters receive in the mail an absentee ballot

---

[9] In this case, the federalism canon and constitutional avoidance canon walk hand in hand. *See* Blue Br.35-40.

along with two envelopes—one plain and one with the voter's affidavit printed on the back. *Id.* §17-11-9. The voter must mark the ballot, sign the oath, seal the ballot in the plain envelope, place that envelope in the return mail envelope, sign the affidavit printed on the back, have it witnessed by a notary public or two witnesses, and then deliver it in person or by mail to the absentee election manager by noon on election day. *Id.* §17-11-18. Not one of these neutral requirements clearly "goes to determining age, citizenship, residency, or current imprisonment for a felony." *Migliori*, 36 F.4th at 163; *see also* Alabama Secretary of State, *Voter Registration General Information*, https://www.sos.alabama.gov/alabama-votes/voter-registration/general-info (last visited Dec. 29, 2023). According to the district court's reasoning, these ballot-casting measures too might violate the Materiality Provision for not helping "determin[e] a voter's qualifications to vote." App.81.

To quote Justice Alito again, "Can that possibly be correct?" *Ritter*, 142 S. Ct. at 1826 (Alito, J., dissental). Of course not, because "[c]asting a vote" always "requires compliance with certain rules." *Brnovich*, 141 S. Ct. at 2338. Justice Alito explained the absurdity of a reading of the Act that could stretch so far as to cover "rules setting the date of an election, the location of the voter's assigned polling place, [and] the address to which a mail-in ballot must be sent." *Ritter*, 142 S. Ct. at 1825 (Alito, J., dissental). The district court noted these examples, but tellingly had

no answer to the broader point. App.77. The court simply declared "no opinion" on such laws and moved on. *Id.*

That's not good enough. The district court's novel reading of this longstanding law would have drastic consequences for the federal-state balance, yet the court apparently failed to recognize that fact. That failure reflects not careful textual analysis nor respect for the States' sovereign powers but a reflexive "belief that federal judges know better than state legislators about how to run elections." *Wis. State Legislature*, 141 S. Ct. at 35 (Kavanaugh, J., concurral). Because the Materiality Provision contains no "exceedingly clear language" that would require such upheaval of the federal-state balance, the federalism canon mandates that courts steer clear of expanding the provision's reach beyond that which it clearly regulates. *Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2489 (2021). Appellants have articulated the clear meaning of the statute. The district court's "silly" and seriously misguided interpretation should be rejected.

## CONCLUSION

The Court should reverse.

January 3, 2024                                      Respectfully submitted,

                                                     Steve Marshall
                                                       *Attorney General*
                                                     s/ Edmund G. LaCour Jr.
                                                     Edmund G. LaCour Jr.
                                                       *Solicitor General*

Soren Geiger
 *Assistant Solicitor General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
P.O. Box 300152
Montgomery, AL 36130-0152
(334) 242-7300
Edmund.LaCour@AlabamaAG.gov

*Counsel for Amici Curiae*

## ADDITIONAL COUNSEL

TIM GRIFFIN
Attorney General
State of Arkansas

AUSTIN KNUDSEN
Attorney General
State of Montana

CHRIS CARR
Attorney General
State of Georgia

MICHAEL T. HILGERS
Attorney General
State of Nebraska

RAÚL R. LABRADOR
Attorney General
State of Idaho

DREW H. WRIGLEY
Attorney General
State of North Dakota

THEODORE E. ROKITA
Attorney General
State of Indiana

DAVE YOST
Attorney General
State of Ohio

BRENNA BIRD
Attorney General
State of Iowa

ALAN WILSON
Attorney General
State of South Carolina

KRIS W. KOBACH
Attorney General
State of Kansas

KEN PAXTON
Attorney General
State of Texas

JEFF LANDRY
Attorney General
State of Louisiana

SEAN D. REYES
Attorney General
State of Utah

ANDREW BAILEY
Attorney General
State of Missouri

PATRICK MORRISEY
Attorney General
State of West Virginia

## CERTIFICATE OF COMPLIANCE

1.      I certify that that at least one of the attorneys whose names appear on this brief is a member of the bar of this Court. 3d Cir. L.A.R. 28.3(d).

2.      I certify that this brief complies with the type-volume limitations set forth in Fed. R. App. P. 29(a)(5). This brief contains 6,492 words, including all headings, footnotes, and quotations, and excluding the parts of the brief exempted under Fed. R. App. P. 32(f).

2.      I certify that this brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.

3.      I certify that this brief complies with Local Rule 31.1(c) because the text of the electronic version of the brief is identical to the text in the paper copies.

4.      Finally, I certify that the electronic version of the brief was scanned by the most recent version of Cisco Secure Client (5.0.00837), and no virus was detected.

Dated: January 3, 2024

/s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr.

**CERTIFICATE OF SERVICE**

I certify that on January 3, 2024, I electronically filed this document using the

Court's CM/ECF system, which will serve all counsel of record.

s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr.
*Counsel for Amici Curiae*