No. 23-3166

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

PENNSYLVANIA CONFERENCE OF THE NAACP, *et al.*,

v.

SECRETARY COMMONWEALTH OF PENNSYLVANIA, *et al.*

RICHARD MARINO; REPUBLICAN NATIONAL COMMITTEE;
NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE;
THE REPUBLICAN PARTY OF PENNSYLVANIA,

*Appellants.*

**On Appeal from the United States District Court for the
Western District of Pennsylvania, Case No. 1:22-cv-00339**

## APPELLANTS' REPLY BRIEF

Kathleen A. Gallagher
THE GALLAGHER FIRM, LLC
436 Seventh Ave., 31st Floor
Pittsburgh, PA 15219
(412) 717-1900
kag@gallagherlawllc.com

Thomas W. King, III
Thomas E. Breth
DILLON, McCANDLESS, KING,
COULTER & GRAHAM, LLP
128 W. Cunningham St.
Butler, PA 16001
(724) 283-2200
tking@dmkcg.com
tbreth@gmkcg.com

John M. Gore
(D.C. Bar No. 502057)
 *Counsel of Record*
E. Stewart Crosland
Louis J. Capozzi, III
Ryan M. Proctor
JONES DAY
51 Louisiana Ave. NW
Washington, DC 20001
(202) 879-3939
jmgore@jonesday.com
scrosland@jonesday.com
lcapozzi@jonesday.com
rproctor@jonesday.com

*Counsel for Appellants*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Third Circuit LAR 26.1, Appellants disclose that they have no parent corporations and that no publicly held corporations hold 10% or more of their stock. Further, no publicly held corporation not a party to this proceeding has a financial interest in the outcome of this proceeding.

Dated: January 17, 2024        */s/* John M. Gore
                               John M. Gore
                               *Counsel for Appellants*

i

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ..........................................i

INTRODUCTION ...................................................................... 1

ARGUMENT ............................................................................. 2

I.   THE DATE REQUIREMENT DOES NOT VIOLATE THE
     MATERIALITY PROVISION. ........................................................ 2

     A.   The Date Requirement Does Not Implicate The
          Materiality Provision. ..................................................... 2

          1.   The Date Requirement Does Not Apply To A
               "Record Or Paper" Related To An "Application,
               Registration, Or Other Act Requisite To
               Voting." ......................................................... 2

          2.   The Date Requirement Is Not Used "In
               Determining" Any Individual's Qualifications
               To Vote........................................................ 12

          3.   The Date Requirement Does Not "Deny The
               Right Of Any Individual To Vote."............................. 15

     B.   The Federalism Canon Bars Application Of The
          Materiality Provision To The Date Requirement................ 18

     C.   The District Court's Interpretation Renders the
          Materiality Provision Unconstitutional.............................. 24

II.  APPELLEES LACK A RIGHT OF ACTION TO ENFORCE
     THE MATERIALITY PROVISION ............................................. 27

III. THE DISTRICT COURT'S REMEDY IS UNLAWFUL ............... 29

IV.  THIS COURT HAS JURISDICTION .......................................... 33

CONCLUSION ...................................................................... 33

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ala. Ass'n of Realtors v. HHS,*
141 S. Ct. 2485 (2021) (per curiam).................................................. 18, 19

*Ali v. BOP,*
552 U.S. 214 (2008)...................................................................... 5, 6, 7

*Appeal of Koch,*
41 A.2d 657 (Pa. 1945) ...................................................................... 33

*Ball v. Chapman,*
284 A.3d 1189 (Pa. 2022) .................................................................. 30

*Ball v. Chapman,*
289 A.3d 1 (Pa. 2023) ....................................................... 12, 13, 30, 31

*Bostock v. Clayton County,*
140 S. Ct. 1731 (2020).............................................................. 7, 8, 15

*Brnovich v. DNC,*
141 S. Ct. 2321 (2021) ................................................................. 15, 18

*Bryan v. United States,*
524 U.S. 184 (1998)........................................................................... 11

*Bush v. Gore,*
531 U.S. 98 (2000)............................................................. 29, 30, 31

*Christopher v. SmithKline Beecham Corp.,*
567 U.S. 142 (2012).............................................................................. 5

*Circuit City Stores v. Adams,*
532 U.S. 105 (2001)............................................................................... 5

*City of Boerne v. Flores,*
521 U.S. 507 (1997)..................................................................... 25, 26

*City of Rancho Palos Verdes v. Abrams,*
  544 U.S. 113 (2005)............................................................27

*Corley v. United States,*
  556 U.S. 303 (2009)..............................................................4

*Epic Sys. Corp. v. Lewis,*
  138 S. Ct. 1612 (2018)..........................................................5

*Fla. State Conf. of NAACP v. Browning,*
  522 F.3d 1153 (11th Cir. 2008)........................................2, 18

*Ford v. Tenn. Senate,*
  No. 06-2031 D V, 2006 WL 8435145
  (W.D. Tenn. Feb. 1, 2006)...................................................21

*Frank v. Walker,*
  574 U.S. 929 (2014)............................................................32

*Freeman v. Quicken Loans, Inc.,*
  566 U.S. 624 (2012)............................................................28

*George v. McDonough,*
  596 U.S. 740 (2022)............................................................15

*Harrison v. PPG Indus., Inc.,*
  446 U.S. 578 (1980)..............................................................7

*Health & Hosp. Corp. of Marion Cnty. v. Talevski,*
  599 U.S. 166 (2023)..............................................27, 28, 29

*In re 2003 Gen. Election for Off. of Prothonotary,*
  849 A.2d 230 (Pa. 2004)......................................................33

*In re Canvass of Absentee and Mail-In Ballots of Nov. 3, 2020*
  *Gen. Election,*
  241 A.3d 1058 (Pa. 2020)..............................22, 23, 24, 30

*In re Contest of Nov. 7, 2023 Election of Towamencin Twp.,*
  No. 1482 C.D. 2023 (Pa. Commw. Ct. Dec. 29, 2023)......................33

*In re Sinclair,*
  870 F.2d 1340 (7th Cir. 1989)................................................7

*LUPE v. Abbott*,
  No. 5:21-CV-0844-XR, 2023 WL 8263348
  (W.D. Tex. Nov. 29, 2023) ................................................................ 20

*McBoyle v. United States*,
  283 U.S. 25 (1931) ............................................................................ 5

*McDonald v. Bd. of Election Comm'rs*,
  394 U.S. 802 (1969) ........................................................................ 17

