No. 23-3166

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

PENNSYLVANIA STATE CONFERENCE OF NAACP BRANCHES, *et al.*,
*Plaintiffs-Appellees*,

v.

SECRETARY COMMONWEALTH OF PENNSYLVANIA, *et al.*,
*Defendants-Appellees*,

REPUBLICAN NATIONAL COMMITTEE*, et al.*,
*Intervenors-Appellants*.

On Appeal from the United States District Court
for the Western District of Pennsylvania
No. 1:22-cv-339, Hon. Susan Paradise Baxter

**BRIEF OF THE DISTRICT OF COLUMBIA, NEW YORK, CONNECTICUT, DELAWARE, MAINE, MARYLAND, NEVADA AND WASHINGTON AS AMICI CURIAE IN SUPPORT OF PLAINTIFFS-APPELLEES AND REHEARING EN BANC**

LETITIA JAMES
 *Attorney General*
 *State of New York*

BARBARA D. UNDERWOOD
 *Solicitor General*

JUDITH N. VALE
 *Deputy Solicitor General*

ANDREA W. TRENTO
 *Assistant Solicitor General*

28 Liberty Street
New York, NY 10005
(212) 416-8656
andrea.trento@ag.ny.gov

BRIAN L. SCHWALB
 *Attorney General*
 *District of Columbia*

CAROLINE S. VAN ZILE
 *Solicitor General*

ASHWIN P. PHATAK
 *Principal Deputy Solicitor General*

SEAN FRAZZETTE
 *Assistant Attorney General*

400 6th Street, NW, Suite 8100
Washington, D.C. 20001
(202) 724-6609
caroline.vanzile@dc.gov

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION AND INTEREST OF *AMICI CURIAE* ........................................1

STATEMENT OF THE CASE................................................................................2

ARGUMENT ..........................................................................................................7

CONCLUSION.....................................................................................................11

# TABLE OF AUTHORITIES

**Cases**                                                                                         **Page(s)**

*Ball v. Chapman*,
   289 A.3d 1 (Pa. 2023) .................................................................................... 4-5

*In re Nov. 3, 2020 Gen. Election*,
   662 Pa. 718 (2020) ........................................................................................... 9

*McLinko v. Department of State*,
   279 A.3d 539 (Pa. 2022) ................................................................................ 2-3

*Mixon v. Commonwealth*,
   759 A.2d 442 (Pa. Commw. Ct. 2000) ............................................................ 3

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992) .......................................................................................... 7

**Constitutions**

Pa. Const. art. VII, § 1 ............................................................................................ 2

**Laws**

Civil Rights Act of 1964, Pub. L. No. 88-352, 78 Stat. 241 .................................... 5

Voting Rights Act of 1965, Pub. L. No. 89-110, 79 Stat. 437 ................................. 5

52 U.S.C.
   § 10101(a)(2)(B) ................................................................................ 2, 5, 7, 9
   § 10101(a)(3)(A) ............................................................................................ 6
   § 10101(e) ................................................................................................... 5-6

25 Pa. Consol. Stat. § 1301(a) .................................................................................. 3

25 Pa. Stat.
   § 2811 ............................................................................................................. 2
   § 3146.1 .......................................................................................................... 3
   § 3146.2b ........................................................................................................ 3
   § 3146.4 ..................................................................................................... 3-4, 8
   § 3146.6(a) .................................................................................................. 3-4

**Laws** **Page(s)**

25 Pa. Stat. (*cont'd*)
    § 3146.8(g)(3) ............................................................................................. 4, 8
    § 3150.11 ....................................................................................................... 2
    § 3150.12b ..................................................................................................... 3
    § 3150.14 .................................................................................................... 3-4
    § 3150.16(a) ............................................................................................... 3-4
    § 3553 ........................................................................................................... 4