*Migliori v. Cohen*,
  36 F.4th 153 (3d Cir. 2022) ................................................ 2, 20, 23

*Minn. Voters All. v. Mansky*,
  138 S. Ct. 1876 (2018) ............................................................ 17, 23

*O'Brien v. Skinner*,
  414 U.S. 524 (1974) ........................................................................ 17

*Pa. Democratic Party v. Boockvar*,
  238 A.3d 345 (Pa. 2020) .................................................................. 21

*Polselli v. IRS*,
  598 U.S. 432 (2023) .......................................................................... 3

*RNC v. Common Cause R.I.*,
  141 S. Ct. 206 (2020) ...................................................................... 32

*RNC v. DNC*,
  140 S. Ct. 1205 (2020) .................................................................... 32

*Schwier v. Cox*,
  340 F.3d 1284 (11th Cir. 2003) ........................................................ 3

*Shelby County v. Holder*,
  570 U.S. 529 (2013) ........................................................................ 26

*South Carolina v. Katzenbach*,
  383 U.S. 301 (1966) ........................................................................ 26

*Sw. Airlines Co. v. Saxon*,
  596 U.S. 450 (2002) .......................................................................... 7

*Tex. Democratic Party v. Abbott*,
   978 F.3d 168 (5th Cir. 2020)................................................................17

*United States v. EME Homer City Generation, L.P.*,
   727 F.3d 274 (3d Cir. 2013) ...........................................................6, 7

*United States v. Mosley*,
   238 U.S. 383 (1915)............................................................................16

*United States v. Roof*,
   10 F.4th 314 (4th Cir. 2021) .............................................................25

*Veasey v. Abbott*,
   830 F.3d 216 (5th Cir. 2016)..............................................................25

*Vote.Org v. Callanen*,
   __ F.4th __, No. 22-50536, 2023 WL 8664636
   (5th Cir. Dec. 15, 2023) ............................................................. *passim*

*Wash. State Dep't of Social and Health Servs. v.*
   *Guardianship Estate of Keffeler*,
   537 U.S. 371 (2003).....................................................................5, 6, 7

**CONSTITUTIONAL AND STATUTORY AUTHORITIES**

U.S. Const. amend. XIV § 5.........................................................25, 26

U.S. Const. amend. XV § 2 ............................................................ *passim*

U.S. Const. art. I, § 4, cl. 1 .................................................................19

42 U.S.C. § 1983 ..................................................................27, 28, 29

52 U.S.C. § 10101 ...........................................................................*passim*

52 U.S.C. § 10501 .................................................................................14

**LEGISLATIVE HISTORY**

110 Cong. Rec. 1520 (1964) ................................................................10

110 Cong. Rec. 1593 (1964) ................................................................10

110 Cong. Rec. 1600 (1964) ................................................................10

110 Cong. Rec. 6530 (1964) ................................................................10

110 Cong. Rec. 6650 (1964) ..................................................... 10

110 Cong. Rec. 6715 (1964) ..................................................... 10

110 Cong. Rec. 6723 (1964) ..................................................... 10

H.R. Rep. 88-914, pt. 1 ............................................................. 9

H.R. Rep. 88-914, pt. 2 ............................................... 9, 10, 11

**OTHER AUTHORITIES**

A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION
OF LEGAL TEXTS (2012) ......................................................... 5

**INTRODUCTION**

Appellees ask the Court to rewrite the Materiality Provision to achieve their preferred policy outcome. To shoehorn the date requirement into the Materiality Provision's ambit, Appellees must delete several of the Provision's operative terms and write in terms that Congress neither contemplated nor enacted. They thus invite the Court to set aside what Congress *actually said* in favor of what they *wish* Congress had said as reflected in the stricken and bolded terms:

> (2) No person acting under color of law shall-
>
> (B) ~~deny the right of any individual to vote~~ **decline to count a ballot** in any election because of an error or omission on any record or paper relating to ~~any application, registration, or other act requisite to~~ voting, if such error or omission is not material ~~in determining~~ **to** whether such individual is qualified under State law to vote in such election **or to the individual's identity**, **unless the federal courts decide that the challenged rule serves a sufficiently important election-administration function.**

*Compare* 52 U.S.C. § 10101(a)(2)(B).

Appellants ask the Court to adhere to the Provision's plain text—and, in so doing, to avoid federalism problems, constitutional errors, and electoral chaos. The Court should decline Appellees' invitation to redline the Materiality Provision and reverse.

1

## ARGUMENT

## I.   THE DATE REQUIREMENT DOES NOT VIOLATE THE MATERIALITY PROVISION.

Plain statutory text establishes that the date requirement does not even implicate, much less violate, the Materiality Provision.  If any doubt remains, legislative context, caselaw, and canons of construction confirm this result.  *See* Opening Br. 17-49.  The construction proposed by Appellees and their aligned parties contravenes the plain text and must be rejected.

### A.   *The Date Requirement Does Not Implicate The Materiality Provision.*

#### 1.   **The Date Requirement Does Not Apply To A "Record Or Paper" Related To An "Application, Registration, Or Other Act Requisite To Voting."**

The date requirement does not implicate the Provision because a mail-ballot envelope is not used during the voter-registration process.  *See* Opening Br. 19-23.  Indeed, other than the now-vacated decision in *Migliori v. Cohen*, 36 F.4th 153 (3d Cir. 2022), *vacated* 143 S. Ct. 297 (2002), every appellate case to address the Provision on the merits— including the cases Appellees cite—has involved voter-registration rules, not ballot-casting rules.  *See Vote.Org v. Callanen*, __ F.4th __, No. 22-50536, 2023 WL 8664636 (5th Cir. Dec. 15, 2023); *Fla. State Conf. of*

*NAACP v. Browning*, 522 F.3d 1153 (11th Cir. 2008); *Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003).

Appellees do not contest that "application" and "registration" refer only to voter registration.[1] They instead contend that the catchall—"other act requisite to voting"—is not so limited and, thus, ensnares the date requirement. *See* NAACP Br. 35; DNC Br. 19; Sec'y Br. 35; U.S. Br. 12. This contention, however, fails at the threshold because Appellees *admit* that their reading makes "application" and "registration" superfluous. NAACP Br. 39 (calling them "technically unnecessary"); DNC Br. 19 (catchall "include[s] applications and registrations"); Sec'y Br. 32 n.8 (denying that it "is necessary to avoid making specific terms in a list meaningless"). This concession is the end of their proposed construction, as their own cited case holds. *See Polselli v. IRS*, 598 U.S. 432, 441 (2023) ("We ordinarily aim to 'give effect to every clause and word of a statute.'") (Sec'y Br. 32).