# INTRODUCTION AND INTEREST OF *AMICI CURIAE*

The District of Columbia, New York, Connecticut, Delaware, Maine, Maryland, Nevada and Washington (collectively, "*Amici* States") file this brief as *amici curiae* in support of the plaintiffs-appellees and rehearing en banc. In a 2-to-1 decision, the panel determined that the Materiality Provision of the federal Civil Rights Act of 1964, applies to only those records or papers that relate to determining a voter's qualification under state law to vote. And the panel determined that a declaration on the return envelopes of mail-in and absentee ballots did not relate to determining a voter's qualification under Pennsylvania law, and thus did not fall within the Materiality Provision's scope, even though the declaration requires voters to attest that they are qualified to vote.

The *Amici* States have strong interests in this case. First, in our federalist system, the States have the primary power to regulate elections in their respective jurisdictions. The *Amici* States employ different systems to guarantee that their residents have fair access to the franchise while ensuring the security of, and ability to administer, their electoral systems. *Amici* States have a keen interest in maintaining their election administration objectives.

Second, *Amici* States recognize that federal law provides important safeguards to protect the right to vote. The Materiality Provision is one such federal law; it prohibits a jurisdiction from denying the right to vote because of "an error or

omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether [an] individual is qualified under State law to vote in such election," 52 U.S.C. § 10101(a)(2)(B). The *Amici* States have strong interests in ensuring that the Materiality Provision is properly applied to prevent deprivations of the right to vote that fall within its scope.

Third, *Amici* States are interested in ensuring that their state laws and practices are correctly analyzed and understood when the federal courts determine whether the Materiality Provision applies to an error or omission in a record or paper that is required by state law. Here, the panel improperly disregarded Pennsylvania law and practice by (*i*) concluding that the declaration on the ballot-return envelope does not relate to determining a voter's qualification to vote and (*ii*) essentially restricting the scope of the Materiality Provision to voter registration applications.

## STATEMENT OF THE CASE

Pennsylvania allows no-excuse mail voting for "all qualified voters." *McLinko v. Department of State*, 279 A.3d 539, 544 (Pa. 2022); *see* 25 Pa. Stat. § 3150.11. To vote in Pennsylvania, an individual must be 18 years of age on the date of the election; must have been a United States citizen and resident of Pennsylvania and the individual's voting district for certain periods of time; and must not be incarcerated for conviction of a felony. Pa. Const. art. VII, § 1; 25 Pa.

Stat. § 2811; 25 Pa. Consol. Stat. § 1301(a); *Mixon v. Commonwealth*, 759 A.2d 442, 451 (Pa. Commw. Ct. 2000), *aff'd*, 566 Pa. 616 (2001).

To vote by mail in Pennsylvania (whether as an absentee or a mail-in voter),[1] a voter submits an application to the county board of elections, which verifies whether the person is qualified under state law to vote. *See* 25 Pa. Stat. §§ 3146.2b, 3150.12b. If so, the board sends the voter a mailing containing a mail ballot, a so-called "secrecy envelope," and a pre-addressed return envelope. *See id.* §§ 3146.4, 3150.14. After marking the ballot, the voter must seal the ballot in the secrecy envelope and then place that sealed envelope in the return envelope. *See id.* §§ 3146.6(a), 3150.16(a). The return envelope is specific to each voter and features a unique bar code that allows the county board to track each ballot. (Pa. Suppl. App. 823 (deposition testimony of Deputy Secretary for Elections and Commissions, Pennsylvania Department of State).)

The return envelope also contains a declaration that relates to the voter's qualifications to vote. Pennsylvania law states that the declaration "shall contain among other things *a statement of the electors qualifications*, together with a

---

[1] Pennsylvania has allowed no-excuse mail voting for "all qualified voters" since 2020. *McLinko*, 279 A.D.3d at 544. "Absentee" voting by mail has otherwise been available in Pennsylvania, since 1951, to certain military voters, and, since 1963, to individuals who were unable to vote in person for one of several other specified reasons. *Id.* at 562; *see* 25 Pa. Stat. § 3146.1.