---

[1] The United States asserts—without citation—that "application" "reaches beyond voter registration applications." U.S. Br. 12. That is incorrect: Congress used the terms "application" and "registration" interchangeably to refer exclusively to voter registration. *See* Opening Br. 20.

Moreover, Appellees' proposed construction is irreconcilable with the Provision's text. Appellees point to the statutory definition of "vote" to assert that "other act requisite to voting" must refer to steps in the voting process other than voter registration. *See* NAACP Br. 35; DNC Br. 19; Sec'y Br. 35; U.S. Br. 12. But if Congress had wanted to extend the Provision to all steps in the voting process, it would have omitted the terms "any application, registration, or other acts requisite to" and simply applied the Provision to "an error or omission on any record or paper relating to ~~any application, registration, or other acts requisite to~~ voting." *Compare* 52 U.S.C. § 10101(a)(2)(B), *with supra* at 1. Thus, contrary to the United States's contention, Congress in fact *could* "have chosen language better crafted to apply the Provision, not just to registration, but all acts necessary at any stage of the voting process." U.S. Br. 12. Congress, however, used narrowing language instead—a decision that must be given effect. *See Corley v. United States*, 556 U.S. 303, 315 (2009). That effect is to limit the Provision to the voter-registration process. *See* Opening Br. 19-23.

Appellees offer various other arguments against this straightforward interpretation. All fail. *First*, Appellees suggest that the

*ejusdem generis* canon is inapplicable because "other act requisite to voting" is not ambiguous. *See* NAACP Br. 35; DNC Br. 19; Sec'y Br. 21. But *ejusdem generis* is a "traditional tool[] of statutory construction" that applies *regardless* of any ambiguity. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1625, 1630 (2018) (applying canon to find statute not ambiguous).

Indeed, the canon is used to elucidate Congress's contextualized meaning any time it enacts a statutory "list of specific items separated by commas and followed by a general or collective term." *Ali v. BOP*, 552 U.S. 214, 225 (2008) (NAACP Br. 36; Sec'y Br. 31). Thus, use of the word "other" in a catchall is a strong indicator of the canon's applicability. *See Wash. State Dep't of Social and Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 383-85 (2003); *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 164 (2012) (applying canon to "catchall phrase" "other disposition") (NAACP Br. 38-39). So, too, is the canon frequently applied to catchalls using the term "any," contrary to Appellees' contention. *See Circuit City Stores v. Adams*, 532 U.S. 105, 109 (2001); *McBoyle v. United States*, 283 U.S. 25, 26 (1931) (Holmes, J.); A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 200-02 (2012); *cf.* NAACP Br. 36; U.S. Br. 11.

Accordingly, the canon is even applied to narrow *unambiguous* terms to whichever meaning Congress intended to use in context. For example, in one of the cases Appellees cite, this Court used *ejusdem generis* to construe the catchall "any other appropriate relief" by reference to the specific items in the statutory list—even though it found no ambiguity in the catchall and a broader construction of "relief" was possible. *See United States v. EME Homer City Generation, L.P.*, 727 F.3d 274, 292-95 (3d Cir. 2013) (NAACP Br. 39). So, too, has the Supreme Court used *ejusdem generis* to limit the catchall "other legal process," even though it found no ambiguity and a broader construction was possible. *See Keffeler*, 537 U.S. at 383-85.

The canon applies here. The Provision enumerates a "list of specific items separated by commas"—"any application, registration"—"followed by a general or collective term"—"other act requisite to voting." *Ali*, 552 U.S. at 225; 52 U.S.C. § 10101(a)(2)(B). It also fits neatly within the canon's "rationale": to prevent "the prior enumeration" from being "superfluous," READING LAW, *supra*, at 199-200, which Appellees admit their proposed construction does, *see* NAACP Br. 39; DNC Br. 19; Sec'y Br. 32 n.8. The canon therefore limits "other act requisite to voting" to

the voter-registration process even if "act," "requisite," and "voting" can be given broader meanings. *See Keffeler*, 537 U.S. at 383-85; *EME Homer City Generation*, 727 F.3d at 292-95.

The Provision is thus readily distinguishable from provisions not subject to the canon in Appellees' cited cases. The Provision's language is not "disjunctive, with one specific and one general category." *Ali*, 552 U.S. at 225. Nor does construing "other act requisite to voting" to refer only to voter registration contradict "at least one of the specifically enumerated" items in the statutory list. *Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 588 (1980) (DNC Br. 18-19). And that construction shares the "attribute" of all specific items in the list, not "only one" of them. *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 462 (2002) (DNC Br. 19).

*Second*, Appellees fault Appellants' citation of legislative history, *see* DNC Br. 20; Sec'y Br. 1, but legislative history can helpfully shed light on "the understandings of the law's drafters" and "the law's ordinary meaning at the time of enactment" even in the absence of statutory ambiguity, *Bostock v. Clayton County*, 140 S. Ct. 1731, 1750 (2020); *accord In re Sinclair*, 870 F.2d 1340, 1342 (7th Cir. 1989) (Easterbrook, J.). Here, as Appellants have demonstrated, "the law's drafters" used

"application," "registration," and "other acts requisite to voting" to refer exclusively to voter registration. *See* Opening Br. 19-23; *compare* NAACP Br. 37 ("[V]oter registration was top of mind for Congress in enacting the Materiality Provision."); Sec'y Br. 22 ("Before 1964, most arbitrary denials of the right to vote happened during registration."). The Provision's "meaning at the time of enactment," therefore, was tied exclusively to voter registration. *Bostock*, 140 S. Ct. at 1750.

Appellees offer precisely nothing from the legislative history to refute that point. They identify no reports or statements suggesting that the 1964 Congress understood "application," "registration," or "other act requisite to voting" to refer to anything other than the voter-registration process. *See* DNC Br. 20-24. That is the end of the legislative history debate, which shows Congress used the catchall to refer exclusively to voter registration and functional equivalents. *See Bostock*, 140 S. Ct. at 1750.