3

statement that such elector has not already voted in such primary or election." *Id.* § 3146.4 (emphasis added); *see id.* § 3150.14. Accordingly, the declaration states, inter alia, "I hereby declare that I am qualified to vote in this election." (Pa. Suppl. App. 284, ECF No. 146.) The voter must "fill out, date and sign" the declaration. 25 Pa. Stat. §§ 3146.6(a), 3150.16(a); *see Ball v. Chapman*, 289 A.3d 1, 7 (Pa. 2023). By signing the declaration, the voter attests to the statements therein—including that the voter is qualified to vote—and faces criminal liability for any knowing misrepresentations it contains. *See* 25 Pa. Stat. § 3553.

Upon receipt of an absentee or a mail-in ballot, election officials stamp the outer envelope with the date of receipt—by which they verify the timeliness of the ballot during the canvass—and verify the identity of the voter associated with the ballot via the bar code on the outside of the ballot return envelope. (Op. at 18, ECF No. 230.) Elections officials also examine the declaration on the envelope of each ballot and determine whether the declaration is sufficient, *see* 25 Pa. Stat. § 3146.8(g)(3), including by verifying that the ballot return declaration has been signed and dated, *see Ball*, 289 A.3d at 28. While the signature reflects the voter's attestation that the voter is (among other things) qualified to vote (*see* Pa. Suppl. App. 857 (deposition testimony of Deputy Secretary for Elections and Commissions, Pennsylvania Department of State)), it is undisputed that *the date* is not used in determining whether the voter is qualified to vote (Op. at 28). It is also undisputed

that the date on the declaration is not used to determine whether the ballot is timely—which is based on when a mail-in or an absentee ballot is received by the relevant county of board of elections. (*See id.* at 18.) Nevertheless, Pennsylvania's highest court has decided that an omitted or incorrect date is grounds for rejection of the ballot under Pennsylvania law. *See Ball*, 289 A.3d at 28.

The dispute here is whether such a rejection of a ballot based on an omitted or incorrect date on the outer-envelope declaration violates federal law, i.e., the Materiality Provision of the Civil Rights Act of 1964. The Materiality Provision prohibits any person under color of law from:

> deny[ing] the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.[2]

52 U.S.C. § 10101(a)(2)(B). The statute defines "vote" to include "all action necessary to make a vote effective including, but not limited to, registration or other action required by State law prerequisite to voting, casting a ballot, and having such ballot counted and included in the appropriate totals of votes cast . . . in an election." *Id.*

---

[2] Although the Materiality Provision originally applied to only federal elections, *see* Civil Rights Act of 1964, Pub. L. No. 88-352, § 101(a), 78 Stat. 241, 241, Congress later expanded its application to include state elections, *see* Voting Rights Act of 1965, Pub. L. No. 89-110, § 15, 79 Stat. 437, 445.

5

§ 10101(e); *see id.* § 10101(a)(3)(A) (incorporating definition of "vote" in subsection (e) for purposes of subsection (a)).

A panel of this Court concluded, in a 2-to-1 decision, that rejection of a ballot based on an omitted or incorrect date on the declaration does not violate the Materiality Provision. (Op. at 14-15.) The panel acknowledged that the date on the declaration is not material to determining whether the individual is qualified under Pennsylvania law to vote in the relevant election. (*Id.* at 27). But the panel reasoned that the Materiality Provision applies only to records or papers that relate to determining a voter's qualifications to vote, such as papers used to register to vote. (*Id.* at 27-36). And the panel further concluded that the declaration is unrelated to determining a voter's qualifications and thus does not fall within the Materiality Provision's scope. (*Id.* at 40-41.)

Judge Shwartz dissented. The dissent would have ruled that the Materiality Provision's application is not limited solely to records or papers used in determining a voter's qualifications to vote. (*Id.* at 54-55). The dissent also observed that the declaration fell within the panel's narrower interpretation of the Materiality Provision in any event because the declaration does relate to determining a voter's qualifications to vote. (*Id.* at 77-79 n.26).