*Third*, Appellees nonetheless argue that "the relevant legislative history supports an expansive scope consistent with the District Court's decision." DNC Br. 20. But nothing they point to changes the Provision's clear textual focus. To start, they cite snippets from the House Report

about what the Act was "designed" to do, DNC Br. 20-21, 34; Sec'y Br. 43-44, 51-52, and the failures of the Civil Rights Acts of 1957 and 1960, NAACP Br. 42; Sec'y Br. 33, 45, 53-54.  They thus ignore that the House Report—often on the same pages they cite—expressly tied Section 10101(a) and the Materiality Provision to "insur[ing] nondiscriminatory practices in *the registration of voters*."   H.R. Rep. 88-914, pt. 1 at 19 (emphasis added); H.R. Rep. 88-914, pt. 2 at 3-4.

For example, Appellees highlight a reference to "prohibiting the disqualification of an individual because of immaterial errors or omissions in papers," NAACP Br. 37, but ignore that this phrase appears in a paragraph explaining how the Provision prevents "nondiscriminatory practices in the registration of voters," H.R. Rep. 88-914, pt. 1 at 19.  DNC notes a Member's "chief concern . . . to correct any unjust discriminatory practices," DNC Br. 23, but omits mention of his concern that the Act failed to do so and "was steamrolled through" committee, H.R. Rep. 88-914, pt. 1 at 61 (emphasis added).  DNC also points to a statement about "one's vote [being] properly counted," DNC Br. 23, that referred not to the Provision but a different section regarding data collection by the U.S. Commission on Civil Rights, *see* H.R. Rep. 88-

914, pt. 2 at 24.  And the United States claims that Congress sought to bar "'onerous procedural requirements' which handicap *the exercise* of the franchise," U.S. Br. 24, but there, Representative McCullouch was describing the Fifteenth Amendment, not the Provision, *see* H.R. Rep. 88-914, pt. 2 at 6.

Appellees point to Members' floor statements, but many of them refer to "applications," "applicants," "registration," or "qualifications" and, thus, confirm the Provision addresses only voter registration.  *See, e.g.*, NAACP Br. 37 n.17; Sec'y Br. 44, 51-53; *see also* 110 Cong. Rec. 1593 (1964) (Rep. Farbstein) ("registration officials"); 110 Cong. Rec. 1520 (Rep. Celler) ("[African Americans] attempting to register"); 110 Cong. Rec. 1600 (1964) (Rep. Daniels) ("discrimination under the guise of qualification" determinations); 110 Cong. Rec. 6530 (1964) (Sen. Humphrey) ("applicants for voting registration"); 110 Cong. 6647 (1964) (Sen. McIntyre) (Act "merely attempts to fix fairness in the application of whatever" "qualification" "standards are set" by the state); 110 Cong. Rec. 6650 (1964) (Sen. Javits) ("minor error[s]" in an "application" to register); 110 Cong. Rec. 6715 (1964) (Sen. Keating) ("[African Americans] wishing to register"); 110 Cong. Rec. 6723 (1964) (Sen. Keating) (Provision

protects those "denied the right to vote" by "registrar[s]" "because of immaterial errors in their applications").

Appellees also point to a minority report and statements of *opponents* of the Act.  DNC Br. 22-23; Sec'y Br. 53.  But "the fears and doubts of the opposition are no authoritative guide" to statutory interpretation; "[i]n their zeal to defeat a bill, they understandably tend to overstate its reach." *Bryan v. United States*, 524 U.S. 184, 196 (1998) (cleaned up).  In any event, Appellees misread the minority report: it recognized that the Provision allows federal courts to decide "whether errors or omissions in an application to register are material," and expressed concern that the Provision would "set a precedent for the extension of Federal control" beyond registration *in the future*.  H.R. Rep. 88-914, pt. 2 at 77-78.

*Finally*, Appellees offer the policy argument that limiting the Provision to registration will allow States to impose arbitrary requirements at other stages of the voting process.  *See* NAACP Br. 37-38; Sec'y Br. 33; U.S. Br. 18.  But Appellees' assumption that the Provision must foreclose all unreasonable voting restrictions at every step is false.  Their own construction proves as much, since it would not

11

prohibit a State from requiring in-person voters to *orally recite* "their exact age in days" before voting. NAACP Br. 38. The Materiality Provision, on anyone's reading, cannot solve all potential voting problems, but that does not permit the Court to rewrite its plain terms.

> **2.    The Date Requirement Is Not Used "In Determining" Any Individual's Qualifications To Vote.**

All parties agree that the date requirement is not used to determine any individual's qualifications to vote. *See* NAACP Br. 29; DNC Br. 24; Sec'y Br. 25-26. For that reason too, it does not implicate the Materiality Provision. *See* Opening Br. 23-25.

Appellees again attempt to avoid this result by rewriting the Provision. They contend that the phrase "in determining" is the standard for assessing materiality rather than a reference to the act of determining qualifications. *See* NAACP Br. 39-40; Sec'y Br. 37-38; U.S. Br. 14. But if Congress had intended that result, it would have substituted "to" for "in determining" so that the Provision read "not material **to** ~~in determining~~ whether such individual is qualified under State law to vote." *Compare* 52 U.S.C. § 10101(a)(2)(B) *with supra* at 1; *Ball v. Chapman*, 289 A.3d 1, 38 (Pa. 2023) (opinion of Brobson, J.). Congress's use of "*in determining*"

cabins the Provision to rules applied when actually *determining* qualifications.    Opening Br. 23-25; *Ball*, 289 A.3d at 38 (opinion of Brobson, J.).

Appellees' other arguments are equally unavailing.    Their assertion that Pennsylvania election officials may confirm qualifications at points other than the initial registration, *see* NAACP Br. 39 n.19; Sec'y Br. 33-34; U.S. Br. 14-15, overlooks that the date requirement is *never* used to determine or confirm qualifications, *see* App. 61 (District Court explaining that the date requirement applies only to voters who "had previously been determined to be eligible and qualified to vote" during the registration process).    Their attempt to bootstrap their preferred construction upon the term "such election," NAACP Br. 44; Sec'y Br. 40, disregards that "such election" merely recognizes that qualifications may differ in different elections, *see* Opening Br. 49.

And their attempt to recast neighboring statutory provisions also fails.    Indeed, Appellees do not contest that a strikingly similar "in determining" clause limits Section 10101(a)(2)(A) to qualification determinations.    *See* NAACP Br. 40; Sec'y Br. 39-40.    The Secretary quibbles that the "in determining" clause appears at the beginning of

subsection (a)(2)(A), *id.* at 39, but "in" does not need to start a sentence to carry a temporal sense. Likewise, Appellees do not dispute that Section 10101(a)(2)(C) is limited to qualification determinations, other than to claim that it would be "astonishing" to permit literacy tests in other contexts. Sec'y Br. 40. But that is precisely how Congress understood Section 10101(a) and why it later enacted a separate prohibition on literacy tests covering both "voting" and "registration for voting." 52 U.S.C. § 10501.