## ARGUMENT

### EN BANC REVIEW IS WARRANTED BECAUSE THE MATERIALITY PROVISION APPLIES TO THE DECLARATION AT ISSUE HERE EVEN UNDER THE PANEL'S NARROW INTERPRETATION OF THAT PROVISION.

The Materiality Provision applies to errors or omissions in records or papers "relating to any application, registration, or other act requisite to voting." 52 U.S.C. § 10101(a)(2)(B). The ordinary meaning of the words "relating to" is "a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'" *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (quoting *Black's Law Dictionary* 1158 (5th ed. 1979)).

Here, en banc review is warranted regardless of whether the Materiality Provision applies to errors or omissions in only those records or papers relating to a determination of a voter's qualification to vote under state law, as the panel concluded, or applies more broadly to errors or omissions in records or papers relating to other acts requisite to voting, as the dissent would have held. Even under the panel's narrower interpretation, the Materiality Provision applies here because the declarations on the ballot return envelopes are related to determining a voter's qualifications to vote, and an error or omission of the date is indisputably not material to determining a voter's qualifications to vote. In concluding that the declarations are not related to determining voters' qualifications, the panel improperly

disregarded Pennsylvania law and practice, and incorrectly interpreted the Materiality Provision's scope to be restricted to voter registration applications—in contravention of the statute's terms and to the detriment of voters disenfranchised by inconsequential errors on other records related to determining voters' qualifications.

Pennsylvania law makes clear that the declaration relates to determining a voter's qualifications to vote. First, the statutory provision setting forth the requirements for a mail-in or an absentee ballot envelope states that the declaration on the envelope "shall contain among other things *a statement of the electors qualifications*." 25 Pa. Stat. § 3146.4. Second, the statutory provision addressing the canvassing of mail-in or absentee ballots requires state election officials to, among other things, "examine the declaration on the envelope of each ballot" and determine that the declaration is sufficient. 25 Pa. Stat. § 3146.8(g)(3). The declaration thus bears at least some relation to determining the voter's qualifications to vote.

The panel mistakenly reasoned that the declaration is unrelated to determining a voter's qualifications because, in the panel's view, "Pennsylvania does not, in practice, use the signature on the declaration" to verify a voter's identity or qualifications to vote. (*See* Op. at 40.) As the record here demonstrates, Pennsylvania state practice further confirms that the declaration is related to determining a voter's qualifications. The language of the declaration requires the voter to declare that "I am qualified to vote in this election" and that "I am qualified to vote the enclosed

ballot." (Pa. Suppl. App. 284.) Pennsylvania's then-Acting (and now current) Secretary of State explained that "[t]he signed declaration affirms the 'statement of the elector's qualifications'" required under Pennsylvania law and "attests that the person who completed the ballot is qualified to vote." (Pa. Suppl. App. 321 (quoting 25 Pa. Stat. 3146.4).) In other words, as the Pennsylvania Deputy Secretary of State explained, the declaration reflects "the voter affirming under penalty of perjury that they're qualified to vote in the election.[3] (Pa. Suppl. App. 857.) Accordingly, "the declaration here played a role in helping the State to determine that all mail-in voters were qualified to vote." (Op. at 77-78 n.26 (Schwartz, J., dissenting).)

The Materiality Provision thus applies under the panel's own interpretation of the type of records and papers that fall under the provision's scope. And invalidating ballots because of an error in or an omission of solely *the date* on the declaration violates the Materiality Provision because it is undisputed here that "such error or omission is not material in determining whether such individual is qualified under State law to vote in such election," 52 U.S.C. § 10101(a)(2)(B). Indeed, the panel

---

[3] Although Pennsylvania law prohibits election officials from comparing the ballot return declaration signature to an exemplar on file to verify the signature's authenticity, *see In re Nov. 3, 2020 Gen. Election*, 662 Pa. 718, 750 (2020), it does not prohibit officials from ascertaining the presence of the signature to confirm the voter's affirmation of his qualification status.