Finally, Appellees contend it does not matter that the only remedy in Section 10101(e) is a declaration of eligibility, because Section 10101(c)'s remedies are not so limited. DNC Br. 27; NAACP Br. 41. But unlike subsection (e), subsection (c) provides a remedy for violations of subsections (a) *and* (b), which prohibits voter intimidation, not merely practices denying registration. More importantly, subsection (e) provides a remedy for a violation of "*any* right or privilege secured by subsection (a)" (emphasis added), but "declaring [an individual] qualified to vote" remedies nothing except an unlawful determination that the potential voter is ineligible. Thus, subsection (e), too, drives home that the

Provision is limited to qualification determinations in the voter-registration process.  *See* Opening Br. 24-25.

### 3.    The Date Requirement Does Not "Deny The Right Of Any Individual To Vote."

The date requirement also does not implicate the Materiality Provision because application of ordinary ballot-casting rules does not "deny the right of any individual to vote."  52 U.S.C. § 10101(a)(2)(B); *see* Opening Br. 25-30.

Appellees' principal response is to point out that the statutory definition of "vote" mentions "having [a] ballot counted."  NAACP Br. 22, 25; DNC Br. 13; Sec'y Br. 47.  But the Provision's operative phrase is "*right . . .* to vote."  52 U.S.C. § 10101(a)(2)(B).  In 1964 and now, the *right* to vote encompasses the right to have one's ballot counted *on equal terms* with other eligible voters.  *See* Opening Br. 25-30; *cf. Bostock*, 140 S. Ct. at 1750 (original meaning must be assessed in context); *Brnovich v. DNC*, 141 S. Ct. 2321, 2336, 2338-39 (2021) (defining statutory "right … to vote" in Voting Rights Act by referencing contemporaneous understandings).  Again, principled textualism mandates reading this statutory term harmoniously with its preexisting "body of law."  *George v. McDonough*, 596 U.S. 740, 750 (2022).

The "right to vote" therefore contemplates all voters being *subject to* ballot-casting rules for making their ballots "lawful[,] regular" and "entitled to be counted," *United States v. Mosley*, 238 U.S. 383, 385-86 (1915); Opening Br. 27-30, not ballots being counted *regardless* of compliance with those rules, as Appellees contend, *see* NAACP Br. 22-34. Congress underscored this meaning when it referred, in the definition of "vote," to "mak[ing] a vote effective"; a ballot that does not comply with ballot-casting rules is not "effective." 52 U.S.C. § 10101(e); Opening Br. 27-30.

Appellees' contrary reading of the Provision contravenes the plain text: it requires striking the Provision's use of "right" and recognition that voters must "make [their] vote effective." *Compare* 52 U.S.C. §§ 10101(a)(2)(B), 10101(e)*, with supra* at 1. Accordingly, Appellees' attempt to transform the Provision into a general prohibition on "refus[ing] to count a person's ballot," NAACP Br. 22, should be rejected, *compare* 52 U.S.C. § 10101(a)(2)(B)*, with supra* at 1.

Appellees' proposed construction is particularly misplaced because, both in 1964 and now, there is no "right to vote" by mail. Opening Br. 26-27. Thus, that the Provision does not refer to "mail voting," DNC Br.

14, only underscores that such voting is outside its sweep, *see* Opening Br. 26-27. Unsurprisingly, the Fifth Circuit recently reaffirmed that the "right to vote" in the early 1970s did not include a right to vote by mail, *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 188 (5th Cir. 2020), reinforcing that the statutory "right to vote" in 1964 did not either.

Moreover, Appellees' various attempts to argue around *McDonald v. Bd. of Election Comm'rs*, 394 U.S. 802 (1969), *see* DNC Br. 15-17; Sec'y Br. 48, are unavailing. For example, *O'Brien v. Skinner*—which post-dates enactment of the Provision in any event—did not recognize a right to vote by mail, but instead a right to equal treatment with similarly situated voters. *See* 414 U.S. 524, 529 (1974). It therefore lends no support to Appellees' contention that individuals who *fail* to comply with ballot-casting rules have an equal right to have their ballots counted as individuals who *do* comply with those rules. *See* DNC Br. 15-16.

Finally, the Secretary argues that, under Appellants' reading, the Provision "would never be violated" because "every error or omission" would be recast as "failing to follow the rules for voting" rather than "denial of the 'right to vote.'" Sec'y Br. 49. Not so. Under Appellants' reading, the Provision prohibits *all* denials of the right to vote resulting

from errors or omissions on registration-related documents that are immaterial to the voter's qualifications.  *Accord Browning*, 522 F.3d at 1173.  Yet the Provision does not absolve individuals of the need to "compl[y] with certain rules" at other steps of the voting process, including casting a ballot.  *Brnovich*, 141 S. Ct. at 2338 (Sec'y Br. 48).  The Provision thus combats the very evil Congress sought to address and is not susceptible to Appellees' efforts to expand it.

### B.    *The Federalism Canon Bars Application Of The Materiality Provision To The Date Requirement.*

The federalism canon bars extending the Materiality Provision outside of the qualification determinations in the voter-registration context covered by its plain text.  *See* Opening Br. 30-35.

Appellees nonetheless contend that "the Materiality Provision applies where a state actor refuses *to count a person's ballot* based on a minor mistake on required, voting-related paperwork, if that mistake is unrelated to ascertaining a voter's qualifications to vote."  NAACP Br. 22-23 (emphasis added); *compare supra* at 1.  Appellees, however, point to no "exceedingly clear language" in the Provision to support such an astounding displacement of state law by a federal statute.  *Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2489 (2021) (per curiam).  They

therefore cannot defeat application of the federalism canon here.  *See id.*; Opening Br. 30-35.