9

recognized that the date on the declaration is not material to determining a voter's qualifications or to confirming the timeliness of the ballot. (Op. at 18, 27.)

Properly understanding that the declaration is a record or paper that relates to determining a voter's qualifications to vote eliminates the panel's concern about the Materiality Provision potentially undermining various state rules that concern casting a valid vote, such as rules concerning improper markings on a ballot, the color of ink used on a ballot, or requiring the rejection of ballots that appear to improperly vote for more than one candidate for the same office (*see id.* at 32-34). Such rules would not be implicated by the Materiality Provision so long as the record or paper in question do not relate—as the declarations on the return envelope here do—to determinations regarding the voters' qualifications.

The panel also erred in reasoning that voters who receive a mail-in or an absentee ballot have already been deemed qualified to vote when their voter-registration applications were approved and when they were sent the mail-in or the absentee ballot. (*See, e.g.*, *id.* at 40-41.) There may be multiple records or forms, used at different points in time, that all relate to determining whether a voter is qualified vote. Errors or omissions in such records or forms that are material to determining the voter's qualifications may result in invalidation of the ballot without running afoul of the Materiality Provision. But the presence of multiple layers of

such paperwork does not necessarily mean that a record or form used closer in time to counting ballots is unrelated to determining the voter's qualifications to vote.

## CONCLUSION

This Court should grant the petition for rehearing en banc.

Respectfully submitted,

| | |
|---|---|
| LETITIA JAMES<br>*Attorney General*<br>*State of New York* | BRIAN L. SCHWALB<br>*Attorney General*<br>*District of Columbia* |
| | */s/ Caroline S. Van Zile* |
| BARBARA D. UNDERWOOD<br>*Solicitor General* | CAROLINE S. VAN ZILE<br>*Solicitor General* |
| JUDITH N. VALE<br>*Deputy Solicitor General* | ASHWIN P. PHATAK<br>*Principal Deputy Solicitor General* |
| ANDREA W. TRENTO<br>*Assistant Solicitor General* | SEAN FRAZZETTE<br>*Assistant Attorney General* |
| 28 Liberty Street<br>New York, NY 10005<br>(212) 416-8656<br>andrea.trento@ag.ny.gov | 400 6th Street, NW, Suite 8100<br>Washington, D.C. 20001<br>(202) 724-6609<br>caroline.vanzile@dc.gov |

April 2024

| WILLIAM TONG | KATHLEEN JENNINGS | AARON M. FREY |
| --- | --- | --- |
| *Attorney General* | *Attorney General* | *Attorney General* |
| *State of Connecticut* | *State of Delaware* | *State of Maine* |
| 165 Capitol Avenue | 820 N. French Street | 6 State House Station |
| Hartford, CT 06106 | Wilmington, DE 19801 | Augusta, ME 04333 |
| | | |
| ANTHONY G. BROWN | AARON D. FORD | ROBERT W. FERGUSON |
| *Attorney General* | *Attorney General* | *Attorney General* |
| *State of Maryland* | *State of Nevada* | *State of Washington* |
| 200 Saint Paul Place | 100 North Carson Street | P.O. Box 40100 |
| Baltimore, MD 21202 | Carson City, NV 89701 | Olympia, WA 98504 |

# CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations set forth in Fed. R. App. P. 29(b)(4). This brief contains 2,520 words, including all headings, footnotes, and quotations, and excluding the parts of the response exempted under Fed. R. App. P. 32(f). I certify that this brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.

/s/ *Caroline S. Van Zile*
Caroline S. Van Zile

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on April 17, 2024, an electronic copy of the foregoing brief was filed with the Clerk of Court using the ECF system and thereby served upon all counsel appearing in this case.

/s/ *Caroline S. Van Zile*
Caroline S. Van Zile