Appellees try anyway—and fail.  *First*, Appellees argue that the canon is inapplicable because Congress enacted the Provision under the Elections Clause.  *See* NAACP Br. 48-49; Sec'y Br. 42, 45-47.  But the Elections Clause empowers Congress to regulate *only* Congressional elections, not elections for state and local office like Mr. Marino's 2023 race or the scores of such races on the 2024 Pennsylvania ballot.  *See* U.S. Const. art. I, § 4, cl. 1.  The Materiality Provision sweeps beyond federal elections to "any election," so the Elections Clause cannot justify its full scope.  52 U.S.C. § 10101(a)(2)(B); NAACP Br. 48 ("Congress then expanded [the Provision] with the 1965 Voting Rights Act to encompass state elections.").  The District Court's declaratory judgment likewise is not limited to Congressional elections.  *See* App.6.  The only constitutional basis for Congressional regulation of state and local elections is the Fifteenth Amendment—to which the federalism canon applies, *see* Opening Br. 30-35, and which does not justify extending the Provision beyond voter registration based on the record before the enacting Congress, *see infra* at 25-27.

*Second*, Appellees point to a handful of recent district-court cases holding that the Provision invalidates ballot-casting rules. *See* NAACP Br. 23-25, 27; DNC Br. 29; Sec'y Br. 35-36. But most of those cases postdate—and adopt the erroneous reasoning of—this Court's now-vacated decision in *Migliori*. *See, e.g.*, *LUPE v. Abbott*, No. 5:21-CV-0844-XR, 2023 WL 8263348, at \*14 (W.D. Tex. Nov. 29, 2023), *stayed pending appeal United States v. Paxton*, No. 23-50885, ECF 80-1 (5th Cir. Dec. 15, 2023). These district-court decisions are wrongly decided and cannot override plain text and appellate-court caselaw that properly cabin the Provision to voter registration. *See supra* at 2-3.

*Third*, Appellees' proposed construction would jeopardize many widespread, commonsense paper-based regulations that have nothing to do with qualification determinations or voter registration. *See* Opening Br. 33-34. Appellees largely embrace, rather than contest, this extreme result. *See, e.g.*, Sec'y Br. 50 (touting "breadth" of their proposed construction). Indeed, they make no effort to show that mail-ballot voter identification rules, witness signature requirements, voter-assistance-form requirements, pollbook and poll list requirements, and signature requirements for third parties returning ballots can survive under their

20

reading.  *See* Opening Br. 33-34; NAACP Br. 46-47; DNC Br. 30; Sec'y Br. 54-56.

Moreover, their responses on other laws are hardly convincing. They assert overvote rules are safe, *see* NAACP Br. 46, but those rules prevent votes from being "included in the appropriate totals of votes cast" and at least partly prevent ballots from being "counted," 52 U.S.C. § 10101(e) (defining "vote").  The Secretary also claims that secrecy-envelope requirements do not involve an error "on" a paper or record, Sec'y Br. 56, but Pennsylvania law prohibits counting ballots where an individual makes the error of writing anything "on" a secrecy envelope, *see Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 378 (Pa. 2020).  In Appellees' world, that rule must go, too.

*Fourth*, Appellees' logic dooms signature requirements.  They favorably cite an opinion that invalidated a signature requirement.  *See Ford v. Tenn. Senate*, No. 06-2031 D V, 2006 WL 8435145 (W.D. Tenn. Feb. 1, 2006) (NAACP Br. 23-24).  Then, contradicting *Ford*, they suggest that signature requirements may survive under the Provision because they are "material" to discerning an individual's identity.  *See* NAACP Br. 46; Sec'y Br. 55.  But the Provision's plain text makes no mention of

determining "identity." *Compare* 52 U.S.C. § 10101(a)(2)(B), *with supra* at 1.

*Finally*, Appellees argue that signature requirements and other rules might be permissible under the Provision because they "serve [an] election-administration function" while the date requirement allegedly does not. DNC Br. 30; *see also* U.S. Br. 19 (proposing focus on state rule's "substance and purpose"). But nothing in the Provision permits a federal court to invalidate state laws that it decides are insufficiently important. *Compare* 52 U.S.C. § 10101(a)(2)(B), *with supra* at 1.

The General Assembly has determined that the date requirement is a useful election-administration rule, *see, e.g.*, *In re Canvass of Absentee and Mail-In Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058, 1090-91 (Pa. 2020) (Opinion of Dougherty, J.); Opening Br. 45-49, and federal courts cannot substitute their judgment for the General Assembly's, *see Vote.Org*, 2023 WL 866436, at *15-21. Appellees, moreover, are simply wrong that the date requirement serves no election-administration function. For one thing, the requirement "provides proof of when [an] 'elector actually executed [a] ballot in full,'" *2020 Gen. Election*, 241 A.3d at 1090 (opinion of Dougherty, J.,) which is important

22

if counties fail to timestamp a ballot upon receiving it or Pennsylvania's SURE system malfunctions—a possibility Judge Matey highlighted in *Migliori*. *See* 36 F.4th at 165 (Matey, J., concurring in judgment).

The requirement also conveys the solemn weight of voting and executing the mail-ballot declaration, a purpose well established as a matter of law and the same purpose the Secretary identifies for the signature requirement. *See Vote.Org*, 2023 WL 8664636, at *20 (upholding wet signature requirement because requiring "original signature to a voter registration form carries 'solemn weight'"); *cf. Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1887-88 (2018) (affirming state interest in ensuring voters "contemplate their choices" and "reach considered decisions about their government and laws"); *see also* Sec'y Br. 54-55.

And the requirement can be used to detect and prevent fraud. *See 2020 General Election*, 241 A.3d at 1091 (Opinion of Dougherty, J.). The only information an individual writes on a Pennsylvania mail-ballot declaration is her signature and the date. App.109 ¶ 50. State law precludes election officials from conducting signature comparisons, so they cannot use that method to detect fraud. *See 2020 Gen. Election*, 241

A.3d 591; App.109 ¶ 51.  That leaves the date requirement to perform that function.  In 2022, the date requirement furnished critical evidence in an election fraud prosecution of an individual who completed her deceased mother's ballot.  *See* App.109-110, ¶¶ 48-55.  As Appellees' own putative expert *agreed*, the only evidence on the face of the ballot that someone other than the decedent had completed it was the handwritten date, which was twelve days after the elector had died.  *See id.* ¶¶ 52-55.  To be sure, the decedent's ballot would not have been counted because she passed away before Election Day.  *See* NAACP Br. 11-12 n.5; Sec'y Br. 28 n.7.  But her daughter's fraud may never have been detected without the date requirement.  *See* App.109-110 ¶¶ 48-55.  In short, the General Assembly's bipartisan date requirement serves plenty of legitimate election-administration functions and does not violate the Materiality Provision.  *See* Opening Br. 45-49.

C.   ***The District Court's Interpretation Renders the Materiality Provision Unconstitutional.***

Extending the Materiality Provision beyond qualification determinations during voter registration exceeds Congress's Fifteenth Amendment enforcement authority because the record before the

enacting Congress does not support such an extension. *See* Opening Br. 35-40.

Even Appellees agree that "voter registration was top of mind for Congress in enacting the Materiality Provision." NAACP Br. 37; Sec'y Br. 22 ("Before 1964, most arbitrary denials of the right to vote happened during registration."). In fact, as discussed, Appellees' own discussion of the legislative history demonstrates that Congress compiled evidence of, and addressed, discriminatory practices in voter registration, but not in application of ballot-casting rules. *See supra* at 8-11; Opening Br. 35-40.

Appellees nonetheless argue that extending the Provision to ballot-casting rules passes Fifteenth Amendment muster. They are wrong. *First*, DNC argues that the congruence-and-proportionality test from *City of Boerne v. Flores*, 521 U.S. 507 (1997), does not govern Congress's exercise of Fifteenth Amendment authority. DNC Br. 32-33. Two circuit courts have already suggested otherwise. *See Veasey v. Abbott*, 830 F.3d 216, 253 (5th Cir. 2016); *United States v. Roof*, 10 F.4th 314, 391 (4th Cir. 2021) (recognizing test as "Fourteenth and Fifteenth Amendment caselaw"). This makes perfect sense, since the Fourteenth and Fifteenth Amendments use identical operative language to confer enforcement

authority on Congress.  *See* U.S. Const. amend. XIV § 5; *id.* amend. XV § 2.

Nor does *South Carolina v. Katzenbach*, 383 U.S. 301, 326 (1966), prescribe a different test, much less establish deferential rational-basis review.  *See* DNC Br. 32-33.  In fact, *Boerne relied* on *Katzenbach* for the congruence-and-proportionality test, and even cited the Voting Rights Act—a Fifteenth Amendment statute—as an example of a law complying with the test.  *See Boerne*, 521 U.S. at 530-32.  And even if something other than congruence-and-proportionality governs Fifteenth Amendment enforcement statutes, the governing test has considerable force.  *See Shelby County v. Holder*, 570 U.S. 529 (2013) (striking down preclearance coverage formula) (DNC Br. 33).  Indeed, "while any racial discrimination in voting is too much, Congress must ensure that the legislation it passes to remedy that problem speaks to current conditions."  *Id.* at 557.  Thus, that the enacting Congress compiled no record to justify extending the Materiality Provision to ballot-casting rules forecloses federal courts from doing so now.  *See id.*

*Second*, Appellees suggest an expanded Materiality Provision would satisfy the congruence-and-proportionality test, citing *Vote.Org*.

*See* DNC Br. 34; Sec'y Br. 45.  But *Vote.Org* addressed a registration rule, not a ballot-casting rule, and noted that extending the Provision to ballot-casting rules was "possibly overbroad."  2023 WL 8664636, at *12 n.7; 18-21.  *Vote.Org* thus does nothing to salvage Appellees' and the District Court's application of the Provision to a scenario Congress neither contemplated nor addressed.  The Court should avoid the constitutional problem inherent in Appellees' and the District Court's construction and reverse.

## II.   APPELLEES LACK A RIGHT OF ACTION TO ENFORCE THE MATERIALITY PROVISION

The Court should reverse for the additional reason that Appellees lack a private right of action to enforce the Provision.  *See* Opening Br. 49-53.

Appellees do not dispute that there is no *implied* right of action. NAACP Br. 57 n.32.  Instead, they argue Section 1983 confers a private right of action.  *See id.* 51-57; DNC Br. 36-41.

They are wrong.  The existence of a narrower private right of action precludes implying a private action under Section 1983.  *See Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 190 (2023); *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 121 (2005).   Section

10101(e) creates such a narrower private right of action. *See* 52 U.S.C. § 10101(e); Opening Br. 52-53. Appellees might not like Congress's choice to create a right of action "offer[ing] fewer benefits than those available under § 1983," but that choice dooms any Section 1983 suit. *Talevski*, 599 U.S. at 189-90.

Appellees object that this narrower private right of action is merely part of the Attorney General's "parallel public remedy." NAACP Br. 55; *see* U.S. Br. 9. But that is just atextual wordplay. If Appellees are right that Section 1983 confers a private right of action, Congress's scheme allowing private parties to seek declarations they are eligible to vote in particular circumstances is *pointless surplusage. Cf. Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 635 (2012). Indeed, Appellees offer no explanation *why* Congress would have included this private enforcement scheme if it meant to imply a right to sue under Section 1983. *See* NAACP Br. 51-57; DNC Br. 36-41. Thus, "ordinary interpretive tools reveal[] incompatibility" with implying a right to sue under Section 1983. *Talevski*, 599 U.S. at 189.

Finally, Appellees' invocation of contrary appellate rulings, NAACP Br. 3, DNC Br. 39-40; *see also* U.S. Br. 9, does nothing to affect, much

less alter, this result.  None of those cases considered Section 10101(e)'s private right of action, which forecloses a Section 1983 action under *Talevski*.  *See* Opening Br. 51-53.

## III.  THE DISTRICT COURT'S REMEDY IS UNLAWFUL

Regardless of the merits and the existence of any private right of action, the Court should reverse because of two fatal defects in the District Court's remedy.  *See* Opening Br. 53-59.

**1.** The District Court's order violates the Equal Protection Clause. *See id*. at 54-57.  Appellees acknowledge that "the judgment in this case formally binds only 12 counties," not the 55 dismissed county boards of elections.  NAACP Br. 63.  Appellees therefore do not dispute that the District Court's order results in election officials in different counties applying "different standards in defining a legal vote" and "accepting or rejecting . . . ballots."  *Bush v. Gore*, 531 U.S. 98, 106 (2000).  And they even acknowledge that future litigation will be required to achieve uniformity across the Commonwealth.  *See* NAACP Br. 65; DNC Br. 46.

Appellees nonetheless argue that this state of affairs does not violate the Equal Protection Clause, but their various contentions are unpersuasive.  *First*, they posit that "all counties *can and should comply*

with" the District Court's order.  NAACP Br. 63 (emphasis original).  Not so.  The 55 dismissed county boards must abide by the Pennsylvania Supreme Court's repeated holdings that election officials cannot count ballots that do not comply with the date requirement.  *See Ball v. Chapman*, 289 A.3d 1, 11 (Pa. 2022) (citing *2020 Gen. Election*, 241 A.3d 1058).  State and local officials are bound by state law until a court properly orders them to do otherwise under federal law, which is why the Pennsylvania Supreme Court ordered that undated ballots could not be counted in 2022.  *See Ball v. Chapman*, 284 A.3d 1189 (Pa. 2022).

*Second*, Appellees assert that *some* dismissed county boards may ignore state law and choose to count noncompliant ballots, as purportedly shown by "information available" to the Secretary but not shared with the parties or the Court.  *See* Sec'y Br. 58 n.12; DNC Br. 45; Chester County Br. 1.  But that underscores, rather than fixes, the Equal Protection problem.  Even on Appellees' version of events, some of the dismissed county boards will follow state law and not count such ballots, underscoring that the District Court's order results in "different standards in defining a legal vote" across counties.  *Bush*, 531 U.S. at 106.

*Third*, the Secretary's contention that county boards took varying approaches to implementing the date requirement after *Ball*, *see* Sec'y Br. 57-58, does not save the District Court's order. Whether those variations raise Equal Protection problems is not presented in this case. In any event, prior variation in implementing the date requirement does not fix the Equal Protection problem in the District Court's order *directing* disparate treatment of similarly situated ballots across counties. *See Bush*, 531 U.S. at 104-111; Opening Br. 54-57.

*Fourth*, DNC's hypothetical about a religious test to receive a ballot, *see* DNC Br. 43-44, is irrelevant. Such a test would violate the First Amendment, not raise an Equal Protection problem in a judicial remedy. Indeed, *Bush v. Gore* addresses "different standards" for deciding whether a *completed* ballot is valid, 531 U.S. at 106, not an unconstitutional condition on *receiving* a ballot. It therefore would not preclude individualized relief in DNC's farfetched hypothetical.

*Fifth*, DNC's recognition that the scope of the District Court's order is a "consequence of Article III's limitations on federal judicial power," DNC Br. 43, proves, rather than solves, the problem. Article III's limitations on the District Court's subject-matter jurisdiction do not

exempt it from the Equal Protection Clause's limitations on its remedial authority. That is why the proper disposition was for the District Court to dismiss the suit, not enter a remedy that violates the Constitution. *See* Opening Br. 54-57.

**2.** The District Court's order cannot apply to, much less retroactively change the rules in, the completed 2023 elections. *See* Opening Br. 57-59. Appellees claim that only election administrators can make *Purcell* arguments, NAACP Br. 60, but the Supreme Court has *granted Purcell* stays to private parties, *Frank v. Walker*, 574 U.S. 929 (2014), and a political party and a state legislature, *RNC v. DNC*, 140 S. Ct. 1205, 1207 (2020). Nor does *RNC v. Common Cause R.I.*, 141 S. Ct. 206 (2020) (NAACP Br. 60), help Appellees. There, the Supreme Court emphasized that the contested rule was not "used in Rhode Island's last election," leading "many . . . voters" to believe the "status quo [was] one in which the challenged requirement [was] not in effect." *Id.* Here, the date requirement *was* in effect through Election Day 2023, so *Purcell* foreclosed the District Court's order. *See* Opening Br. 57-59.

## IV.    THIS COURT HAS JURISDICTION

Appellees concede that this Court has jurisdiction to address the live case or controversy regarding future elections. *See* NAACP Br. 59; DNC Br. 50; *see also* Opening Br. 61-66. The Court also retains jurisdiction to address the live controversy regarding Marino's 2023 election. *See* Opening Br. 66-67. The state-court contest regarding that election remains pending in Pennsylvania Commonwealth Court. *See In re Contest of Nov. 7, 2023 Election of Towamencin Twp.*, No. 1482 C.D. 2023 (slip op. at 16) (Pa. Commw. Ct. Dec. 29, 2023). The Pennsylvania Supreme Court has held that a contest is timely where, as here, it was filed late only because certification was late, *Appeal of Koch*, 41 A.2d 657, 659 (Pa. 1945), and state law permits the courts to decertify the result of the election and order certification in Marino's favor, *see In re 2003 Gen. Election for Off. of Prothonotary*, 849 A.2d 230, 235-36 (Pa. 2004). Marino thus has a clear path to taking office through the pending state-court contest, and the controversy regarding his election is not moot.

## CONCLUSION

The Court should reverse.

Dated:  January 17, 2024

Kathleen A. Gallagher
THE GALLAGHER FIRM, LLC
436 Seventh Ave., 31st Floor
Pittsburgh, PA 15219
(412) 717-1900
kag@gallagherlawllc.com

Thomas W. King, III
Thomas E. Breth
DILLON, MCCANDLESS, KING,
COULTER & GRAHAM, LLP
128 W. Cunningham St.
Butler, PA 16001
(724) 283-2200
tking@dmkcg.com
tbreth@gmkcg.com

Respectfully submitted,

*/s/* John M. Gore
John M. Gore
(D.C. Bar No. 502057)
*Counsel of Record*
E. Stewart Crosland
Louis J. Capozzi, III
Ryan M. Proctor
JONES DAY
51 Louisiana Ave. NW
Washington, DC  20001
(202) 879-3939
jmgore@jonesday.com
scrosland@jonesday.com
lcapozzi@jonesday.com
rproctor@jonesday.com

## COMBINED CERTIFICATIONS

In accordance with the Federal Rules of Appellate Procedure and the Local Rules of this Court, I hereby certify the following:

1.    I am a member in good standing of the Bar of this Court.

2.    This Brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 6,484 words, excluding the parts exempted by Fed. R. App. P. 32(f).

3,    This Brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (a)(6) because it has been prepared using Microsoft Word in a proportionally spaced 14-point font (namely, Century Schoolbook Standard) in the text and the footnotes.

4.    The text of the electronic Brief is identical to the text in the paper copies.

5.    The electronic file containing the Brief was scanned for viruses using the most recent version of a commercial virus scanning program, and no virus was detected.

Dated: January 17, 2024          */s/* John M. Gore

John M. Gore
*Counsel for Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2024, this brief was electronically filed with the Clerk of Court using the appellate CM/ECF system. Service on counsel for all parties in the district court has been accomplished via notice filed through the district court's CM/ECF system attaching a copy of this filing.

Dated: January 17, 2024          */s/* John M. Gore
                                  John M. Gore
                                  *Counsel for Appellants*